IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                              |   |                          |
|------------------------------|---|--------------------------|
| UNITED STATES OF AMERICA     | * |                          |
| v.                           | * | Criminal No. RDB-20-0139 |
| ANDRE RICARDO BRISCOE,       | * |                          |
| Defendant.                   | * |                          |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendant Andre Ricardo Briscoe ("Defendant" or "Briscoe") is charged in a six-count third superseding indictment with the following offenses: Conspiracy to Distribute and Possess with the Intent to Distribute 100 grams or more of Heroin in Violation of 21 U.S.C. § 846 (Count One);  Possession with Intent to Distribute 100 grams or more of Heroin in Violation of 21 U.S.C. § 841(a)(1) (Count Two); Possession of a Firearm by a Felon in Violation of 18 U.S.C. § 922(g)(1) (Count Three); Use and Carry of a Firearm During and In Relation to a Drug Trafficking Crime and Crime of Violence, Causing the Death of a Person in Violation of 18 U.S.C. §§ 924(c) and (j)(1) (murder of Jennifer Jeffrey) (Count Four); Use and Carry of a Firearm During and In Relation to a Drug Trafficking Crime and Crime of Violence, Causing the Death of a Person in Violation of 18 U.S.C. §§ 924(c) and (j)(1) with Special Findings under 18 U.S.C. §§ 3559(d) and (f) (murder of K.B.) (Count Five); and Killing a Witness to Prevent Communication to Law Enforcement in violation of 18 U.S.C. §§ 1512(a)(1)(C) and (a)(3)(A) with Special Findings under 18 U.S.C.

§§ 3559(d) and (f) (murder of K.B.) (Count Six). (Third Superseding Indictment, ECF No. 114.)

Among the motions pending before this Court are the Defendant's Motion to Suppress Statements (ECF No. 72), Motion to Suppress Facebook Records (ECF No. 73), and Motion to Suppress Search of Residence and Person (ECF Nos. 69, 101).[1] The parties' submissions have been reviewed, and on January 19, 20, and 26, 2022 this Court heard the testimony of witnesses, received the parties' exhibits into evidence, and heard the arguments of counsel at a multi-day motions hearing in this case. For the reasons that follow, the Defendant's motions (ECF Nos. 72, 73, 69, 101) are DENIED.

## BACKGROUND

The following facts are taken from the testimony and exhibits presented at the Motions Hearing and from the Government's Consolidated Response in Opposition to Defendant Briscoe's Pretrial Motions and the accompanying exhibits. (ECF Nos. 108, 110 *SEALED*; Gov. Hr'g Ex. List, ECF No. 134; Def. Hr'g Ex. List, ECF No 135.) *See, e.g.,* *United States v. David*, No. 1:08cr11, 2008 U.S. Dist. LEXIS 71334, at *1 (W.D.N.C. Apr. 18, 2008) ("The indictment in this matter is not a speaking indictment, and the following factual background is drawn from a proffer of evidence the government states it intends to introduce at trial."). In addition, this Court also relies on the evidence presented at the three-day motions hearing on January 19, 20, and 26, 2022.

---

[1] By separate Memorandum Order, this Court has addressed the Defendant's Motion to Suppress July 2021 Cell Search. (ECF No. 94.)

This case arises out of the investigation into the murders of Jennifer Jeffrey and her seven-year-old son, K.B. in May 2015. (Gov't Resp., ECF No. 108 at 1.) On May 28, 2015 at approximately 8:20 a.m., members of the Baltimore Police Department ("BPD") homicide unit responded to 103 Upmanor Road in Baltimore, Maryland. (Aff. in Support of Crim. Compl., 20-mj-1328 *SEALED* ¶ 7.) Officers located the body of Jennifer Jeffrey ("Jennifer") on the kitchen floor. She was dressed in a t-shirt and underwear and had been shot multiple times. (*Id.*) Officers located the body of K.B., Jennifer's seven-year-old son, in Jennifer's bed upstairs. (*Id.*) K.B. had also been shot multiple times. (*Id.*)

BPD investigators spoke to Jennifer's niece, who had been staying at Jennifer's house before the murders. Jennifer's niece confirmed that Jennifer had been introduced by one of her friends, Kiara Haynes, to two of Haynes' cousins: Briscoe (who the niece knew as "Poo") and Tony Harris.[2] (Draft Tr., ECF No. 110-21 *SEALED*.) Jennifer's niece told investigators that she believed that Jennifer had been involved in an intimate relationship with one or both men and that Jennifer had been engaged in the distribution of heroin with both of them. Jennifer's niece also informed investigators that Briscoe had stayed overnight at Jennifer's house on May 27, 2015. Finally, Jennifer's niece told investigators that Jennifer had two phones at the time of her murder: a flip phone and a smart phone. BPD recovered Jennifer's flip phone from the scene of the murders at 103 Upmanor Road, but did not locate her smart phone.

---

[2] On June 23, 2021, a federal grand jury charged Kiara Haynes in a Second Superseding Indictment with two counts of violations of 18 U.S.C. §§ 924(c) and (j) relating to the murders of Jennifer and K.B. (ECF No. 65.) On November 16, 2021, Kiara Haynes pled guilty to both counts. (Plea Agreement, ECF No. 105.)

Investigators reviewed the information contained in Jennifer's flip phone and discovered a contact for "Pooh" who was assigned to the phone number (443) 621-2413 ("2413 number" or "2413 phone"). On June 1, 2015, BPD investigators obtained orders from the Circuit Court for Baltimore City for tracking and subscriber information related to Jennifer's missing smart phone. (ECF No. 110-3 *SEALED*.) The records of Jennifer's smart phone showed that the last call from the phone was made one day before the discovery of the Jennifer's and K.B.'s bodies. That call was made to the 2413 number, the same number associated with the contact "Pooh" in the recovered flip phone. According to subscriber records, the 2413 number was subscribed to Andre Ricardo Briscoe.

BPD investigators began to search for Briscoe and his cousin Tony. They contacted members of the Cambridge Police Department ("CPD"), who provided them with possible addresses for Tony, including an apartment located at 502 Greenwood Avenue. On June 4, 2015, Baltimore homicide detectives obtained an order from the Circuit Court for Baltimore City for toll records, a pen register, subscriber information, and cell site location information for Briscoe's 2413 phone. (Gov. Hr'g Ex. 4M2; ECF Nos. 110-4, 110-5 *SEALED*.) They also received an order track the phone in real time as well as a warrant for Briscoe's DNA. (ECF No. 110-6 *SEALED*.)

On the morning of June 5, 2015, the data from the location monitoring order placed the 2413 phone in the area of 502 Greenwood Avenue in Cambridge, Maryland, an address that CPD had previously associated with Briscoe's cousin Tony. The apartment complex consisted of a series of three-level buildings, with two apartments off each floor's staircase landing. (Photo, Gov. Hr'g Ex. 38.) Baltimore police officers contacted Cambridge police

officers to coordinate a search of 502 Greenwood Avenue, Apartment 101, an apartment investigators believed to be associated with Tony. Baltimore homicide detectives applied for and received a warrant from the Circuit Court for Baltimore City to search apartment 101. (Def. Hr'g Ex. 4; ECF No. 69-1.)

At approximately 8:55 a.m. on June 5, 2015, members of the Cambridge Police Department, assisted by members of the Baltimore Police Department, announced their presence at Apartment 101. When no one answered the door, officers used a key to enter the apartment, but did not find Briscoe inside. BPD officers, however, received data from the location tracking device that the 2413 phone was still nearby. Officers went to the second floor of 502 Greenwood Avenue and asked for consent to enter Apartment 201. The resident of Apartment 201 denied consent. A member of BPD then knocked on the door of Apartment 202. The Government presented evidence at the Motions Hearing the individual who opened the door stepped back and consented to law enforcement entry into the apartment. (ECF Nos. 69-5, 69-6, 69-7.)

Once inside Apartment 202, officers noticed several individuals moving quickly towards a room in the back of the apartment as well as an individual on the couch. Officers confirmed that the individual on the couch was the Defendant Briscoe. They secured his person as well as a blue Alcatel phone that was found underneath him on the couch. Investigators learned that the blue Alcatel phone was the phone associated with the 2413 number for which they had obtained the tracking order. As they searched the residence after securing all of the people who were located, officers discovered suspected narcotics in a bedroom. Officers transported all of the males in the apartment, including Briscoe, Tony,

and three other relatives and friends to the Cambridge Police Department police station for questioning. At the station, after being advised of his rights, Briscoe made statements to Baltimore homicide detectives in an audio and video recorded interview. (ECF No. 110-27 *SEALED*.) After the interview, Cambridge Police officers charged Briscoe and others with possession of the suspected narcotics recovered in Apartment 202. The charges were dropped by Cambridge authorities several months later, and Briscoe was released from detention on or about October 7, 2015.

At some point later, federal authorities took over the investigation of the murders of Jennifer Jeffrey and her son, K.B. On May 22, 2020, members of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") arrested Briscoe on a criminal complaint charging him with narcotics offenses. On that same day, Briscoe provided statements to law enforcement in an audio-recorded interview. (Report of Investigation, ECF No. 110-28 *SEALED*.) On July 31, 2020, ATF Special Agent Javon Weaver applied for and received a warrant from a United States Magistrate Judge of this Court to obtain information associated with several Facebook accounts, including Briscoe's. (ECF No. 110-16 *SEALED*.) On September 23, 2020, a federal grand jury returned a superseding indictment that continued to charge Briscoe with narcotics and firearms charges, but also charged him with the murders of Jennifer and K.B. in violation of 18U.S.C. §§ 924(j), 924(c), and 1512. (ECF No. 37.) On September 9, 2021, the Government filed a Notice of Intent Not to Seek the Death Penalty against Briscoe. (ECF No. 93.) On December 8, 2021, a federal grand jury returned the operative Third Superseding Indictment against Briscoe. (ECF No. 114.) Trial in this matter is set for May 23, 2022.

## ANALYSIS

### I.       Motion to Suppress Statements

The Defendant has moved to suppress the statements he made to law enforcement on both June 5, 2015 and May 22, 2020. (ECF No. 72.) He argues that his statements were involuntary, and that any waiver of his rights was not knowing such that the statements were obtained in violation of his rights under the Fifth Amendment. The Fifth Amendment privilege against self-incrimination provides that "[n]o person. . . shall he compelled in any criminal case to be a witness against himself." U.S. Const., Amendment V. In *Miranda v. Arizona*, the Supreme Court established a prophylactic, procedural mechanism that safeguards a defendant's Fifth Amendment privilege when that defendant is subject to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *see also Dickerson v. United States*, 530 U.S. 428, 444, (2000) (reaffirming *Miranda* as "a constitutional rule."). "Before conducting a custodial interrogation of a suspect, law enforcement officials must inform the suspect that he has the right to remain silent, that his statements may be used against him at trial, and that he has the right to an attorney during questioning." *United States v. Wilder*, 304 F. Supp. 3d 464, 469 (D. Md. 2018). "An individual subject to custodial interrogation may waive his *Miranda* rights; however, for such a waiver to be valid, it must be voluntary, knowing, and intelligent." *United States v. Silva*, No. 2:15-cr-1, 2015 U.S. Dist. LEXIS 57609, at *18 (N.D.W. Va. Apr. 10, 2015) (citing *United States v. Cardwell*, 433 F.3d 378, 389-90 (4th Cir. 2005)). "[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence." *United States v. Matlock*, 415 U.S. 164, 177 n.14, (1974); *Colorado v. Connelly*, 479 U.S. 157, 168-69

(1986) ("Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence."); *United States v. Robinson*, 404 F.3d 850, 860 (4th Cir. 2005).

### A.      June 5, 2015 Statements

There is no basis to suppress the Defendant's June 5, 2015 statements. The parties do not dispute that the Defendant was subject to custodial interrogation when he was questioned by Baltimore Police homicide detectives Brian Lewis and Vernon Parker at the Cambridge police station. The parties also do not dispute that the Defendant executed a written Advice of Rights and Waiver of *Miranda* Rights form in which he acknowledged that he "fully underst[ood] each of these rights and . . . [was] willing to answer questions without consulting a lawyer or having a lawyer present . . .." (Gov. Ex. 14, ECF No. 110-14 *SEALED*.) In that form, the Defendant further acknowledged that his "decision to answer questions and make statements is entirely free and voluntary . . . ." (*Id.*) The issue before this Court is whether the Defendant's waiver was indeed voluntary, knowing, and intelligent.

The United States Court of Appeals for the Fourth Circuit has held that "[t]he test for determining whether a statement is involuntary under the Due Process Clause is whether the defendant's will has been overborne or his capacity for self-determination critically impaired because of coercive police conduct." *United States v. Cristobal*, 293 F.3d 134, 140 (4th Cir. 2002) (internal quotation marks and citations omitted). "To determine whether a defendant's will has been overborne or his capacity for self-determination critically impaired, courts must consider the totality of the circumstances, including the characteristics of the

defendant, the setting of the interview, and the details of the interrogation." *Id.* (internal quotation marks omitted). At the motions hearing in this case, this Court heard the testimony of Detective Brian Lewis, who conducted the interview in question. This Court also viewed portions of the video recording of the interview. The uncontroverted evidence in the record shows that the Defendant's waiver of his rights was voluntary. At the time he made the statements, the Defendant was in his 30s, and he was no newcomer to the criminal justice system, having sustained several convictions before that day in June 2015. Officers provided the Defendant with drinks and restroom breaks. The video recording shows that the detectives interviewing the Defendant did not threaten him or use force to get him to sign the waiver. (June 5, 2015 Video Recording, Gov. Ex. 15.) This Court's assessment of the totality of the circumstances is that the Defendant's will was not overborne when he waived his *Miranda* rights.

The evidence also shows that Defendant's waiver was knowing and intelligent. To determine a waiver of *Miranda* rights is knowing and intelligent, a court must ascertain whether the waiver was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Cristobal*, 293 F.3d at 140. In this case, the Defendant argues that his statement that he had been drinking and asleep prior to officers entering Apartment 202 renders his waiver void. (Draft Tr., ECF No. 110-27 *SEALED* at 3.) The record reflects that the Defendant was arrested in Apartment 202 after being awakened sometime after 8:00 a.m. on June 5, 2015 and was questioned nearly six hours later at 2:00 p.m. The testimony in the record, and indeed the Defendant's appearance on video, do not suggest that the Defendant was intoxicated or that he was unable to

understand the rights he was surrendering by executing the waiver. Indeed, Detective Lewis

testified that the Defendant was coherent and able to recall details and phone numbers.[3]

Accordingly, there is no basis on which to conclude that the Defendant's waiver was not

voluntary, knowing, and intelligent. The Motion to Suppress Statements (ECF No. 72) is

DENIED as to the June 5, 2015 statements.

### B.    May 22, 2020 Statements

Likewise, there is no basis to suppress the Defendant's May 22, 2020 statements to

federal law enforcement officers. The Defendant was arrested pursuant to a federal criminal

complaint authorized by a Magistrate Judge this Court. (20-mj-1328 *SEALED*, ECF No.

1.) After being transported from the location of his arrest in Baltimore County to the Bureau

of Alcohol, Tobacco, Firearms, and Explosives ("ATF") building in downtown Baltimore,

ATF Agent Javon Weaver and ATF Task Force Officer ("TFO") David Azur, also a

member of the Baltimore Police Department, placed the Defendant in a holding cell for a

brief period of time while they removed their tactical gear and prepared to interview him.

There is no dispute that the Defendant executed an ATF Advice of Rights and Waiver form.

(Gov. Ex. 21, ECF No. 110-20 *SEALED*.) This Court also listened to excerpts of the

audio-recorded interview at the motions hearing. (Gov. Ex. 30.) Notably, once the

Defendant expressed that he no longer wished to answer questions, Agent Weaver and TFO

Azur stopped all questioning and prepared to send the Defendant to the custody of the

---

[3] Even if the Defendant had exhibited indications of intoxication, that would not automatically render his statement inadmissible. "The test of whether a person is too affected by alcohol or other drugs voluntarily and intelligently to waive his rights is one of coherence, of an understanding of what is happening." *United States v. Smith*, 608 F.2d 1011, 1012 (4th Cir. 1979); *see also United States v. Walker*, 607 F. App'x 247, 256 (4th Cir. 2015) (declining to adopt a *per se* rule that intoxication, without more, is sufficient to render a *Miranda* waiver ineffective).

United States Marshals Service. (Draft Tr., ECF No. 110-19 *SEALED* at 52.) There is simply no evidence in the record to suggest that the Defendant's will was overborne or that he did not appreciate the nature of the rights he agreed to waive. Accordingly, the Defendant's Motion to Suppress Statements (ECF No. 72) is also DENIED as to the May 22, 2020 statements.

## II.     Motion to Suppress Facebook Records

The Defendant has also moved to suppress the fruits of a federal search warrant executed on his Facebook account. (ECF No. 73.) The Defendant argues that the warrant lacked probable cause and that all of the information sought from his Facebook account was publicly available. The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Supreme Court of the United States "has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible." *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975) (citing *Johnson v. United States*, 333 U.S. 10, 13-14 (1948)). The magistrate is required "simply to make a practical, commonsense decision whether, given all the circumstances in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

When a defendant challenges a search warrant, the government bears the burden of proof by a preponderance of the evidence at a suppression hearing. *See United States v. Matlock*, 415 U.S. 164, 177-78 n.14 (1974). In reviewing the search warrant, this Court must show "great deference" to the probable cause determination of a magistrate judge. *Blackwood*, 913 F.2d at 142. "[T]he task of the reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

On July 30, 2020, Agent Weaver of the ATF submitted an application to this Court for a warrant to search four Facebook accounts associated with the murder investigation: two accounts that belonged to co-defendant Kiara Haynes, one account that belonged to Jennifer, and one account that belonged to the Defendant.[4] (Gov. Ex. 17, Aff. in Support of Warrant, ECF No. 110-16 *SEALED* at 1.) Agent Weaver's affidavit provides extensive information about the state of the federal investigation. It also notes that the Defendant and his alleged co-conspirator Kiara Haynes frequently used Facebook to communicate during the timeframe in which the murders occurred. In addition, the affidavit states that Haynes received several messages from Jennifer's family members containing threats or other information concerning the family's belief as to who committed the murders. (*Id.* at 3.) The affidavit further references renewed Facebook communications between Briscoe and Haynes

---

[4] The Defendant challenges only the search of his Facebook account because he does not have standing to challenge the searches of the three other accounts. *See United States v. Hargrove*, 647 F.2d 411, 413 (4th Cir. 1981) (recognizing that the Supreme Court has held that "to establish standing for asserting a violation of the Fourth Amendment, a person must show a legitimate expectation of privacy in the area searched").

in the years after the murders as well as statements by Briscoe while he was incarcerated in which he discussed marrying Haynes. In short, the warrant to search the Defendant's Facebook account is supported by ample probable cause.[5]

Even if there were a basis to dispute the adequacy of the probable cause determination in this warrant, there would be no reason to suppress the fruits of the search because law enforcement officers relied in good faith upon the warrant. The Fourth Amendment exclusionary rule does not bar the admission of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a magistrate later found to be invalid. *United States v. Leon*, 468 U.S. 897, 913-14 (1984). The evidence will be suppressed only if (1) the issuing judge was misled by information that the affiant knew or should have known was false, (2) the judge "wholly abandoned" her neutral role, (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is so facially deficient that no reasonable officer could presume it to be valid. *Id.* at 923 (citations omitted). *See, e.g.*, *United States v. Lewis*, No. MJG-17-0323, 2018 U.S. Dist. LEXIS 239580, at *5 (D. Md. Mar. 28, 2018) (declining to suppress evidence seized from the search of a Facebook account) (citing *United States v. Leon*, 468 U.S. 897, 925-26 (1984)). Accordingly, the Defendant's Motion to Suppress Facebook Records (ECF No. 73) is DENIED.

---

[5] The warrant also sets forth with particularity the account to be searched and the files to be seized. It is also limited in scope in that it requires Facebook to provide responsive records that date between January 1, 2015 and the date of the warrant. *See United States v. Blakeney*, 949 F.3d 851, 863 (4th Cir. 2020). Indeed, the warrant requires Facebook to produce, among other things, private messages associated with the account, information that is not publicly accessible. (Attachment B, ECF No. 110-16 *SEALED*.)

### III.    Motion to Suppress Search of Residence and Person

Finally, the Defendant has moved to suppress the evidence seized on June 5, 2015 during the search of 502 Greenwood Avenue, Apartment 202 as well as the evidence seized from his person on the same date. (ECF Nos. 69, 101.)

### A.    Tracking Order

The Defendant argues that the evidence in question should be suppressed because investigators were led to the location of 502 Greenwood Avenue by an illegal "stingray" device for which they did not have a warrant. The Government argues that Baltimore Police homicide detectives applied for and received the functional equivalent of a warrant to track in real time the location of the Defendant's 2413 phone.[6] The United States Supreme Court

> has distilled three separate components of the warrant requirement: First, Warrants must be issued by neutral and detached magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense. Finally, warrants must particularly describe the things to be seized, as well as the place to be searched.

*Dalia v. United States*, 441 U.S. 238, 255 (1979) (internal citations omitted). Judge Blake of this Court has held that where tracking orders for real time cell site location information meet the three components of the warrant requirement, they qualify as "warrants" for Fourth Amendment purposes. *Andrews v. Balt. City Police Dep't*, No. CCB-16-2010, 2018 U.S. Dist. LEXIS 129523, at *18 (D. Md. Aug. 1, 2018).

---

[6] In *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018), the Supreme Court held that the Government must generally obtain a warrant supported by probable cause before acquiring real time cell site location information. The order in question, however, was issued on June 4, 2015, years before the Supreme Court's decision in *Carpenter*.

In this case, the tracking order issued by the Circuit Court for Baltimore City satisfies the requirements of the Fourth Amendment. First, the order is supported by probable cause. The affidavit in support of the order notes that the victims were found in their underwear and pajamas, a fact supporting the inference that the killer was known to the victims. (Gov. Hr'g Ex. 4M2; ECF No. 121 *SEALED* at 4.)  The affidavit also states that the Defendant was the last person to communicate by phone with Jennifer before her death, and that the Defendant had ceased a pattern of frequent communication with Jennifer following that last call.[7] (*Id.* at 5.) These facts, taken together, provided ample probable cause to believe that evidence relevant to the murders would be found by tracking the Defendant's phone. Having reviewed the affidavit, a Judge of the Circuit Court of Maryland for Baltimore City found probable cause and signed the order. (*Id.* at 7.) Finally, the order specifies with particularity that it authorizes the police to obtain electronic device location information for the 2413 phone for a period of 30 days. Accordingly, the tracking order for the Defendant's

---

[7] The Defendant argues that the statement in the affidavit that he "was the last person see [sic] the victim according to the victim's family," is a misstatement because in fact Jennifer's niece told BPD investigators that she herself had been the last person to see the victims before she left for work on the morning of May 27, 2015. The same sentence of the affidavit continues, however, to note that the Defendant "was the last person to speak with the victim via cell phone on 27 May 2015 at 1141am [sic]." The Government acknowledged on the record at the motions hearing that the first half of the sentence was inartful, but argued that the order was still supported by probable cause in light of the other facts proffered. Even assuming that the statement was a misrepresentation, the Fourth Circuit has held that "the inclusion of tainted evidence does not invalidate a search warrant if enough untainted evidence supports it." *United States v. Wright*, 991 F.2d 1182, 1186 (4th Cir. 1993). In this case, the affidavit sets forth sufficient evidence apart from the statement in question from which a magistrate could find probable cause. Read in the context of the affidavit as a whole, that one statement does not invalidate the basis for probable cause.

phone satisfies the components of the Fourth Amendment warrant requirement, and there is

no basis to suppress the evidence obtained as a result of the order.[8]

### B.     Entry into Apartment 202

The Defendant has also moved to suppress any evidence seized from 502

Greenwood Avenue, Apartment 202, where he was located by police on June 5, 2015. The

Government argues that police entered the apartment with consent, detained the Defendant

pursuant to a lawful protective sweep, and arrested him after they discovered suspected

narcotics in a bedroom, in which the Defendant did not have a legitimate expectation of

privacy.

The uncontradicted evidence presented at the Motions Hearing shows that the police

had consent to enter Apartment 202. A search conducted pursuant to valid consent is a well-

recognized exception to the Fourth Amendment's general warrant requirement. *Schneckloth v.*

*Bustamonte*, 412 U.S. 218 (1973). Whether consent to search was given is a factual issue to be

determined by the district court. *United States v. Mendenhall*, 446 U.S. 544, 557 (1980). "It is

well settled that the Government must shoulder the burden of proving that an individual

freely and intelligently gave . . . unequivocal and specific consent to the search,

uncontaminated by any duress or coercion, actual or implied." *United States v. Vasquez-*

*Lozano*, No. 3:07-cr-264-C, 2008 U.S. Dist. LEXIS 27099, at *4-5 (W.D.N.C. Mar. 19, 2008)

(citing *United States v. Morrow*, 731 F.2d 233, 235-36 (4th Cir. 1984)).

---

[8] Even if the tracking order was not supported by probable cause, there would still be no basis to suppress the evidence in question because the police relied on the order in good faith. *United States v. Leon*, 468 U.S. 897, 922 (1984).

At the Motions Hearing, the Government presented the testimony of Cambridge Police officers who participated in the search for the Defendant at 502 Greenwood Avenue. The testimony shows that members of the Cambridge Police and Baltimore Police loudly executed a search warrant at Apartment 101 and did not locate the Defendant. Baltimore Police continued to receive strong pings from the Defendant's 2413 phone, suggesting that phone was nearby. Officers then decided to seek entry into other apartments by consent. The residents of Apartment 201 declined to give consent. After a member of the Baltimore Police Department knocked on the door of Apartment 202, the man who opened the door appeared to answer the officer calmly and stepped back so as to allow officers into the residence. Other members of the Cambridge Police Department and the Baltimore Police Department followed the officer who knocked into the residence to search for the Defendant. Nothing in the record, including the statements of the individual who opened the door himself, supports a finding that the consent in this case was anything but voluntary.[9] Accordingly, this Court concludes that officers lawfully entered Apartment 202 with consent.

---

[9] At the motions hearing, the Defendant objected to this Court's consideration of the individual's grand jury transcripts. (ECF No. 110-29 *SEALED*.) The Fourth Circuit has recognized that the Confrontation Clause is a trial right. *United States v. Powell*, 650 F.3d 388, 391 (4th Cir. 2011) (holding that the right of confrontation does not apply at sentencing). *Cf. United States v. Robinson*, 663 F. App'x 215, 218 (3d Cir. 2016) (noting that "the Supreme Court has never suggested, however, that the Confrontation Clause applies during a pre-trial suppression hearing"). In any event, when judged pursuant to the "objective standard" commanded by the Fourth Circuit, it is clear from the testimony at the motions hearing that a reasonable officer presented with the situation at Apartment 202 would believe that he had consent to enter the residence. *United States v. Stiltner*, No. 93-5366, 1994 U.S. App. LEXIS 28566, at *4 (4th Cir. Oct. 14, 1994).

### C.    Arrest of Briscoe and Seizure of Alcatel Phone

The Government argues that there is no basis to suppress the evidence seized from Apartment 202 because officers secured the individuals located inside pursuant to a lawful protective sweep and because the Defendant does not have standing to move to suppress the suspected narcotics officers recovered from a bedroom in the residence.

In *Maryland v. Buie*, 494 U.S. 325 (1990), Supreme Court held that incident to an arrest and based upon reasonable suspicion, officers may make a "cursory inspection of those spaces where a person may be found" as a protective sweep. *Id.* at 334-3. The Fourth Circuit has noted that "the vast majority of circuit courts to have considered the issue have upheld protective sweeps conducted in non-arrest situations in which officers are lawfully on a defendant's property." *United States v. Portis*, 407 F. App'x 669, 671 (4th Cir. 2011). This Court has noted that "[t]hese courts have generally reasoned that a lawful warrantless entry into a home creates a risk of harm similar to the risk accompanying an arrest. Accordingly, they saw no reason to limit *Buie* to arrests." *United States v. Osiomwan*, No. WDQ-12-0265, 2013 U.S. Dist. LEXIS 72701, at *19-20 (D. Md. May 22, 2013).

In this case, officers testified that when they made entry into Apartment 202, they saw several individual running towards a back room. Officers conducted a protective sweep of the apartment to locate all individuals and ensure that there was no threat to law enforcement. In the course of their protective sweep, officers located the Defendant on a

couch in a common room, confirmed his identity, and set his blue Alcatel phone aside to make sure it did not become damaged in the commotion.[10]

Once they had secured the premises, officers conducted a search of the Apartment and recovered suspected narcotics from a bedroom.[11] CPD charged three individuals including the Defendant with narcotics offenses. The Defendant argues that his status as an overnight guest in the apartment confers upon him standing to challenge the search of the apartment and the seizure of the suspected narcotics. While a person typically does not have standing to challenge a search and seizure of another person's home, there are situations where a person "may have a legitimate expectation of privacy in the house of someone else." *Minnesota v. Carter*, 525 U.S. 83, 89 (1998). For example, the Supreme Court has found that "an overnight guest has a legitimate expectation of privacy in his host's home." *Minnesota v. Olson*, 495 U.S. 91 (1990). Persons only in a home for a matter of hours, however, do not qualify as overnight guests. *Minnesota v. Carter*, 525 U.S. 83, 90 (1998).

The evidence presented at the Motions Hearing shows that the Defendant's phone began to ping from the location of 502 Greenwood Avenue only after 4:00 a.m. on June 5, 2015. (Gov. Hr'g Exs. 36, 36A, 36B, 36C, 36D.) The record also reflects that law enforcement came to the apartment complex around 8:00 a.m. that same morning. In addition, the lessee of the provided a written statement and grand jury testimony confirming

---

[10] On June 4, 2015 at 6:40 p.m., Baltimore Police obtained a warrant signed by a Judge of the District Court of Maryland for Baltimore City, for the Defendant's DNA. (ECF No. 110-6 *SEALED*.) The warrant is supported by the same affidavit of Detective Lewis provided in support of the tracking order. Thus, for the reasons stated above, the DNA warrant satisfies the requirements of the Fourth Amendment, and there is no basis to suppress the evidence obtained as a result of its execution.

[11] Officers subsequently applied for and received from the Circuit Court for Baltimore City a warrant to search Apartment 202. (Gov. Ex. 13M, ECF No. 121-1 *SEALED*.) In this case, the Government does not rely on that warrant. (ECF No. 119.)

that the Defendant was not present in the apartment on June 4, 2015, the night prior to the search, nor was he present for most of the morning of June 5, 2015. (ECF No. 110-23 *SEALED*; ECF No. 110-22 *SEALED*.) Accordingly, this Court concludes that the Defendant was not an overnight guest at Apartment 202 and does not have standing to challenge the search of the premises.

## CONCLUSION

For the reasons stated above, Defendant Briscoe's Motion to Suppress Statements (ECF No. 72), Motion to suppress Facebook Records (ECF No. 73), and Motion to Suppress Search of Residence and Person (ECF Nos. 69, 101) are DENIED. Trial will commence on May 23, 2022.

A separate Order follows.

Dated: February 1, 2022

_____/s/_____
Richard D. Bennett
United States District Judge