```
 1                  IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MARYLAND
 2                       NORTHERN DIVISION


 3
   UNITED STATES OF AMERICA        )
 4          Plaintiff,             )
        v.                         )Criminal No. RDB-20-139
 5 ANDRE BRISCOE                   )
            Defendant.             )
 6 _____ )
                                          Baltimore, Maryland
 7                                        May 10, 2022
                                          11:09 a.m.
 8

 9             THE ABOVE-ENTITLED MATTER CAME ON FOR

10                       MOTIONS HEARING

11          BEFORE THE HONORABLE RICHARD D. BENNETT

12

13                    A P P E A R A N C E S

14 On Behalf of the Plaintiff:
        DANA BRUSCA, ESQUIRE
15      PAUL BUDLOW, ESQUIRE

16 On Behalf of the Defendant:
        TERESA WHALEN, ESQUIRE
17      WILLIAM B. PURPURA, JR., ESQUIRE

18 Also Present:
        SPECIAL AGENT JAVON WEAVER
19      SPECIAL AGENT JEFF KELLY
        ROBERT CADLE, ESQUIRE
20

21

22      (Computer-aided transcription of stenotype notes)

23                       Reported by:
                    Ronda J. Thomas, RMR, CRR
24                  Federal Official Reporter
                 101 W. Lombard Street, 4th Floor
25                  Baltimore, Maryland 21201
```

<u>P R O C E E D I N G S</u>

**THE COURT:**  This is calling the case of United States of America v. Andre Briscoe, Case Number RDB-20-139 in connection with the proceeding of this case to trial on Monday, May the 23rd.

Those in the gallery may be seated in the back.

With counsel and parties before me, let me just note that the standing orders of this court provide that masks shall be worn in all public areas of the courthouse with the exception of in the courtroom when, in the discretion of the presiding judge, masks may be lowered while speaking if a court participant or party has been fully vaccinated and so chooses to pull their mask down.  So I will inquire of the vaccination status of the counsel before me and the parties.

I will note that I have been fully vaccinated and boosted. I tested positive two weeks ago for COVID, so I took precautions, and then tested negative, and then had a partial positive like about a week ago.  So once again, I took precautions and quarantined, and I've tested negative yesterday.  So I'm feeling fine, I think, and all systems are go.

The record will reflect that I am behind a wall of plexiglass and my courtroom is retrofitted with plexiglass.  So when I inquire of vaccination status it is truly up to the discretion of those that have been vaccinated to pull their

1    mask down.  They don't have to but if they so choose they can.

2        I will ask if people have their mask up while speaking to

3    speak very clearly for the benefit of Ms. Ronda Thomas, my ace

4    court reporter, who also has the challenge of keeping up with a

5    quick-talking federal judge here.

6        So with that, I will inquire of counsel.  If counsel will

7    identify themselves for the record, please?

8        MS. BRUSCA:  Thank you, Your Honor.  On behalf of the

9    Government, I'm Dana Brusca with my co-counsel Paul Budlow and

10   case agents Javon Weaver and Jeff Kelly.  I have been fully

11   vaccinated.

12       THE COURT:  Yes, Ms. Brusca, nice to see you.  Good

13   morning.  And certainly you can keep your mask down while

14   speaking.

15       Mr. Budlow, good morning to you as well.  Nice to see you.

16       MR. BUDLOW:  Good morning, Your Honor.  I also have

17   been fully vaccinated.

18       THE COURT:  Great.  Nice to see you.

19       And Agent Kelly and Agent Weaver, nice to have both of

20   you.  And if you have any reason to be speaking here today, you

21   can pull your mask down if you've been fully vaccinated.  But,

22   again, it's your choice one way or the other.  So you all may

23   be seated.

24       On behalf of the Defendant?

25       MS. WHALEN:  Good afternoon -- or actually it's still

1  morning.  Good morning, Your Honor.  Teresa Whalen.  I'm here

2  on behalf of Mr. Briscoe.

3         THE COURT:  And you have been fully vaccinated?

4         MS. WHALEN:  I have been, Your Honor.

5         THE COURT:  Thank you.

6         MS. WHALEN:  And Mr. Purpura is co-counsel.  I also

7  wanted to introduce Your Honor to our newly-barred attorney,

8  Robert Cadle, who's back here assisting in the case.

9         THE COURT:  Nice to have you here.  And he's certainly

10  welcome to come up and sit with you at counsel table if you

11  would like.  Whatever you want.  If he wants to sit on the

12  other end he's certainly welcome to come.

13      His name again is?

14         MS. WHALEN:  Robert Cadle.

15         THE COURT:  Mr. Cadle, nice to have you here.

16  Welcome.  Nice to have you.  Come on up and you can be seated

17  over here.

18      Good morning to you, Mr. Purpura.  Nice to see you as

19  always.

20         MR. PURPURA:  Good morning.  Thank you.  Fully

21  vaccinated and Andre Briscoe is present.

22         THE COURT:  Yes, Mr. Briscoe, nice to see you.  Good

23  morning to you, sir.  Have you been fully vaccinated, sir?

24         THE DEFENDANT:  No, sir.

25         THE COURT:  All right.  Then if for any reason you

1  need to speak here today, which I don't think you will, but if
2  you have any reason to speak, if you will just -- you have to
3  keep your mask on at all times then, okay.  Thank you very
4  much.  You may be seated.
5       Welcome to all of you.  We have a few preliminary matters
6  to go over here.
7       Russell, this Rule 5 order would have nothing to do with
8  what we're doing here.  Here, you can take this back.
9       Just, clearly, under Rule 5 of the Federal Rules of
10 Criminal Procedure this case is two weeks out of trial.  There
11 have been full compliance with the *Brady v. Maryland*
12 obligations, correct, Ms. Brusca?
13          **MS. BRUSCA:**  Yes, Your Honor.
14          **THE COURT:**  There are no *Brady* issues here to your
15 knowledge, are there, Ms. Whalen?
16          **MS. WHALEN:**  No, Your Honor.
17          **THE COURT:**  All right.  Thank you.  Russell, you can
18 take that.  Thank you very much.
19      Let me just go over a few things.  I think they have a
20 copy of the *voir dire*?
21      I've provided you a copy of the *voir dire* and juror answer
22 sheets that we'll be utilizing in two weeks.  I would note that
23 to the extent that anyone has filed requests for *voir dire*
24 questions, and they have not been given verbatim, then counsel
25 have preserved any objection.  I think this gets to the thrust

of the requested *voir dire* questions.  But, again, just for the record for the defense, if you don't have exactly what you requested verbatim then you preserve any issue on appeal if there is a conviction in this case.  But I think we have the thrust of what everyone has requested.

I would note that with respect to the juror answer sheet, the way this will proceed is is that we will have these sheets handed out to the jurors, who will be in another courtroom and will be linked by video with this courtroom, and I will ask the questions.  They will note their answers.

You all -- all of you will have copies of the questions that I ask them.  You do not get copies of the answers, but I'll go over the answers with you.  This is the way it was done -- has been done here in the face of the COVID-19 pandemic in several trials.  Certainly it's the way in October -- a trial I had in October, that's the way it was done.  And I go over the answers with you.

We call the jurors in one-by-one and they come into the well of the courtroom.  And I will just go over their answers with you.  Anything they've written down I'll repeat to all of you.  We don't have time to try to photocopy all of this.  And then you'll have been free, if you have any follow-up questions, to ask questions at that time.

If there's any effort for strike for cause, that will not be done in the presence of the juror.  When the juror is

```
 1  excused, if anyone seeks to strike for cause you note it at
 2  that time, and I will make my ruling as to whether or not that
 3  juror will or will not be stricken for cause.  Obviously, you
 4  preserve your rights on appeal if for some reason the defense
 5  seeks to strike a juror for cause and I don't grant that.
 6       The way it normally works with me, even before COVID, I'll
 7  indicate if I have a problem with it right away.  But I'll wait
 8  for -- many times the lawyers may raise an issue immediately or
 9  I may have some problem, and I'll note it, and we'll address it
10  at that time.  You'll be aware of my ruling immediately when I
11  make it.
12       The only other issue I think I would note here is I -- you
13  all had said -- anticipate that the trial will last three
14  weeks.  I've indicated that it will last two.
15       The target date I think I want to put on this, which I
16  think is consistent with how we've discussed this case in the
17  past, I think we recognize we may drift over to the beginning
18  of a third week.  The target date for me is going to be that
19  closing arguments in the case would be Monday, June the 6th.
20       We can allow a little bit of a fudge factor if we drift to
21  Tuesday, June the 7th for closing arguments.  But I think
22  that's a realistic schedule.
23       We'll sit all five days the week of May 23.  Monday,
24  May 30 is Memorial Day.  So we'll have five trial days the week
25  of May 23.  Four trial days the week of May 30.  That's nine
```

1  trial days.  I think this case can be tried in nine trial days.

2  If it goes to a tenth then we can always have closing arguments

3  on Tuesday, June 7th.  Things start to get a little tight in my

4  calendar after that.

5      The next to last or second to last question will be I

6  anticipate that this trial will last two weeks and possibly the

7  beginning of a third week.

8      Does the Government have any strong objection to that

9  projection from my point of view, from the Court's point of

10 view, Ms. Brusca?

11         MS. BRUSCA:  Thank you, Your Honor.  I think it's

12 highly unlikely the Government will rest before Friday the 3rd.

13 So I think we can do it by the 3rd.  The 6th or the 7th could

14 be possible, but I know the defense -- it sounds like they may

15 have one or two days.  So it's close.  I think it will be

16 close.

17         THE COURT:  We'll see.  If I need to put a little push

18 on this, I'm not going to have a red light, green light, orange

19 light Fourth Circuit bar up here but I'll try to watch it and

20 make sure we keep moving forward.

21     Ms. Whalen, and Mr. Purpura, does that sound like a

22 reasonable projection of time from your point of view?  You all

23 can conference for a minute if you want.  But I think that's a

24 reasonable proposal.  What do you think?

25         MS. WHALEN:  I think so, Your Honor.

1          **THE COURT:**  Okay.  All right.  As I've said, I've

2    allowed a little bit -- I hate to tell you all of this because

3    somehow wiggle room automatically means that's what we

4    promised.  But it wouldn't be the end of the world if we

5    drifted to Tuesday, June 7 to have closing arguments.  But I'm

6    trying to allow enough time in here for a charge conference.

7          With respect to jury instructions, I really don't need to

8    have all the jury instructions before we start the trial.  As

9    many as I can have, I would like.  We have the pretrial

10   conference next week.  But I have no difficulty with jury

11   instructions coming in later and during the trial as we get

12   ready to end the case.

13         But I do, as I think I know Mr. Budlow and Mr. Purpura are

14   aware, I'm not sure if Ms. Whalen and Ms. Brusca are, I have

15   the charge conference on the record here in the courtroom.

16   Everything is on the record.  It may take a good half a day or

17   whatever to go through all that.  So I'm trying to allow all

18   that as well in terms of projecting when we would go to the

19   jury.

20         So, with that, I think that is all I need to address.

21         **MR. PURPURA:**  Judge Bennett.

22         **THE COURT:**  Yes, Mr. Purpura.

23         **MR. PURPURA:**  Two questions.  When you picked your

24   last jury with this procedure, how long did that jury selection

25   take?

 1          **THE COURT:**  Actually, it worked quicker than I thought

 2   as opposed to the normal process where I have a juror stand up

 3   and we have people coming up periodically, whatever.  We rolled

 4   through it reasonably well.

 5          I project that if we get started at 10:00 o'clock on

 6   Monday, right on the bat 10:00 o'clock on Monday, May 23, I

 7   believe we can have a jury picked by lunchtime.  Maybe a little

 8   bit early afternoon.  The only question will be whether or not

 9   we have opening statements on Monday.  Certainly we'll get it

10   done in one day.

11          The way I usually want to have that -- I don't want to

12   have one side make an opening statement on Monday and the other

13   side on Tuesday.  So if we can't get all the opening statements

14   done.  We'll just have to see how we go on this.

15          But, Mr. Purpura, as I recall, I have to check, it went

16   pretty quickly with Liberto, did it not?

17          Mr. Demetriou is the one that keeps me functioning.

18          He didn't do a very good job testing me for COVID by the

19   way.

20          (Laughter.)

21          **THE COURT:**  We're laughing up here.  Besides that, he

22   doesn't fail me.

23          He said it took a whole day in October.  So probably will

24   take a whole day of Monday, May 23 to pick a jury.  Then we

25   start fresh with opening statements Tuesday morning with the

1 24th.

2          **MR. PURPURA:**  Normal trial day 9:30 or 10:00?

3          **THE COURT:**  I think 10:00.  10:00 to 1:00, an hour for

4 lunch, and 2:00 to 5:00.  As you know, I don't -- I don't like

5 to rush people but if I sense we're drifting too long I might

6 say let's pick it up a little bit.  We'll see how that plays

7 out.

8          Any other questions on that?

9          All right.  Now, with that, let me just note that the --

10 this case is proceeding to trial.  There was an initial

11 criminal complaint, an indictment, a first superseding

12 indictment, a second superseding indictment, and then finally a

13 third superseding indictment that was returned in December of

14 2021.  And the Defendant, Mr. Briscoe, is the only Defendant

15 now remaining in the case that's proceeding to trial.

16          Essentially, the six substantive counts against him are

17 the same as those in the first and second superseding

18 indictments.  The third superseding indictment did add a notice

19 of special findings under 18 United States Code § 3559(d) and

20 3559(f) relating to the murder of a minor noted by the initials

21 K.B.

22          Obviously, as counsel is well aware, 18 United States Code

23 § 3559(d) provides that upon a conviction, unless the sentence

24 of death is imposed, and the Government is not seeking the

25 death penalty here, that the sentence to be imposed would be

```
 1   imprisonment for life.  That's statutorily required if there
 2   was a conviction under that statute.
 3       Correct, Ms. Brusca?
 4           MR. BUDLOW:  That's correct.
 5           THE COURT:  Correct, Ms. Whalen?
 6           MS. WHALEN:  Yes, sir.
 7           THE COURT:  Just so Mr. Briscoe understands that
 8   there's no discretion according to me in any way, shape or form
 9   under that statute it's a mandatory life sentence.
10       There are a series of motions that are now pending.  We
11   had one motions hearing already.  Any objections to those
12   motions remain preserved for the record.  There are a series of
13   six motions that we have open here to address today.  Some of
14   them, I think, are moot and others we definitely need to
15   address.
16       First of all, the Defendant Briscoe's Motion In Limine to
17   include statements by a deceased declarant, Paper Number 147,
18   has now been clarified in that the witness to whom that made
19   reference was an individual named Anthony Bugg, who it has now
20   been determined is in fact alive and is no longer unavailable
21   as a deceased declarant.
22       There is still an issue as to that matter that while it is
23   now moot with respect to the issue of a deceased declarant and
24   any issue under Rule 804(b)(3) with respect to an unavailable
25   declarant, 804(b)(3) of the Federal Rules of Evidence, there is
```

1    still the remaining issue as to whether he would be permitted

2    to testify as to, essentially, comments that he heard were made

3    as he was a participant in a telephone call.

4        And the Government has indicated if Mr. Bugg were to

5    testify about certain statements by Mike Gray, the Government

6    would then seek to ask a witness whether the Defendant had any

7    contact with the group known as the Black Gorilla Family.  So

8    that is an issue I still have to address as to that motion.

9        Is that a reasonably correct summary where we are on that,

10   Mr. Budlow?  That issue still remains.  Even if Bugg testifies,

11   there's an issue about whether or not I'm going to permit the

12   testimony or not.

13            MR. BUDLOW:  It does.  And I just think there's one

14   additional sub-issue, which is whether or not with respect to

15   Mr. Bugg's testimony, whether or not the defense would be

16   permitted to cross-examine any law enforcement officers about

17   having received that information --

18            THE COURT:  Yes.

19            MR. BUDLOW:  -- and ask questions.

20            THE COURT:  Ask questions about Michael Gray and

21   whether there was any discussion among Gray who's apparently

22   previously testified in this court and acknowledged his

23   involvement with the Black Gorilla Family, whether or not there

24   was any discussion about the murder initially.

25            MR. BUDLOW:  That's right.  Sort of two issues.

1          **THE COURT:**  So we have that issue we still have to
2   address in this motion then?
3          **MR. BUDLOW:**  Yes, Your Honor.
4          **THE COURT:**  Correct from your point of view,
5   Ms. Whalen?
6          **MS. WHALEN:**  Somewhat.  This is very technical.  It
7   really wasn't raised, I think, with regard to the motion.  It
8   was raised by the Government after, I think, whether it was --
9          **THE COURT:**  Mr. Bugg was found very much alive is the
10  point.
11         **MS. WHALEN:**  We believe he is alive, yes.  And in
12  my -- we can get to that, but I think the Government has raised
13  that they wish to limit our cross-examination of the
14  detectives.
15         **THE COURT:**  Right.
16         **MS. WHALEN:**  And they have raised the issue as to
17  whether the Gray statements should be admissible through Mr.--
18         **THE COURT:**  Well, if it's a statement or not.  That's
19  the first thing is to determine whether or not it is a
20  statement being offered for the truth of the matter asserted
21  therein.
22      My point is that's an issue that still lingers in the
23  aftermath --
24         **MS. WHALEN:**  Yes.
25         **THE COURT:**  -- of your motion, and I'll deal with that

1   this morning.

2           **MS. WHALEN:**  Yes.

3           **THE COURT:**  That'll be one of the first things we'll

4   deal with, so we have that matter to deal with.

5        Then we have Defendant's Briscoe Motion *In Limine* to

6   Exclude Evidence of Bad Acts and Prior Convictions, Paper

7   Number 148.  That we'll be dealing with.

8        Then we have the Government's motion to preclude the

9   admission of what the Government phrases as Defendant's

10  self-serving hearsay statements, Paper 150.

11       And, fourthly, we have the issue -- the Government's

12  Motion In Limine to admit excerpts of three jail calls

13  involving Kiara Haynes that the Government contends do not

14  constitute hearsay, as well as the Government's motion to

15  preclude admission of other jail calls that it contends are

16  hearsay.

17       We basically have those four areas to address this

18  morning.  Again, correct from the point of view of the

19  Government, Ms. Brusca?

20          **MR. BUDLOW:**  Correct.

21          **THE COURT:**  Ms. Whalen, correct from your point of

22  view?

23          **MS. WHALEN:**  Yes.

24          **THE COURT:**  We've teed those up.  And then there is

25  the Government's Motion *In Limine* to Exclude References to

1  Possible Penalties and in a letter to the Court counsel for

2  Mr. Briscoe, that motion is Paper Number 152, in a letter to

3  the Court counsel for Mr. Briscoe, Paper 170 in the file,

4  indicates that he does not intend to argue his possible

5  sentence.  So I think that that is moot and clearly that

6  wouldn't be permitted in terms of arguing what the possible

7  sentence would be.  Even if there's a mandatory sentence.

8      So I don't -- there's nothing I need to address from that

9  from the point of view of the Government; is that correct,

10 Ms. Brusca?

11          MR. BUDLOW:  No, Your Honor.

12          THE COURT:  Correct, Ms. Whalen, from your point of

13 view?

14          MS. WHALEN:  Yes, correct.

15          THE COURT:  All right.  So then the last one I note is

16 there was a request -- the Government's request for notice of

17 alibi, Paper Number 153, and there was a response to that in a

18 letter to the Court, Paper Number 170.  And to my knowledge the

19 Defendant has given notice that he intends to rely upon

20 evidence provided by the Government to include cell site

21 locations and his statement to law enforcement as well as Kiara

22 Haynes' statements to law enforcement as to his whereabouts.

23 That's what they intend to raise in the defense in some

24 fashion.

25      So any notice of alibi now is also moot; is that correct,

1  Ms. Brusca, from your point of view?

2          MS. BRUSCA:  The notice is moot, Your Honor.  Though

3  the issue as to Kiara Haynes' statements to law enforcement

4  have the same --

5          THE COURT:  All right.  We'll deal with that as I've

6  already mentioned.

7          MS. BRUSCA:  Okay.

8          THE COURT:  So that's fine.  Okay.  So I think that

9  that lays the groundwork for exactly where we are this morning.

10 And, with that, what I would propose to do is go to the first

11 area of inquiry, and that is the matter of the testimony of

12 Mr. Bugg if the defense chooses to call him as a witness.  And

13 as to that the Defendant made the initial motion, and I think I

14 would want to address this in the context of what the defense's

15 position is if they did decide to call him as a witness here.

16     And what we're dealing with precisely is that this, I

17 think, as I understand, the generation of this is that the --

18 there was statements made by -- it's contended or there were

19 statements made by Mr. Bugg that were corroborated by the

20 detectives in this case.  Specifically, one of them is

21 Detective Lewis that made certain handwritten notes.  And there

22 may be a proffer of Mr. Bugg's testimony.

23     So, Ms. Whalen, let me hear from you first on this exactly

24 in terms of what is the proffered -- it isn't so much he's --

25 if he testifies -- it's up to you if you're going to call him

1  as a witness or not, but if he testifies what is the context?

2  Proffer to me what his testimony is going to be on the matter

3  of Mr. Michael Gray and the telephone call.

4        MS. WHALEN:  Assuming that Mr. Bugg does testify, I

5  would anticipate that we would be able to bring out from him

6  any of the statements that he has already told law enforcement.

7        THE COURT:  Yes.

8        MS. WHALEN:  So we would attempt to bring out through

9  him that he was a participant of a phone call in which he was a

10  member of BGF, a gang.

11        THE COURT:  Mr. Gray was of a member of BGF?

12        MS. WHALEN:  Mr. Bugg.  Mr. Bugg and Mr. Gray.

13  Mr. Bugg was a member, a high-ranking member according to what

14  he told law enforcement.  And that he facilitated a telephone

15  call with Mr. Gray, the leader of BGF, in which the majority

16  voted to kill the victim and son.  And that I would indicate to

17  Your Honor that he clearly would have joined the gang knowing

18  what the gang does and that the gang does in fact kill other

19  people, among other things that the gang does.

20      So he has, in his testimony, assuming he testifies

21  consistently, he will be saying I was part of a conversation in

22  which the victim and her son were -- there was an order to kill

23  them.  Either green light or a hit to kill them.

24        THE COURT:  Just so the record is clear, there are

25  notes that were apparently taken by law enforcement that are

1   included as Paper Numbers 147-2 that are handwritten notes
2   apparently of this conversation, correct?
3           MS. WHALEN:  Correct, yes.
4           THE COURT:  Okay.  And, as I understand it, there was
5   a discussion about debating if mother and son had to die.  And
6   the note, Paper Number 147-2 -- I'll hear from the Government
7   on a minute on this -- Bugg voted against it.  Bugg
8   appointed -- there's some other reference we'll get into.
9           Essentially, the context of it is Bugg would say that he
10  is privy to a telephone call, which involved Mr. Michael Gray
11  and others, and there was a discussion about whether or not a
12  mother and son had to die.
13          MS. WHALEN:  Correct.
14          THE COURT:  What is the -- what is the statement in
15  terms of the truth of the matter asserted therein?
16          MS. WHALEN:  At one level, first level, is I think
17  Mr. Bugg is able to testify about an act and that is that the
18  gang ordered the killing of mother and son.  That that's not a
19  statement.  It's not an out-of-court statement.
20          You know, if you see, hear or smell or anything along
21  those lines then you have personal knowledge of the act.  At
22  the first level I don't even think it is a statement if he were
23  to testify about that.
24          The second level is that if indeed he were to be able --
25  and I asked him "What did Timothy Gray say to you

```
1   specifically?"  Those may be statements but those, I would
2   argue to Your Honor, would be statements -- assuming he
3   testifies -- that were declarations against penal interest by
4   Timothy Gray.  But they're also, if he testifies about specific
5   statements, they're admissible under the present sense
6   impression.  At that point he is in fact giving -- talking
7   about a motive to kill and ordering a motive to kill.  And so I
8   think they're admissible under that hearsay exception as well.
9        Now if, for instance, Mr.-- I'm jumping ahead.  If
10  Mr. Bugg refuses to testify or takes the Fifth Amendment or
11  Mr. Gray for that matter does that, if the defense chooses to
12  call Mr. Gray, then again --
13       THE COURT:  Mr. Gray has previously testified in a
14  case before Judge Bredar where he has denied such
15  conversations, correct?
16       MS. WHALEN:  No.  He has -- he was never interviewed
17  to my knowledge by the city police detectives.  And then there
18  is some notation that he -- Mr. Gray says to Special Agent
19  Kelly in 2021, I believe, when he -- Special Agent Kelly goes
20  to interview him about this -- he makes a comment that he
21  thinks he was asked this question before and that he denies,
22  although the denial is -- there's issues about the denial --
23  but in sum and substance best case scenario he denies that he
24  ordered the victims hit.
25       There's nothing -- no testimony about it.  The testimony
```

21

that he gave is testimony about he knows he put about 40 -- 30
to 40 hits on people.  So that's -- that's the two different
things.  There's not --

        THE COURT:  I think he's couched it in previous
testimony as if he ordered a hit it was "do what you do" is the
phrase he used in prior testimony.

        MS. WHALEN:  Yes.  That's correct.

        THE COURT:  Just so we're focused on this.  One, your
position is there's really no statement being offered therein
by Mr. Bugg.  You're saying it's an operative fact in terms of
a discussion and a topic of conversation?

        MS. WHALEN:  Correct.

        THE COURT:  And, secondarily, that to the extent that
there be -- is there any proffer by Mr. Bugg as to Mr. Gray
making specific reference to Ms. Jeffreys and/or her son in any
fashion?

        MS. WHALEN:  There's not that particular -- as I
recall the notes do not reflect that.  However, he is being
brought in to discuss this murder with the homicide detectives
who are investigating this murder.  So circumstantially it's
obvious who he's talking about.

        THE COURT:  Thank you very much, Ms. Whalen.

     Ms. Brusca or Mr. Budlow, I'd be glad to hear from you on
this.

        MR. BUDLOW:  Thank you, Your Honor.  Initially I point

```
 1   out there's a tremendous amount of speculation in what the

 2   defense is asking the Court to go with here.  When you look at

 3   these notes, the first thing I tell you is that it is not

 4   accurate that these are notes from meeting with Mr. Gray.

 5              THE COURT:  I'm looking at 147-2, two-page of notes.

 6              MR. BUDLOW:  Right.

 7              THE COURT:  That's what we're talking about here

 8   essentially, that's what we're talking about.

 9              MR. BUDLOW:  Right.

10              THE COURT:  Who prepared these notes?

11              MR. BUDLOW:  These notes were written by Detective

12   Parker.

13              THE COURT:  Detector Parker, okay.

14              MR. BUDLOW:  They were not written during a

15   conversation with Mr. Bugg.

16              THE COURT:  I understand.

17              MR. BUDLOW:  They were written in a conversation with

18   an individual named Detective Christian Vudu, who is an

19   investigator with the Department of Corrections.  He provided

20   this information to Detective Parker.

21              THE COURT:  So there was a detective who discussed

22   this matter with Mr. Bugg and then later that detective

23   discussed it with Detective Parker and Detective Parker made

24   these notes?

25              MR. BUDLOW:  That's correct.
```

1          **THE COURT:**  All right.

2          **MR. BUDLOW:**  There is some truth to the fact, however,

3     that BPD, the detectives, did meet with Mr. Bugg.  There are

4     not notes like these reflected.  It was a very brief meeting

5     and for a variety of reasons they found him not to be credible

6     and that was the end of their meeting with Mr. Bugg.  There

7     were not two meetings as referenced in the defense motion.

8     There was one meeting.  And, again, these notes are not from

9     that meeting.

10          However, even looking at these notes and reading what the

11    defense has proffered to the Court, there's so much speculation

12    and inconsistencies.  And where is the information even coming

13    from as to what Mr. Bugg might say?

14          The defense first says that Michael Gray greenlit the

15    murders.  Now the defense says that there was a vote and the

16    majority of that vote somehow approved or greenlit those

17    murders.

18          So these are, like, vastly different things, none of which

19    really are clear from anything that the defense has provided.

20    That's the first point I make.  There's just a lack of

21    specificity or basis for this proffer.  Obviously, some of the

22    information relating to Mr. Bugg providing information that

23    some unnamed mother and child were greenlit but by who and in

24    what context?

25          There is a significant amount of hearsay within what the

```
 1   defense is proposing to put forward, aside from the lack of
 2   specificity and reliability.  What he said was in these notes,
 3   which again are sort of double hearsay, triple if we --
 4           THE COURT:  Let me just go step-by-step.  First of
 5   all, under Rule 801(d), in terms of the definition of hearsay,
 6   in the traditional definition of hearsay, it's a statement of a
 7   matter, it's the proffer of a statement, a proffer for the
 8   truth of the matter asserted therein.  Correct?
 9           MR. BUDLOW:  That is correct.
10           THE COURT:  And what is the statement that is being
11   offered for the truth of the matter asserted therein?  From
12   what I understand from what the proffer is, as to what Mr. Bugg
13   would testify to, is there is a topic of conversation, which is
14   reflected in Detective Parker's notes from information he got
15   from another detective, that says there were multiple people on
16   the call.  Gray is referred to as Uncle Mike, Timothy, Mike
17   Gray slash Gray.  And then debating if mother and son had to
18   die and that Bugg voted against it.
19        What is the statement that's being offered for the truth
20   of the matter asserted therein?
21           MR. BUDLOW:  First of all, mother and son had to die
22   is --
23           THE COURT:  That's a discussion of an operative factor
24   or position being taken.  That's not a statement being offered
25   for the truth of the matter asserted therein.  For example,
```

1    that someone had committed a murder or someone -- what is the

2    cross-examination that would be triggered as to that?  Mother

3    and son had to die is not a hearsay statement, Mr. Budlow.

4              MR. BUDLOW:  Well, I guess there's additional context

5    that the defense has provided the Government, and I don't

6    recall if they put it in the motion.  According to the defense,

7    the explanation that Mr. Bugg will provide is that the unnamed

8    mother and son saw something they were not supposed to see.

9         Clearly, if Mr. Bugg were going to say that he heard on

10   the phone any individual, whether it was Mr. Gray or somebody

11   else, say that they had to die because they saw something they

12   wanted to see, that is a statement that's offered for the

13   truth.  It's being offered to show that --

14             THE COURT:  The statement that's being offered is that

15   the mother and the son had seen something --

16             MR. BUDLOW:  That they weren't --

17             THE COURT:  That thereby would trigger -- if you want

18   to talk to Ms. Brusca for a minute you can.  Go ahead.

19             MR. BUDLOW:  Obviously not the son.

20             THE COURT:  Right.

21             MR. BUDLOW:  What we have been provided is that the

22   mother saw something she was not supposed to see.  And

23   therefore they killed the mother and the son.

24             THE COURT:  How is -- the difficulty I'm having here

25   in terms of a hearsay argument is in terms of the mother.  It's

1  the viewpoint of the people in the conversation that the mother

2  had seen something that she was not supposed to see.  That is

3  the viewpoint that is the context of the conversation, okay.

4  But you're saying that therefore that the truth of the matter

5  being asserted is that in fact the mother had seen something

6  that she should not have seen?

7          **MR. BUDLOW:**  Right.

8          **THE COURT:**  Then sort of go step by step on this.

9  That means that it is the perception of somebody making that

10  comment that the mother had seen something she should not see.

11  That is the perception.  It isn't being offered for the truth

12  that in fact the mother had seen something.  It's being offered

13  in the context of people in a conversation -- it's being

14  offered in the context of people in a conversation having that

15  belief.

16      Again, that is not being offered for the truth of the

17  matter asserted therein.  It isn't that someone is saying this

18  woman stood here X, Y and Z.  We're dealing in a vacuum here.

19      But, clearly, the first hurdle is there's no hearsay at

20  all in terms of the statement being offered for the truth of

21  the matter asserted therein under Rule 801(d) or any

22  traditional analysis of hearsay.

23      The only step here now is to say that because there's

24  reference to "she had seen something she was not supposed to

25  see" that that triggers action.

```
 1        You have operative facts being discussed here, Mr. Budlow.

 2   And in fact the Government on many cases, numerous cases, has

 3   evidence that the Government puts in all of these cases,

 4   countless number of cases where the Government talks about

 5   people having a perception and somebody is going to go X, Y and

 6   Z.  There's no hearsay involved in that.  That's a matter of

 7   people having perceptions and taking actions that may or may

 8   not be based on correct facts.  There may be other bases to

 9   limit his testimony.  There's no hearsay involved here.

10            MR. BUDLOW:  If I could, Your Honor --

11            THE COURT:  Go ahead.

12            MR. BUDLOW:  -- I'd like to address that I think

13   you've echoed a little bit about something Ms. Whalen said in

14   her response when she referenced that this type of testimony

15   that the Government is seeking to limit is something that we

16   seek to admit on a regular basis in RICO cases, and I want to

17   point out a very significant difference.

18        So in those cases when there are most likely hearsay

19   statements that are admissible, the Government argues they're

20   admissible because they're statements made by coconspirators in

21   furtherance of a conspiracy.

22            THE COURT:  Rule 801(d)(2)(E) may be the most

23   important evidentiary rule of every federal prosecution in the

24   United States.  There's no one that walks in from the

25   Government -- I'm sort of teasing you here -- there's
```

1  absolutely not a prosecutor in the country who walks into a

2  federal courtroom who learns on his or her first day about

3  Rule 801(d)(2)(E) and I would suggest that's why almost every

4  case has a conspiracy charge in it.  But that's another matter.

5       Of course you're absolutely correct.  When there's

6  statements made in furtherance of the conspiracy, the

7  Government's free to offer statements made in furtherance of

8  the conspiracy under Rule 801(d)(2)(E).  You're quite correct.

9       But my point is is that the flip of this is, in terms of

10 the defense proffering a discussion by a witness of what he or

11 she heard, and what matters were discussed, don't automatically

12 trigger being a hearsay statement offered for the truth of the

13 matter asserted therein.  There may be other evidentiary issues

14 we have to analyze here but this is not hearsay.  That's the

15 point I'm having difficulty with here.

16            MR. BUDLOW:  And so, Your Honor, what I was doing with

17 respect to the statement that the mother saw something she

18 wasn't supposed to see is to point out, one, what the

19 Government believes -- I understand the Court's position -- a

20 very obvious aspect of this story that the defense wishes to

21 tell that is hearsay.  While I understand the Court's response

22 that there's context to statements that are otherwise

23 inadmissible, sometimes you bring in the -- you want to bring

24 an admissible statement you may have context.  When admitting

25 hearsay, when admitting out-of-court statements by declarants,

 1   courts go through very painstakingly each piece of the

 2   statement to make sure --

 3         THE COURT:  Right.

 4         MR. BUDLOW:  -- that the part that's being admitted

 5   is -- there's an exception for.  My point is that leaving aside

 6   the issue of whether or not this is a verbal act or not, the

 7   statement the mother saw something --

 8         THE COURT:  I have a suggestion for you.  Not to

 9   interrupt, but to keep moving, here's what my suggestion is is

10   that it certainly seems to me that I can give a cautionary

11   instruction at that time noting that the matter of the mother

12   saw something she should not have seen is not being offered for

13   the truth of the matter asserted therein.  It is a statement in

14   terms of what the impressions were of the people on the

15   telephone call and leave it at that.

16         MR. BUDLOW:  Court's indulgence.

17      (Counsel conferring.)

18         THE COURT:  Wouldn't that make sense?  That's really

19   the fact of the matter, isn't it?

20         MR. BUDLOW:  Respectfully, I disagree.  But I

21   understand what the Court is saying.

22         THE COURT:  Ms. Whalen, you or Mr. Purpura, doesn't

23   that get to the gravamen of it?  Mr. Bugg can so testify.  And

24   I can say, ladies and gentlemen, this is a conversation, some

25   pieces of which are not being offer for the truth of the matter

1   asserted therein.  Clearly the people on the telephone call

2   felt that the mother had seen something she should not see.

3   This is not being offered to establish that the mother did in

4   fact see something she should not see, but they were discussing

5   it, and that's what Mr. Bugg was discussing.

6       Doesn't that satisfy the defense?

7           MS. WHALEN:  Well, your Honor, I don't think you need

8   to even give a cautionary instruction --

9           THE COURT:  I understand.  Wouldn't that be a fair

10  way?  Mr. Budlow, that deals with it, doesn't it?

11          MR. BUDLOW:  Certainly if the Court rules admissible

12  we would consider --

13          THE COURT:  Clearly my point is it is admissible.

14  This little piece of saying the mother saw something she did

15  not see I don't think it's being offered for the truth of the

16  matter asserted therein.  But it doesn't mean the defense can't

17  proffer a witness who testifies that this was the conversation,

18  this was the topic of the conversation, and this was the end

19  result of the conversation.  And I think that is a fair,

20  balanced way to analyze it.  Because it really isn't -- except

21  for that one little piece that arguably may or may not be

22  hearsay, it's not hearsay if it's clear and it's not being

23  offered for the truth of the matter asserted therein, nor

24  accepted by the Court in that fashion.

25          MR. BUDLOW:  Your Honor, the Government's last point

on the issue of whether or not that is hearsay or an impression
that the parties are providing, the rule relating to an
exception for present sense impression requires just that, that
the impression be a present sense impression.  So not
somebody's historic view of somebody having seen something and
been thinking about it in a particular way, "Oh, she saw
something."  That's something that clearly happened in the past
so it wouldn't fall under the mental state or present sense
impression because it wasn't a current emotion, a current
impression, and so subject to the exception --

     **THE COURT:**  Rule 803(1) is the present sense
impression exception and it states, "A statement describing or
explaining an event or condition made while or immediately
after the declarant perceived it."

     And I think -- you understand what I'm saying?

     **MR. BUDLOW:**  I do.

     **THE COURT:**  I mean, the point is it is an exception.
And I think the way that this can be handled, and I think it's
perfectly fair in terms of the Government's position on it, but
I'm more than willing just to clarify in terms of this is being
admitted, not for the truth of any statement therein, but in
terms of the impressions of that witness and that's how it's to
be accepted and it's so stated.

     The thrust of this statement by Mr. Bugg as a witness, the
thrust of it from the point of view in fairness to the defense

 1   is that he was part of a conversation, there was the topic of a

 2   mother and son having to die and that he opposed that.  But

 3   there was a vote of some sort.  All of these are operative

 4   facts.

 5       The only thing that can arguably be said to be hearsay was

 6   the matter of the specific -- the mother saw something she was

 7   not supposed to see.  If that -- I don't know if that's in the

 8   statement or not if it's going to be so stated.  But if it is,

 9   that's just his impression.  I will have no difficulty giving a

10   cautionary instruction that that's not being offered for the

11   truth of whether the mother did or didn't see something that

12   she was not supposed to see but this is a general topic of

13   discussion.  This, to me, very clearly can be indicated to the

14   jury.  There should not be any great moment to this in terms of

15   a evidentiary issue.

16           MR. BUDLOW:  If I could, Your Honor, I'd like to pick

17   up on something that you said earlier, aside from the hearsay

18   issue, which I understand the Court's ruling, there's other

19   reasons why this statement and the way it's been presented by

20   the defense should not be allowed.  It has not been developed

21   in any meaningful and specific way.  It was evidenced in your

22   court's comments we don't have a sense of even who the

23   declarant was that greenlit or voted or put these things up.

24   So that's one thing.

25       There's so many vague references in the way the defense

 1   has provided this to the Government.  Like I mentioned earlier,

 2   it is inconsistent internally, there is no legitimate

 3   document that you can make --

 4        THE COURT:  That goes to the weight, not the

 5   admissibility.

 6        MR. BUDLOW:  Well, it could do either.  And I agree

 7   that the Court has the discretion.  But I would ask that given

 8   what we have here, that the leap from that to what we heard

 9   from the defense there isn't a valid connection for all of that

10   in the Government's view, that none of this come before the

11   jury until the Court has an opportunity and the Government has

12   an opportunity to see the witness and understand in a little

13   more detail what's the witness going to say, who is on the

14   call, who is the declarant, what do you mean by greenlit?  And

15   there was a vote --

16        THE COURT:  I think we can go round and round.  The

17   Government's objection on this is overruled.  The defense is

18   perfectly free to call Mr. Bugg and Mr. Bugg cannot go into

19   what someone said for the truth of the matter asserted therein,

20   but to the extent that he says -- I'm looking at the notes of

21   Detective Lewis, secondhand notes, as to debating whether the

22   mother and son had to die, and Bugg saying he voted against it.

23   These are topics of discussion he's certainly free to discuss.

24        I will certainly indicate that to the extent that there's

25   some comment there as to the mother had to die if that's

1  proffered, that that's not being offered as to the truth of

2  the -- or that the mother saw something she should not see,

3  that's not being proffered for the truth of the matter asserted

4  therein.

5      There's a topic of discussion and the Government is free

6  to call Mr. Bugg with respect to that topic of discussion, and

7  the Government is free to challenge it in any way it wants.

8  But it goes to the weight, not the admissibility, in terms of

9  that last point you made.

10     Anything else on that from the point of view of the

11 Government?

12         MR. BUDLOW:  I would just ask that to the extent the

13 Court is thinking about providing a limiting instruction that

14 we have an opportunity to weigh on that.  We may ask that you

15 not or that --

16         THE COURT:  Whatever.  We'll see.  I mean, that's

17 fine.

18         MR. BUDLOW:  Thank you, Your Honor.

19         THE COURT:  I don't need counsel's approval to give a

20 limited instruction.  If I think there's any confusion on it, I

21 will, but I'll hear you out on it.

22         MR. BUDLOW:  Okay.

23         THE COURT:  I mean, I think it's -- Ms. Whalen, I

24 assume on this one you have no further arguments.  You're ahead

25 on this one.

1      MS. WHALEN:  I'm going to take Mr. Purpura's

2  recommendation and shut up.

3      THE COURT:  I once did that in front of the Fourth

4  Circuit and former Chief Judge Winter told the entire panel

5  there that I've never been more eloquent.  So I've never

6  forgotten that moment.  We're chuckling again here.

7      (Laughter.)

8      THE COURT:  All right.  With that, I think we've dealt

9  with the first series of issues.

10      Yes.  Mr. Demetriou just raised an issue that I think

11  still lingers.  The matter of the Government being free to

12  inquire with respect to -- I think this was woven into some of

13  the papers -- the matter of the Defendant's acquaintance with

14  BGF members.  Isn't that also a topic that lingers in this

15  general discussion or not?

16      MR. BUDLOW:  Your Honor, we provided notice of that

17  that if the defense went there in their case that we may rebut

18  with that.  I don't know if they moved about it.  We would

19  reiterate that that is our plan.

20      THE COURT:  Okay.  So we're not there yet.  From the

21  point of view of the defense, is it your posture that you

22  intend to try to elicit testimony that he was not affiliated

23  with BGF members in any way?

24      Ms. Whalen, is this an issue I need to address now?

25      MS. WHALEN:  No.

1          **THE COURT:**  You don't think we should address this

2  yet?

3          **MS. WHALEN:**  No, the only thing I would tell the Court

4  is that the Government has given us notice of one witness,

5  Wayne Briscoe, who says something about BGF.  If there are

6  others out there we would just ask for --

7          **THE COURT:**  I think the way this plays out is that to

8  the extent that there's such testimony from a Government

9  witness, the defense is free to cross-examine with respect to

10  challenging whether or not Mr. Briscoe ever was a BGF member.

11  And we'll have to see how that plays out if the Government

12  thinks it's sufficient that they -- you need to put rebuttal

13  it.

14      As you all can tell, it's very important to flush out as

15  many evidentiary issues as we can ahead of time but on this one

16  I think we have to wait and see how it plays out.

17      Correct from your point of view, Mr. Budlow?

18          **MR. BUDLOW:**  It is.  And just to be clear, we do not

19  plan to introduce the idea that the Defendant is a BGF member

20  at all unless the Defendant raises it, so we won't be raising

21  that in our case in chief.

22          **THE COURT:**  All right.  That's good on that.  Thank

23  you very much.

24      So, with that, we are ready to go to the second motion

25  here that I would want to address now and that is the motion of

1  the Defendant Briscoe to Exclude Evidence of Bad Acts and Prior

2  Convictions.

3          MR. BUDLOW:  Your Honor, I'm sorry to interrupt.

4          THE COURT:  Yes, sure.

5          MR. BUDLOW:  We had mentioned earlier that there was

6  sort of a second sub-issue from the first motion.  The

7  Government had asked to limit the cross-examination of the

8  homicide detectives on this issue.  I'm not sure if you want to

9  address that now or not?  Because it is related to the issue.

10          THE COURT:  Related to Mr. Bugg's testimony?

11          MR. BUDLOW:  Correct.

12          THE COURT:  Sure.  Why don't you, Ms. Whalen,

13  reiterate that in terms of what is the defense position on

14  trying to limit the cross-examination of -- I gather it would

15  be Detective Lewis; is that correct?

16          MR. BUDLOW:  Or Parker.

17          THE COURT:  Parker or Lewis.  Yes, Ms. Whalen.

18          MS. WHALEN:  So our position is that it is a standard

19  defense to indicate -- to raise before the jury whether the

20  police officers investigating did a thorough investigation and

21  chased down other suspects.  So to the extent that we are

22  asking questions about these other suspects, I think it's

23  admissible and it is certainly proper.

24      The Government provided Second Circuit cases addressing

25  this.  The first case they provided, *Alvarez*, reversed when a

```
 1  judge shut down the defense from going into this type of issue
 2  at all.  And the second case that they provided was not --
 3  there was not a complete bar, but I would suggest that it
 4  actually is in support of our position and that is that in the
 5  Rivera case the -- what happened --
 6          THE COURT:  Rivera is a Second Circuit case.
 7          MS. WHALEN:  Yes, Alvarez is as well.  But Rivera came
 8  later and distinguished Alvarez where Alvarez reversed saying
 9  that the defense attorney should have been able to go in
10  through other suspects through the detectives.
11      Rivera, what happened is really instructive because the
12  judge precluded the bringing in the hearsay from the police
13  detective originally.  Told him he could -- the defense
14  attorney I think was a male -- he could develop the case,
15  develop the issues all that he wanted to, but just not using
16  that hearsay statement, but he could also revisit the
17  admissibility of the hearsay statement.
18      And, in fact, when the defense rested the judge actually
19  said, "Aren't you going to revisit this issue and bring that
20  in" or words to that effect, I'm paraphrasing.  And the defense
21  attorney said, "For strategic reasons we are not going down
22  that road."
23      So it's factually totally different because the appellate
24  court said under these circumstances it was not an abusive
25  discretion for the judge to make the initial ruling when the
```

 1  judge basically was inviting the defense to come back and
 2  consider that piece of evidence as well.

 3      So our position is whatever steps the detectives took or
 4  what they did not take is fair game and it is admissible and
 5  the jury should hear it.  It's an essential part of our
 6  defense.

 7              **THE COURT:**  Mr. Budlow?

 8              **MR. BUDLOW:**  Thank you, Your Honor.  So I want to be
 9  clear as to what the Government believes the defense wants to
10  do at trial.  They want to say to the detective "Detective
11  Parker, Detective Lewis, isn't it true that you're aware that
12  Anthony Bugg said that he was on a phone call where the murder
13  of the victims in this case were greenlit, approved, ordered?"
14  However you want to word it.  That's their plan.

15      So the Government's view is -- this is aside from calling
16  Mr. Bugg, which of course is something we won't even know about
17  until the Government rests -- that's classic hearsay.  They're
18  call for this statement to be offered to prove that somebody
19  else killed the victims.

20      Now, I understand the defense is going to argue we don't
21  want the jury to consider that for the truth, we want the jury
22  to consider that to see whether or not these detectives did a
23  thorough job.

24      I do want to address the relevance of that.  It's so clear
25  that the risk of unfair prejudice in that line of questioning

is high.  Meaning, the risk is that regardless of a limiting

instruction it's going to be hard for a jury not to take that

matter for its truth before Mr. Bugg has been given an

opportunity.

Those cases -- and by the way we did not cite *Alvarez*, we

cited *Rivera*, which distinguishes *Alvarez*, but I do want to

address *Alvarez* in a minute.

But those entire line of cases have a distinguishing

factor that make that line of cross more relevant.  I'm not

saying it's not relevant to some extent but it's different in

this case.  Because those cases, and the courts discuss it, are

focused on the lead investigator for the lead agency

representing the investigation, right.  That's just not the

case here.

The Government is not planning on standing up in closing

argument, like the prosecutor did in *Alvarez* and saying "BPD

did a great job.  BPD followed up on every lead."  That's

literally what the prosecutor said.  So for context in *Alvarez*,

first, the Government or the State got the state court to

preclude all these references to tips of other people.  And

then the State stood up in closing argument and said "And they

followed up on every lead."  Now, that's not going to happen

here for a variety of reasons.

One, that wouldn't happen here.  And two, they're not the

lead investigator.  They did work for a couple of months.  Did

1   nothing.  They're not the arresting agency.  They're not the

2   agency that brought this case to the U.S. Attorney's Office.

3   They're not the agency that testified in furtherance of an

4   indictment.

5        So the relevance of the thoroughness of their

6   investigation, while there might be some, it is not the same as

7   *Alvarez* and *Rivera* where they're undermining the agency that

8   made the decision to charge.  In fact, BPD didn't make a

9   decision to charge.  They stopped.  So that's my first point.

10       I do want to distinguish or I would ask that in looking at

11  *Rivera* you do what *Rivera* did, which is weigh the questionable

12  probative value of this line of questioning against that risk

13  of unfair prejudice of bringing in hearsay.  The risk that the

14  jury will be confused.

15       As I mentioned earlier, part of that weighing process will

16  be looking at the information being provided that Detective

17  Parker or Lewis received and how thin that information was.

18       Additionally, in those cases or in *Alvarez* that reversed,

19  what was a critical factor for the reverse in court was that

20  the detail provided in the tip was very significant.  They

21  provided names, addresses, the caliber of the weapon, motive.

22  It was significant amount of information.  And it was agreed

23  that the law enforcement didn't do anything to follow-up.

24       And, critically, what then happened was there was a *Brady*

25  violation in that case when the State didn't provide that

information to the defense until right before trial, and part
of its ask for admissibility was as a *Brady* remedy.  And there
was significant harm to the defense in that case because as a
result of that delay the person who was the subject of the tip,
the would-be other shooter, had moved out of the country and
was no longer available.

So all of those things combined make *Alvarez* an extremely
different case.  And, again, the Court in *Alvarez* focused on
this being the lead investigator, this being agreed that the
police did not pursue the lead.

I want to point out, and I think it's recognized in the
defense's filings in this case, they criticize it but there was
follow-up.  We've heard about it today.

So the first follow up that occurred was that Parker and
Lewis met with the alleged informant, this Mr. Bugg.  That's
the first thing.

The next thing that happened was that twice Mr. Gray was
asked about whether or not he had any knowledge this.  So they
did follow up by sending agents who were then his handlers in
this federal case to ask him about this information from Bugg
and he said "No."

Then they went back years later and interviewed him, the
agents in this case interviewed him in person.  He said, "Oh, I
remember, you guys already asked me about this.  The answer is
still no."

 1        So unlike *Alvarez* where there was this sort of legitimate
 2   basis that nothing was done, that's just not the case here.
 3   And that really affects the Court's ability to look at this and
 4   say how is that probative value?  When you say the rationale is
 5   we want to attack the thoroughness of the investigation because
 6   you didn't follow up on the lead when they did, that affects
 7   the balancing and then the risk of unfair prejudice that the
 8   jury is going to use that for the truth of the matter asserted
 9   really outweighs any value to --

10        **THE COURT:**  I'm trying to stay with you but -- and
11   it's very important, each time you say "the truth of the matter
12   asserted therein" you're trying to drag this back in hearsay
13   context.

14        **MR. BUDLOW:**  Yes.

15        **THE COURT:**  We've been now going for an hour and
16   10-minutes, there is no hearsay context.  This is not hearsay.
17   Okay.  I'm trying to stay with you.  But the matter of mother
18   and son having to die, and we've already gone through this for
19   about an hour now, there is no hearsay on that, okay.  And I'll
20   take precautions to make sure.

21        So there is no statement being offered for the truth of
22   the matter asserted therein.  The analysis is under Rule 401 in
23   terms of relevance, under 403 in terms of prejudice.  This is
24   not a hearsay issue on this.

25        **MR. BUDLOW:**  Now it's Bugg's hearsay so it's

different.  When Bugg is talking about it then he can -- they
can argue that these exceptions to the other declarants apply.
But when the detectives are being asked about it, they're being
asked to relay what Bugg said.  So now it's hearsay because --

**THE COURT:**  They're being asked -- they're being
asked, I gather, with respect to again the importance of these
two pages that they're represented on the file Paper Numbers
147-2, Paper 147-2, a two-page note.  That's what we're talking
about here.  We have two pages -- a page and a half of notes.

**MR. BUDLOW:**  Plus they met with him.

**THE COURT:**  And they met with him.  But in terms of
the document that's what we're talking about is this page and a
half of notes here.  And then questioning an agent or -- either
Detective Lewis or apparently Detective Parker about this page
and a half of notes, okay.  And there is no hearsay statement
here on that.

So the question is is that you're seeking to have the
defense be limited with respect to debating -- the language
debating that mother and son had to die and what follow up was
made by the agents in terms of investigating that.  And your
point is is that, one, you're challenging the relevance of it,
or two, or secondarily, prejudice under Rule 403.  That's
essentially your argument, correct?

**MR. BUDLOW:**  The argument is for hearsay, again,
Mr. Bugg you have ruled can testify to that it's not hearsay.

```
 1  The hearsay is the agent -- the detective saying "Bugg told me
 2  these things."  That's the hearsay statement.  So that's an
 3  extra layer.
 4          THE COURT:  This is what Bugg said?
 5          MR. BUDLOW:  That's right.
 6          THE COURT:  Well, Bugg's gonna be a witness subject to
 7  cross-examination.
 8          MR. BUDLOW:  Maybe not.
 9          THE COURT:  Maybe not.
10          MR. BUDLOW:  Because when detectives testify we don't
11  know whether or not Mr. Bugg is ever going to be a defense
12  witness.  That's why one was looking at this like in reverse
13  order --
14          THE COURT:  I understand.
15          MR. BUDLOW:  -- the first question is can they do this
16  through an out-of-court declarant who may never testify through
17  a detective.  And the Government's view is not only is it
18  hearsay --
19          THE COURT:  Let me do step-by-step on this.  To the
20  extent that someone asks an officer "Did you or did you not
21  discuss this topic" so the record is clear that is not hearsay.
22  To ask if someone discussed a topic is not a statement being
23  offered for the truth of the matter asserted therein by any
24  stretch of the imagination.
25          MR. BUDLOW:  I completely agree.
```

1          **THE COURT:**  I can't imagine that can be called

2    hearsay.  It's simply not hearsay.  To the extent that there is

3    a question of anyone as to was a topic discussed, the answer is

4    "yes" or "no," a topic was discussed.  And what was the topic?

5    Well, the answer is "yes"or "no," the topic was "a mother and

6    son had to die."  And the officer may say "No, there was never

7    any such conversation."  And then the defense will have to deal

8    accordingly with challenging that in terms of Detective Parker,

9    and if these are his notes, and presumably he's not going to

10   say that because I understand these are in his notes that that

11   was the topic.  So there's a question as to the topic that was

12   discussed.  There's no hearsay there.

13        So then the question becomes if that topic was discussed,

14   what steps were taken with respect to that?  And then the

15   police officer is free to comment upon "We took the following

16   steps."

17        Now, to me, that's the inquiry.  And I see no basis to

18   preclude the defense from doing that.  But the question is

19   exactly how far do you go with it.  The officers can say "We

20   did X, Y and Z and we're not able to connect the dots in any

21   way" or that's where it is.

22        What is the evidentiary objection by the Government as to

23   that scenario?

24          **MR. BUDLOW:**  The part about the mother and son is

25   clear hearsay.  Regardless of how they phrased the question the

only way the officer knows that --

      THE COURT:  All right, Mr. Budlow, it's not hearsay.
I've ruled.  It is simply not hearsay.  It is not hearsay to
ask an officer was a topic discussed "yes" or "no."

      MR. BUDLOW:  I agree.

      THE COURT:  "Was the topic about a mother and son
having to die?"  Yes or no?  "Yes, there was a topic about it."
Okay.  That is not hearsay.  There's nothing being offered for
the truth of the matter asserted therein.  He's saying a topic
was discussed.  Yes, it was.  This was the topic.  And then the
officer can respond as to what the topic was without getting
into specifics.  Not that the mother saw something she could
not see or she should not have seen.  That may be said to be
offered for the truth of the matter asserted therein.  And I
would take the appropriate steps to make sure that the jury
understands that's not being offered for the truth of the
matter asserted therein.

    So what is the basis for limiting the questions of a
police officer as to this topic?

      MR. BUDLOW:  I don't want to say it again because I
might make you madder, but I have the same opinion.  But I
understand the Court's ruling.

      THE COURT:  You're not making me madder.  I'm asking
you to give me -- given that I reject your first argument, do
you have any other argument?

1          **MR. BUDLOW:**  I don't have a different one.

2          **THE COURT:**  Well then good, there's simply no hearsay.

3    That Government Motion In Limine is denied for the reasons

4    indicated.  Clearly the defense is free to ask a police

5    officer, in terms of an interview of an individual, was a

6    general matter discussed in some way.  And the officers are

7    free to say "Yes, it was," and they're free to say "What was

8    it?"  And he can say "There was some indication of a mother and

9    son having to die."  Well, fine, "What did you do about it?"

10   And the police officers clearly can say "We had no connection

11   one way or the other and we're not able in any way to verify

12   that."

13         It is what it is and it moves on.  So to that extent the

14   Government's Motion In Limine is denied in that regard and

15   there's no hearsay.

16         Anything else from your point of view on that?

17         **MR. BUDLOW:**  Not on that issue.

18         **THE COURT:**  All right.  Ms. Whalen, anything else from

19   your point of view that?

20         **MS. WHALEN:**  No, thank you.

21         **THE COURT:**  We're not going to get into details in

22   terms of detailed conversations or anything else and if the

23   defense goes too far on that I'll put the brakes on it.  But

24   this general topic, they're not going to be precluded from

25   inquiring about that.

```
 1        What is the other aspect to it, Mr. Budlow?

 2            MR. BUDLOW:  There's none on it, Your Honor.

 3            THE COURT:  What is the other issue you want to raise

 4   on this?

 5            MR. BUDLOW:  With respect to --

 6            THE COURT:  We were about to go to the matter of bad

 7   acts but you said there are other matters on this, and I'm

 8   trying to be clear.

 9            MR. BUDLOW:  No, to be clear the Government has no

10   other argument on that issue.

11            THE COURT:  Okay.  That's fine.

12            MR. BUDLOW:  And Ms. Brusca is going to handle the

13   next argument.

14            THE COURT:  That's fine.  That's fine.  Thank you very

15   much.  Just so we're clear, we're finally putting the matter of

16   Mr. Bugg aside from now.

17        Ms. Whalen, we're dealing in a vacuum here.  For a while

18   we spent a lot of time on the matter of an unavailable witness

19   and lo and behold he's not unavailable and not dead.  So my

20   point is is that are you prepared to make any specific proffer?

21   Have you talked to this man?  Is there any proffer of what he

22   is going to say if you call him as a --

23            MS. WHALEN:  I'm not prepared to --

24            THE COURT:  You're not prepared to address it at all?

25            MS. WHALEN:  -- to address that on the record at all.
```

1          **THE COURT:**  Okay.  That's fine.  We have to wait to
2  see how it plays out.  Now, to the extent that -- that
3  Mr. Bugg, so we're clear on this, to the extent that Mr. Bugg
4  is going to be called as a witness, if you decide to call him
5  as a witness in your case in chief, Ms. Whalen, I'm going to
6  need a full proffer about what you intend for him to say.

7          I'm not going to have us stop the jury and go back and
8  forth because of the difficulties with the COVID-19
9  precautions.  We're going to address this as specifically as we
10 can from an evidentiary point of view.

11         I think we have anticipated everything we can anticipate.
12 It's clear in terms of how I ruled, but we need to have a
13 proffer as to what -- if he's going to go off and say we
14 specifically discussed Ms. Jeffreys and her son, this kind of
15 information, I need -- I need to have some proffer of that if
16 that were to be the case.  I don't know.

17         **MS. WHALEN:**  You would like us to detail, if possible,
18 if there are going to be hearsay statements --

19         **THE COURT:**  That's right.

20         **MS. WHALEN:**  -- from Mr. Bugg.

21         **THE COURT:**  I mean, I'm dealing with the matter --
22 it's a matter of record, Paper Number 147-2 is two pages of the
23 notes of Detective Parker as Mr. Budlow has noted that were
24 summarized from another person who interviewed Mr. Bugg.  And I
25 think we've dealt with that as clearly as we can for what we

know of what the statement would be.  And I'm not going to

preclude defense counsel from cross-examining any Government

agents about any information they had or other inquiries or

line of questioning or whatever they did or didn't do.  That's

fair game up to a point.

But we are going to need to have a little more specificity

of Mr. Bugg if he's going to testify, and I'll just note that.

And we'll see how it plays out.

MS. WHALEN:  That's why I said in one of my letters

that I feel like we're in a vacuum here.

THE COURT:  We are in a vacuum.  I'm doing the best we

can do to anticipate it but that's where we here.

MS. WHALEN:  All right.

THE COURT:  With that, we're at Defendant Briscoe's

Motion in Limine to Exclude Evidence of Bad Acts and Prior

Convictions, Paper Number 48.

And, Counsel, what I propose to do is go until 1:00 and

we'll take a break from 1:00 til 2:00 for lunch.

Ronda, how are you doing down there?

THE COURT REPORTER:  I'm doing well, Your Honor.

THE COURT:  All right.  We'll go for another 45

minutes and we'll take a break for lunch.

All right.  So with that, Ms. Whalen, I'll be glad to hear

from you or Mr. Purpura on this motion.

MS. WHALEN:  Your Honor, as I understand where we are

1  on this motion is we had filed the motion requesting that any

2  prior conviction of our client, except for the attempted

3  murder, which is the conviction that the Government wishes to

4  use to prove a count, the felon in possession count, that we

5  are advising the Court we intend to stipulate to.  But other

6  than that --

7           THE COURT:  You're stipulating under the *Old Chief*

8  case; is that right?

9           MS. WHALEN:  Yes.  Other than that, we would argue to

10 Your Honor that aside from that the attempted murder conviction

11 itself would be barred by Rule 609 because it's over 10 years

12 from the date of his conviction and his release from actual

13 parole, I think it is.  Beyond that there are some assault

14 convictions and a possession of a firearm or a weapon -- no,

15 ammunition, pardon me -- and those we believe should not be

16 admissible.

17      The Government has, I think, said in a footnote that

18 unless the character of Mr. Briscoe is put at issue they do not

19 intend to use these prior convictions, nor do they intend to

20 cross-examine him with these prior convictions.  I think that's

21 how I understand the Government's position.

22      So it is really, I think, to focus this only on the --

23 whether they come in at all regarding character as well.  And

24 our position is that they don't.

25      First of all, the attempted murder under Rule 609 should

not come in at all.  And, secondly, the other convictions we
would maintain are those that are not relevant to this issue.
They're old.  Some are before the attempted murder, which is
when my client was age 17, and he's 41, I believe, now.  And
they aren't necessary to establish any limit of this offense or
any of the elements to any of the crimes charged.  And the
probative value outweighs the unfair prejudice.

Here I want to point out that there are assault
convictions involving women.  I think the jury is never going
to be able to ignore that once he was convicted for assaulting
one woman that it is as likely and more likely that he would
have assaulted the victim in this case in the manner that's
alleged.  The -- that's the assaults.

Also that he would have ammunition in the past, and again
it's years before the trial here, that that would also
prejudice the jury into believing that it's more likely that he
had ammunition in a gun and that he shot the victims in this
case.

The more challenging, I guess, from the defense point of
view is the Government has said that there are other acts,
prior bad acts, that they would try to elicit, I think also
their position is only if our client's character is at issue,
and those are several different witnesses have talked about
several different things:  Either had a gun, pointed a gun at a
child, assaulted someone.  Those kinds of things that are all

1    detailed in their letter.

2        Our first position is that we can't tell when any of these

3    things happened based upon the discovery to date.  The

4    Government's notice doesn't give us anything more than other

5    than what I'm telling you and that is just that these witnesses

6    say X, Y and Z.

7        This may not even rear its ugly head, if you will, because

8    the Government has said they don't intend to use these things

9    unless and until.  But I wanted to point out to the Court that

10   the unless and until is problematic.  And the reason I say that

11   is -- I think the Supreme Court *Hemphill v. New York* case,

12   although addressing a different part of the Constitution, that

13   case is pretty instructive that if the defense opens the door

14   that the Government could not in that case come in and bring

15   inadmissible hearsay, which was actually the statement of a

16   codefendant acknowledging, as I recall it, acknowledging

17   conduct that refuted the door that the Government opened; and

18   the Supreme Court said that you can't ignore a constitutional

19   right -- and here, in our case, the right is to have a fair and

20   impartial jury -- by correcting a misleading impression by the

21   defense.

22       So the open-the-door policy doesn't mean that our client's

23   constitutional right to an impartial jury by having the jury

24   know all of these other prior bad acts, that that in and of

25   itself would not be a proper use of open the door.

55

1      So I think --

2          THE COURT:  Ms. Whalen, my suggestion is why don't we

3  try to go step-by-step in terms of what we're really talking

4  about here.  There's certain categories.  The first point is is

5  that clearly under *Old Chief v. United States*, the 1997 Supreme

6  Court opinion, when a Defendant offers to stipulate to the fact

7  of a prior felony conviction further proof of the nature of

8  that conviction becomes irrelevant and should be excluded.

9  Now, to my knowledge there's not been a stipulation yet as to a

10 prior conviction.

11         MS. WHALEN:  We are working on that.

12         THE COURT:  You're working on it but you've not --

13         MS. WHALEN:  Yes.

14         THE COURT:  -- you're working on it but the simple

15 fact is there hasn't been a stipulation yet.

16         MS. WHALEN:  Not yet.

17         THE COURT:  And if there's not a stipulation the

18 Government is free to introduce evidence of crimes --

19         MS. WHALEN:  We agree.

20         THE COURT:  -- which he's been convicted.

21         MS. WHALEN:  We agree.

22         THE COURT:  The Government is not limited in that

23 regard.  They're allowed to put his criminal record in

24 essentially says he's been convicted of prior crimes and he

25 shouldn't have a weapon.  So that's the first step.

1    And then the second step is assuming that there is an *Old*
2    *Chief* stipulation with respect to the required elements of the
3    pending 18 United States Code § 922(g) charge, there is a
4    series of categories that I think we need to address here and
5    probably is the best way to go about that and hear what the
6    Government's response is.

7    The categories that I have are, first, the Defendant's
8    narcotics trafficking activities from February of 2015 to
9    October of 2015.  The Government has basically provided notice
10   that it intends to produce evidence in the form of witness
11   testimony that the Defendant was involved in narcotics
12   trafficking from at least February of 2015 through October of
13   2015.

14   As I understand it, the issue really is -- the Government
15   has indicated that it is not seeking to introduce evidence of
16   post October 2015 narcotics trafficking.

17   Is that correct, Ms. Brusca?

18       **MS. BRUSCA:**  That's correct.

19       **THE COURT:**  So then the issue comes down to the matter
20   of February to March because the -- the indictment charges, in
21   Count 1 of the third superseding indictment, the indictment
22   charges Mr. Briscoe with narcotics conspiracy beginning no
23   later than March of 2015 and continuing until on or about
24   October of 2015.

25   So the precise issue here is as to whether or not there

1  can be introduction of evidence going back to February of 2015.

2       In a nutshell, from the point of view Government, that's

3  the issue, correct, Ms. Brusca?

4            MS. BRUSCA:  Yes, Your Honor.

5            THE COURT:  That's my understanding of the briefing.

6  So, Ms. Whalen, if we just zero-in on the matter of the

7  evidence of narcotics trafficking that predated March 2015,

8  specifically in February of 2015, and if you'll just indicate

9  what your objection is as to that?

10            MS. WHALEN:  On the issue of February to March we will

11  defer to -- we don't need to do anymore --

12            THE COURT:  I've read the briefs on it.

13            MS. WHALEN:  Right.  But the issue really was -- the

14  notice was and on occasions thereafter.  And there was no

15  notice of what those occasions thereafter were.  Thereafter --

16            THE COURT:  Well, the Government has indicated they're

17  not going to get into matters after October of 2015.

18            MS. WHALEN:  That's right.  That's why I said that was

19  the issue.  And they have also, to be fair, provided or they

20  have pointed us to one witness who would testify to what I

21  guess would be the occasions thereafter and --

22            THE COURT:  Well, the Government said it intends to

23  introduce the Defendant's post arrest statement in May of 2020

24  that he had obtained heroin from an unidentified individual

25  during the time of the murders.  But that -- that's the only

1    issue there that I see, and I see no basis to exclude that.   So

2    is there any other issue to address here?

3         MS. WHALEN:   Not on the issue of drugs, no, Your

4    Honor.

5         THE COURT:   All right.   So it's certainly -- the

6    evidence of trafficking activity from February of 2015 through

7    October of 2015 is admissible as being extrinsic to the charged

8    conduct and consistent with Fourth Circuit authority as

9    recently as *United States v. Brizuela*, B-R-I-Z-U-E-L-A, a

10   Fourth Circuit opinion in 2020.   So to that extent the Motion

11   in Limine would be denied as to any question about the

12   narcotics trafficking activities.

13        And then the matter of the fact that prior to May 27,

14   2015, the Defendant was convicted of a crime punishable by more

15   than one year in prison.   Again, we're waiting for the matter

16   of the *Old Chief* stipulation to be clarified.

17        So then the third category, I think, from what I can see,

18   is that the Defendant and Kiara Haynes that she was a

19   codefendant at one time previously, okay.   Well, she's still in

20   the case having pled guilty.   She had a sexual relationship and

21   were second cousins and the Government has provided notice that

22   it intends to introduce evidence that the Defendant had a

23   sexual relationship with the codefendant Kiara Haynes to whom

24   he was related.

25        And I gather there's no challenge by you as to

1  admissibility of that evidence; is that correct?

2       MS. WHALEN:  No, the specific challenge is to

3  testimony that she was raped --

4       THE COURT:  I'll get there.  But in terms of the

5  actual -- the Government is certainly free to introduce that

6  evidence in terms of the sexual relationship.  Then we'll get

7  to the matter of -- the matter of rape in a minute here, the

8  alleged matter of rape.

9       The next category that I have, reviewing the papers, is --

10  thus far, Ms. Brusca, you haven't needed to really respond

11  because we resolved all these so far so we're up to, you know,

12  you're batting better than Mr. Budlow.

13       I'm teasing both you right now.  I see you laughing there.

14       (Laughter.)

15       THE COURT:  The fourth item I've got here is that the

16  Defendant used alcohol and Percocet after the murders,

17  including during the times of his alleged confessions.  And as

18  I understand it the Government has provided notice under Rule

19  404(b) that it intends to introduce evidence that the Defendant

20  used alcohol and Percocet, including on the days following the

21  murders of the victims.  And you have argued that that should

22  not be admissible because it's impermissible character

23  evidence.

24       And the Government has responded that it's necessary to --

25  the circumstances to which the Defendant allegedly later

```
 1   confessed.  So that's still before me.  So I'll be glad to hear
 2   from you on that and then I'll hear from the Government on
 3   that.
 4            MS. WHALEN:  Your Honor, we raised that in our
 5   pleadings.  At this point, I don't think we need to argue
 6   further.
 7            THE COURT:  All right.  Let me hear from you,
 8   Ms. Brusca, in terms of the matter of the use of alcohol and
 9   Percocet after the murders.  Essentially, it's my understanding
10   that there is some relatives of the Defendant who talk about
11   his mental state or whatever on or about the time that he later
12   made certain confessions to committing the murders and that
13   you're trying to put this in the full context.
14       Is that essentially the proffer?
15            MS. BRUSCA:  That's correct, Your Honor.  And there
16   are, I believe, four different witnesses who will so testify.
17            THE COURT:  Who are the four witnesses who will so
18   testify as to that?
19            MS. BRUSCA:  Wayne Briscoe.
20            THE COURT:  And he is what relation to Mr. Briscoe?
21            MS. BRUSCA:  First cousin.
22            THE COURT:  First cousin, okay.
23            MS. BRUSCA:  Then there is Al Harris, who is the
24   Defendant's uncle.
25            THE COURT:  All right.  Okay.
```

1      MS. BRUSCA:  Terrill Harris, Sr., also the Defendant's

2 uncle.

3      THE COURT:  Okay.

4      MS. BRUSCA:  And Tonya Harris who is the Defendant's

5 cousin.

6      THE COURT:  And all of them are going to testify as to

7 his admission as to committing the murders and his contrition

8 or lack thereof or mental state as a result.

9      MS. BRUSCA:  Correct, Your Honor.

10      THE COURT:  And the -- as to that the matter of the

11 use of alcohol and Percocet, it's your view that that is

12 relevant in some way in terms of -- his use of alcohol and

13 Percocet, I guess my first reaction when I looked at this issue

14 was the defense may be arguing that he wasn't of sound mental

15 state to be able to make a confession.

16      MS. BRUSCA:  Agree, they might argue that, Your Honor.

17      THE COURT:  Then I was like why are we getting into

18 this one way or the other but that's where we are.  But your

19 point is that you should be able in your case chief to note his

20 use of Percocet and alcohol.

21      MS. BRUSCA:  Absolutely, Your Honor, because his use

22 of substances both explains why he might be more likely to, you

23 know, people get loose lips when they drink, right, so this is

24 one reason why -- it shows the credibility of the story.  You

25 might not wake up in the morning and say, roll over and say,

1   you know what, I killed a young child by executing them in the

2   face.  But you might drink a whole bottle of liquor and say I'm

3   really sad about it, I'm having nightmares.  And that's what

4   these witnesses will say in part.

5        Some of them he was not drinking alcohol or taking

6   Percocets at the time of his confession but some of them he

7   was, and that was sort of the regular occurrence for

8   Mr. Briscoe.  He would drink, and he would cry, and he would

9   confess because he felt bad about it.  And so it both is part

10  of the story of what happened the night of the murder.

11          THE COURT:  It seems to me the way it should be

12  handled is is that certainly is relevant for Rule 401.  So then

13  the question is whether there's any prejudice under Rule 403.

14  And it seems to me that to the extent that there's evidence

15  that's more prejudicial than probative, you just need to limit

16  it in terms of the particular -- as opposed to a general

17  proffer of evidence about alcohol and use of painkillers or

18  Percocet, I suggest that it should be specified in terms of

19  whether it's Wayne Briscoe or Al, Tonya or the Harrises, there

20  should be some specificity here in terms of what were the

21  context of it.

22          MS. BRUSCA:  Sure.

23          THE COURT:  As opposed to a broadbrush that he was

24  drinking alcohol and taking Percocet.  I think the way to

25  handle this is that in terms of a 401 and Rule 403 analysis if

 1  you would just take steps in terms of as to which witness was

 2  that the case, whether it was all four or not, and that's the

 3  safest way to approach it.

 4        MS. BRUSCA:  That's fine, Your Honor.  We can ask that

 5  the witnesses only speak about such use at the time of the

 6  confession.

 7        THE COURT:  If he was using at the time that he

 8  made -- Mr. Briscoe allegedly made these comments to them

 9  individually as opposed to a broadbrush on that.

10        MS. BRUSCA:  Understood, Your Honor.

11        THE COURT:  So to that extent the Defendant's motion

12  is denied.  But I think the Government understands the limit

13  that I should apply to it.  Obviously, just so the record is

14  clear, on all these matters the Defendant preserves its rights

15  of appeal on any of these matters as to which I have ruled

16  against the Defendant on those.

17        So we're now up to, I think, the next category I have

18  under this 404(b) analysis of bad acts and prior convictions is

19  the Government has indicated that it may, apparently hasn't

20  said it will, but that it may introduce evidence to include

21  audio and video recordings of statements made by the Defendant

22  while he was incarcerated for crimes that are both intrinsic

23  and also unrelated to the charges here and that that evidence

24  would include recordings of conversations between the Defendant

25  and a cooperating witness some time between July and August of

1  2019 as well as recordings of jail calls placed from 2015 to

2  the present.

3      Essentially, those statements on recorded jail calls are

4  definitely not hearsay under Rule 801(d)(2)(A) because they are

5  statements of an opposing party.  So is there any other issue

6  from the point of view of the defense on this?  Does the

7  Government know what it is intending to introduce at this point

8  in time?

9          MS. BRUSCA:  Yes, Your Honor.  And we've provided

10  notice of that to the defense.  We were just out of an

11  abundance of caution --

12          THE COURT:  That's fine.

13          MS. BRUSCA:  -- saying to the defense --

14          THE COURT:  Any other issue to be raised on that,

15  Ms. Whalen, from your point of view?

16          MS. WHALEN:  No, Your Honor, I don't believe -- I

17  think the Government and I are on the same page that they don't

18  intend to bring in other bad acts through those calls.

19          MS. BRUSCA:  Just the fact that he's in jail, Your

20  Honor, and frankly the fact that he is released at some point

21  becomes relevant.

22          THE COURT:  That's fine.  We're good.  We're fine with

23  that.

24          MS. BRUSCA:  Yes.

25          THE COURT:  Now, let's get into the categories here

continuing on in this topic -- we've got another 20 minutes
until we break for lunch -- is the matter of the Defendant
raping Kiara Haynes on or about May 27 of 2015, which is in
fact the date of the murder, correct?

**MS. BRUSCA:**  Correct.

**THE COURT:**  The date of the murder.  The Government
has provided notice that it may introduce that the Defendant
raped Kiara Haynes on or about May 27.  There's no question
that evidence can be presented that there was a sexual
relationship between Mr. Briscoe and Kiara Haynes.  But the
defense has argued that calling this relationship rape, the
defense argues requires a legal conclusion and takes us a
little bit far afield.

What is the Government intending to proffer here?  In
terms of Ms. Haynes's consent or lack thereof, why do we need
to go down that path necessarily, Ms. Brusca?

**MS. BRUSCA:**  Sure, Your Honor.  So Ms. Haynes we
expect would testify if asked that the morning of the murders,
after getting the murder weapon and coming up with the plan
with the Defendant, she changed her mind.  She realized that
the child was going to be home because the Defendant said he's
there and he's sick.  And she changed her mind.

And the Defendant said, basically, I don't care, I'm going
to go over.  And he grabbed the gun, and she tussled with him
to take the gun away from him at which point he exerted

1  physical control over her and raped her anally and took the gun

2  and went despite her protestations to the contrary.

3      So the reason it's relevant is because it explains from

4  her point of view why he was able to take the gun and overbear

5  her will in that respect.

6          THE COURT:  Thank you.  Ms. Whalen, I'll be glad to

7  hear from you on this.

8          MS. WHALEN:  I think it is relevant what occurred and

9  she's entitled to testify to what occurred, but the calling it

10  or characterizing it as rape I would suggest is not appropriate

11  for the reasons that I put in the pleading.  But also I just

12  happen, and this is really splitting hairs, but I happen to

13  take a look again at the criminal law in Maryland and it's not

14  even a rape.  Rape is vaginal intercourse.  It's a sexual act.

15  So it confuses the issues by calling it --

16          THE COURT:  Your saying under Maryland law anal sex is

17  not rape?

18          MS. WHALEN:  That's correct.  It is a sexual act as

19  opposed to rape.  They have it as first-degree rape, rape, then

20  sexual acts.  So it's a very limited request that she not be

21  able to characterize it as rape.  But of course --

22          THE COURT:  Here's the point is that what would be the

23  basis of her not being able to indicate that it was not

24  consensual.

25          MS. WHALEN:  She could say that.  Of course she could.

1    **THE COURT:**  Any problem with that, Ms. Brusca?

2    **MS. BRUSCA:**  No, Your Honor.

3    **THE COURT:**  I think we get away from the word "rape."

4    You can have her describe exactly what occurred because clearly

5    for the witness, and her matter of credibility of Mr. Haynes,

6    for there to be a suggestion that she had consensual sex on the

7    morning of the murder, that sexual assault of her would be

8    intrinsic to the overall charge of the conduct of the murders,

9    but we just don't need to have it be referred to as rape.  She

10   can describe it as sexual assault, that it was not consented to

11   and that's what occurred.  Just as you proffered, Ms. Brusca.

12   And to that extent the Defendant's motion would be denied.  But

13   I think we all agree that some of that portion of it is now

14   moot.

15       So then we have the issue of the Defendant's prior

16   conviction for the illegal possession of ammunition.  And the

17   Government has provided details about that 2016 conviction with

18   respect to an incident in Cambridge, Maryland.

19       And I'm not sure if this has not been covered now in the

20   ambit of the *Old Chief* stipulation.  Do we need to go into the

21   details of this?  There's an *Old Chief* stipulation --

22       **MS. BRUSCA:**  I think it depends, Your Honor.  I think

23   in the first instance the Government would not offer the

24   conviction for the ammunition.  However, it's now already come

25   up --

1          **THE COURT:**  You're saying apart from the matter of the

2     stipulation under *Old Chief* the Government would seek to offer

3     for the following reasons?

4          **MS. BRUSCA:**  Correct.  Exactly.  Thank you for putting

5     it so, Your Honor.

6          So the Defendant has already, in one of their responses,

7     indicated that they want to put in that the Defendant denied

8     owning a gun in some respect, or there's going to be some

9     argument that we're going to have, I believe an earlier motion,

10    about what the Defendant's statements were with respect to gun

11    ownership and access to firearms.

12         Our point would be to the extent that the Defendant either

13    testifies about to that fact or otherwise argues it through

14    cross-examination or otherwise that he didn't have access to

15    firearms, that conviction does become relevant.  So we would

16    not, just in a vacuum, offer the conviction.

17         However, we don't know what the defense will be, but to

18    the extent the defense does put in issue the Defendant's access

19    to firearms then certainly it becomes much more relevant.  And

20    we don't think, on the other hand, particularly prejudicial

21    that he had ammunition.  Although it was only about nine months

22    or a year after the murder took place.

23         So, I mean, that's kind of where we are with most of the

24    404(b), the prior convictions and these other acts.  When we

25    say "open the door" that's what we mean, raise a defense that

1 puts at issue the Defendant's access to firearms.  If they

2 don't put it at issue we certainly won't seek to admit it.

3       **THE COURT:**  Or having to do with whether or not

4 Ms. Haynes possessed a gun or not?

5       **MS. BRUSCA:**  I'm sorry?

6       **THE COURT:**  I'm trying to clarify in terms of the

7 matter of the possession of a firearm and discussion -- there

8 was apparently a discussion in a jail call with Ms. Haynes

9 about a gun, correct?

10       **MS. BRUSCA:**  Right.

11       **THE COURT:**  Just clarify for me again, what was the

12 nature of the conversation about the gun with her?

13       **MS. BRUSCA:**  So Ms. Haynes was on a jail call with one

14 of her relatives and during the jail call she asked the

15 relative to let her borrow a gun --

16       **THE COURT:**  Right.

17       **MS. BRUSCA:**  -- in exchange for 30 grams of heroin.

18 And the cousin -- he asks her "What's it for?  I need to know

19 who?  What?  Where?  When?"  And she says "The business," is

20 that "there's a female," the victim here, "sitting on hundreds

21 of grams, she wants other people to help her sell them.  So my

22 fam, my blood who she's doing it with, just gonna take it.

23 They're just gonna take the heroin."

24     And then ultimately we have another defendant who's gonna

25 say he drove Ms. Haynes and a male to pick up -- what did I

say?  There will be another witness who would testify that same
night, at 20 minutes after this phone call, he picked up
Ms. Haynes and a male, who he never met, drove them to an
intersection where they got out to get the gun.  Mr. Briscoe's
cell site puts him directly at that intersection.  And then
they proceed back to Ms. Haynes' house.

So that would be the testimony regarding what we say is
the murder weapon.

With respect to this ammunition later, that we agree not
going to come in under *Old Chief* absent some argument that the
Defendant never had guns, never had access to guns, didn't
commit crimes with guns.  Things like that.  Then we would say,
well, that's not true.  He did have a conviction for possessing
ammunition.  And he has other relatives who will not offer
hearsay but who will say "I saw him with a gun," "He pointed a
gun at me."

THE COURT:  So this rule will weight what the thrust
of the cross-examination is of the Government witnesses.

MS. BRUSCA:  Exactly.

THE COURT:  All right.  I understand.

MS. WHALEN:  Just to put in context the possession of
ammunition was 2016.

THE COURT:  September of 2016.

MS. WHALEN:  Right, after the time frame in which the
statements my client made to the police were, at least the

1  first one, that was 2015.  But no, I agree with Your Honor that

2  this is something that --

3          THE COURT:  It's not ripe yet.  We'll have to wait and

4  see but certainly the door can be open and the Government can

5  respond in that way.

6      So then we get to the matter of the Defendant's prior

7  convictions for second-degree assault and attempted murder and,

8  again, dancing around the matter of the *Old Chief* stipulation

9  for the elements of the 922(g) charge.

10     The Government has indicated that it does not seek to

11 introduce this as evidence in its case in chief but it may or

12 may not be -- the door may or may not be opened under Rule 405

13 if the Defendant, through presentation of evidence of his own

14 character for peacefulness or otherwise provides testimony that

15 would be contrary to these convictions.  So the Government is

16 not seeking to introduce that in its case in chief.  It will

17 have to wait to see what the defense has presented and we'll

18 have to deal with it down the road.

19     Certainly to the extent there's presentation of character

20 evidence by the defense or propensity allegedly to be a

21 peaceful person, certainly these convictions, without question,

22 will come in, quite frankly, if that were the case, without

23 question.

24          MS. WHALEN:  I just wanted to make it clear for the

25 record that I wasn't abandoning --

1        **THE COURT:**  I understand.

2        **MS. WHALEN:**  -- the constitutional argument that I

3   made in the very first --

4        **THE COURT:**  I understand.  Just so you understand, I'm

5   certainly not going to grant any Motion in Limine as to the

6   Government's ability to deal with this issue if it's raised in

7   that fashion by the defense.

8        So then I just have, I think, there are just a few other

9   disputed bad acts that I just need to address here.  I think we

10  have time before we break for lunch.

11       The Government has provided notice that the defense

12  intends to call witnesses who have allegedly personally

13  experienced or witnessed the following bad acts committed by --

14  I'm sorry -- the Government has provided notice that it intends

15  to call witnesses who have personally experienced or witnessed

16  the following bad acts committed by the Defendant.

17       Witness number one, that the Defendant threatened to kill

18  his girlfriend.

19       Witness number two who was told by his seven-year-old

20  daughter that the Defendant had pointed a gun at her.

21       Witness number three was in a house when the Defendant

22  raped one of his prior girlfriends.

23       Witness number four, that the Defendant in or about 2018

24  pointed a gun at him and threatened to kill him.

25       Witness number five who would testify that the Defendant

1  told him in the years after the murders that he had robbed

2  several homes and stolen a firearm.

3      There are a series of witnesses who have been listed, as I

4  understand it, potential witnesses.  Where are we on this from

5  the point of view Government, Ms. Brusca?

6          MS. BRUSCA:  Again, Your Honor, this is not evidence

7  that the Government intends to solicit in its case in chief.

8  We did just want to make the defense aware that if they ask a

9  question the wrong way and we'd certainly object --

10          THE COURT:  Or the defense opens the doors for that.

11          MS. BRUSCA:  Correct.  If they say, you know, "Why

12  didn't you come forward earlier?  Aren't you making this up?"

13  For example, I think it would be fair for the witness to answer

14  "Well, I was scared of the Defendant," and at least in a

15  limited fashion give a basis for why they were scared.

16          THE COURT:  Once again, the same ruling abides again,

17  Ms. Whalen, on that.  We'll have to wait and see what the

18  thrust of the challenge is.  It's not going to be in this

19  case -- the Government is not going to be presenting that in

20  its case in chief.  We'll have to just wait and see.  Okay.

21      I think that that takes us up to the Government Motion to

22  Preclude the Admission of Defendant's Self-Serving Hearsay

23  Statements, Paper Number 150.  And, essentially, the Government

24  has moved to preclude any attempt by the Defendant to admit

25  allegedly self-serving, exculpatory statements that he made to

law enforcement following his arrest in June of 2015 as well as in May of 2020, and on four occasions to a cooperating witness while he was incarcerated on unrelated charges.

And I think this probably will be a good time, before we get too deep into this, to take a break in terms of the analysis under Rule 801(d)(2)(A) in terms of statements of a party opponent as well as Rule 106, you know, the matter of Rule of Completeness that's woven into the Federal Rules of Evidence.

Is there anything else we need to address at least on these earlier topics?  Mr. Budlow and I will not continue our colloquy on the matter of the hearsay rule.  We're smiling here.  Mr. Budlow, I think we're finished on that topic?

(Laughter.)

**MR. BUDLOW:**  Happy to, Your Honor, if you want to.

**THE COURT:**  I'm teasing you, that's fine.  Why don't we take a break now for lunch and we'll start no later than 2:00 o'clock.  Take about hour and 10 minutes for lunch and we'll start again at 2:00 o'clock.

Is there anything else I need to address before lunch from the point of view of the Government, Ms. Brusca?

**MS. BRUSCA:**  No, Your Honor.

**THE COURT:**  Ms. Whalen, you ready for lunch?

**MS. WHALEN:**  I am.

**THE COURT:**  We'll take a break for lunch and we'll

75

1    start again at 2:00 o'clock.

2         **THE CLERK:**  This Honorable Court is now in recess.

3         (Whereupon, a recess was taken from 12:44 p.m. to

4    2:13 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              **AFTERNOON SESSION**

2    (2:13 p.m.)

3              THE COURT:  Good afternoon, everyone.  With that, we

4    are continuing on with I think, essentially, two more major

5    areas of inquiry here.  The Government's Motion to Preclude the

6    Admission of the Defendant's Self-Serving Hearsay Statements as

7    noted in the Motion, Paper Number 150.  And, essentially, the

8    Government has moved to preclude any attempt by the Defendant

9    to admit what it contends are self-serving and exculpatory

10   statements he made to law enforcement following his arrest on

11   June 5, 2015 and May 22, 2020, and on four occasions to a

12   cooperating witness while he was incarcerated on unrelated

13   charges on July and August of 2019.

14        And, essentially, this relates to his June 5, 2015, arrest

15   in Cambridge, Maryland, at which time Mr. Briscoe gave an audio

16   and video-recorded interview to Baltimore police homicide

17   detectives, Vernon Parker and Brian Lewis.  I have -- would

18   note I have previously denied the Defendant's Motion To

19   Suppress those -- that statement as well as the one in May of

20   2020 by my Order, which is Paper Number 138 in the file.  And

21   the May 22, 2020, statement after his arrest in Baltimore

22   County Defendant Briscoe gave an audio-statement to ATF Special

23   Agent Jason Weaver [sic] who is one of the case agents who's

24   actually here in the courtroom today.

25        And I have a transcript of that interview with the

1  statements that the Government intends to introduce highlighted

2  in yellow and those other statements highlighted in blue.

3       So I think that is the issue before me.  Have I correctly

4  summarized the procedural posture of that Motion from the point

5  of view of the Government, Ms. Brusca?

6            MS. BRUSCA:  Yes, with the very slight tweak that

7  we've also moved to admit evidence of the 2015 statement

8  through the testimony of the detective rather than the audio

9  recording.

10           THE COURT:  I'm sorry, through the testimony of

11  Detective Parker and Lewis?

12           MS. BRUSCA:  Correct, yes.

13           THE COURT:  Yeah, right.  I think that may have

14  addressed my concern over how audible it was initially --

15           MS. BRUSCA:  Yes, yes.

16           THE COURT:  -- as opposed to trying to prepare a

17  transcript, which I thought would be very difficult based upon

18  our earlier hearing.

19       Have I correctly summarized the procedural posture from

20  your point of view, Mr. Purpura?

21           MR. PURPURA:  You have, Your Honor.

22           THE COURT:  Thank you.  Thank you very much.  So with

23  that, it is the Government's Motion and I'll be glad to hear

24  from you, Ms. Brusca, and then I'll hear from Mr. Purpura.

25           MR. PURPURA:  Your Honor, maybe I could shortcut this

```
 1   a little bit.
 2          THE COURT:  Sure, sure.
 3          MR. PURPURA:  Just on whether the Government has the
 4   detective or the agent read from the transcript and/or play the
 5   live video we have no position.  The Government -- they can
 6   admit their evidence any way they think is appropriate for the
 7   jury.  So I think that was the first issue.
 8          THE COURT:  Right.
 9          MR. PURPURA:  The second would be as long as that
10   doesn't interfere with cross-examination.  If I have sections
11   that I wish to play, which are audible, I will play them in
12   cross-examination and ask questions from them.  Whether the
13   Government chooses to use the detectives testifying from a
14   transcript or the live 2015, I can use the actual video if I so
15   choose.
16          THE COURT:  Ms. Brusca, what's your response on that?
17          MS. BRUSCA:  I guess I would say agreed except to the
18   extent the portions he wants to play contain self-serving
19   hearsay.
20          THE COURT:  All right.  We'll address the matter.
21          MS. BRUSCA:  Sure.
22          THE COURT:  That's still in the context of essentially
23   Rule 801(d)(2)(A) as well as 106 rule of completeness,
24   essentially.  Okay.
25      Well, I guess the one certain that I had that I recall is
```

1  that one of the tapes was so difficult that my view was I don't

2  know how -- I could be wrong -- how do you prepare a transcript

3  of this.  I mean, essentially, it's a matter of long-term court

4  policies, I think we're all aware, that generally in these

5  kinds of situations -- and this custom goes back here in this

6  court decades -- the Government prepares a transcript, which it

7  contends is memorializes what is on the tape.

8       I always advise the jury -- the jury gets a copy of the

9  transcript -- the transcripts are not in evidence.  The jury

10 looks at those when they hear the tape.  When they start their

11 deliberations they do not take back the transcripts.

12      If there are any questions about what are on the tapes

13 then the jury comes back in and listens to the tape again here

14 in the courtroom.  That's been the general process for as long

15 as I can recall.

16      Correct from the point of view of the Government; is that

17 right, Ms. Brusca?

18      MS. BRUSCA:  With respect to transcripts, correct,

19 Your Honor.

20      THE COURT:  Correct, Mr. Purpura, from your point of

21 view?

22      MR. PURPURA:  Yes.

23      THE COURT:  So here in this matter are you all going

24 to be preparing transcripts or not?

25      MS. BRUSCA:  We are not, Your Honor.  To clarify, we

 1   are not going to ask any detective to read from the transcript.

 2   It will be "When you interviewed Defendant Briscoe, did you ask

 3   him about X or Y and what did he say?"

 4            THE COURT:  And you may play portions saying yes, he

 5   did or didn't say, whatever --

 6            MS. BRUSCA:  Correct.

 7            THE COURT:  -- and from your point of view there are

 8   certain responses that you think should not be permitted

 9   because it would be self-serving hearsay?

10            MS. BRUSCA:  Correct.

11            THE COURT:  And from the point of view of the defense,

12   from the point of view Rule of Completeness feels they should

13   be able to cross-examine and ask questions and also play

14   certain portions and ask for the detective's response to those

15   responses by Mr. Briscoe, correct?  That's where we basically

16   are.

17            MR. PURPURA:  That's correct.

18            THE COURT:  Okay.  That's fine.  Well, I'll be glad to

19   hear from you, Ms. Brusca, on this.  Thank you, Mr. Purpura.

20        Make sure we put the memo to the file on this.

21            MS. BRUSCA:  Thank you, Your Honor.  I think it's very

22   clear in the Fourth Circuit and every circuit, frankly, that

23   has addressed it that giving a statement to law enforcement

24   does not give the Defendant an opportunity to testify through

25   cross-examination, which is effectively what he would be doing

1  if he got to say on cross, but didn't Mr. Briscoe say X, Y, Z.

2  That helps him out.  That's classic hearsay.  The only reason

3  the Defendant's statement comes in at all is because Rule 801

4  exempts and says is not hearsay, an admission of the Defendant

5  when offered by us, the Government.  He can't, himself, offer

6  on cross-examination his own statements, which he's attempting

7  to do.

8       So for example in *United States v. Ortega*, the officers

9  executed a search warrant and they found incriminating items in

10  the Defendant's bedroom and also in the garage.  In his

11  subsequent statement to law enforcement, the Defendant said

12  yes, the items in the bedroom are mine, but no, those items in

13  the garage aren't mine, my cousin put them there.  And the

14  Court held his statement that he admitted the items in the

15  bedroom comes in, his denial of having ownership of those items

16  in the garage does not.  That's self-serving hearsay.

17       If he wants to get on the stand and deny that those items

18  are his and subject himself to cross-examination he can do so.

19  But what he can't do is just say didn't he say, didn't he say,

20  didn't he say when the detective gets on the stand.

21       And the same thing was true in the Fourth Circuit in

22  *United States v. Wilkerson* where similarly there was a bank

23  robbery, the enforcement agents located the stolen money in the

24  Defendant's vehicle, and he gave alibis for himself and

25  explanations as to why he was in possession of that money and,

1    again, the Fourth Circuit excluded it.  And in this case there

2    is, I would say, Judge Grimm's *Bailey* opinion as sort of the

3    outlier.  The cases are pretty clear, you don't get to admit

4    otherwise inadmissible hearsay through the context of

5    cross-examination.

6        And Judge Grimm fairly says, well, wait, there's a little

7    bit of an exception, it wouldn't be fair if the Government got

8    to leave the jury with a misimpression.

9        And we just argue that's just totally not relevant to this

10   case.  We will not be soliciting either through our detective's

11   testimony or through any transcript with the later statements

12   any sort of indication that Mr. Briscoe admitted the murders.

13   Nobody is contesting or suggesting that he admitted the

14   murders.  He admitted lots of other bad conduct that we say is

15   relevant and inculpatory, but he did not admit the murders.

16       So the fact that he later denied the murders really isn't

17   relevant at all.  It would just be an opportunity for his

18   counsel to put that in through cross-examination and that's

19   really the crux of the issue.

20       We don't think -- we would note the defense hasn't

21   objected at all to the 2020 statement.  They've identified two

22   instances of sort of highlighted Q and As where they suggest

23   there could be a misimpression.

24       We don't agree, again, first because the detective is not

25   going to be testifying.  We asked question, and he said answer,

1  and we asked question, and he said answer.  It will be more

2  broad, "Did you discuss with the Defendant whether or not he

3  had access to firearms?" "Yes, he said he didn't have them, but

4  he could get one if he wanted one."

5      So there's really nothing about the fact that he might

6  have given a little explanation here or there around that that

7  we argue will leave the jury with any kind of misimpression.

8      So that's really, I think, unless the Court has

9  questions --

10         THE COURT:  What is the context, first of all, of the

11 2020 statement as to which you say there is no objection by the

12 defense?

13         MS. BRUSCA:  His statement to law enforcement.

14         THE COURT:  Exactly.  Just summarize what did he say

15 to law enforcement so the record is clear.

16         MS. BRUSCA:  Sure.  So the first 85 percent of the

17 statement is really I would say focused on, exclusively, on the

18 Defendant's narcotics trafficking, his relationship with the

19 victim and their drug dealing and drug dealing of other

20 individuals.  And then at the very end law enforcement says

21 "Well, now we're going to talk to you about the murders," and

22 Mr. Briscoe is, like, "No, no, I had nothing to do with that.

23 I don't want to talk about that."  And that's the portion of it

24 that we would say is inadmissible.

25         THE COURT:  Thank you very much.  Mr. Purpura?

1          **MR. PURPURA:**  Your Honor, quite frankly, even though

2    we had a motion on both of these statements we have no

3    objection to the entire statements coming in in their entirety.

4          **THE COURT:**  But the Government is not seeking to

5    introduce all of them.

6          **MR. PURPURA:**  I understand that.  Quite frankly, until

7    they filed the Motion In Limine, obviously I do know the rules.

8    Maybe not obviously, but I do know the Rule 801(d)(2), and I

9    know the rule of completeness as well, and on cross-examination

10   I would not have gone into the actual denial itself, but a lot

11   of other answers that he gave.

12        But then when I looked at the Government's Motion, and

13   again I looked at what Judge Grimm had to say, it just makes an

14   abundance of sense that this whole incident where these

15   questions are, there are approximately 55 or 57 pages in the

16   first and about the same amount on the second of 2015 and 2020,

17   deals with a very limited time period, a time period about 12

18   to 14 hours on the 26th into the 27th.

19        And, quite frankly, the way I see it and the misimpression

20   it's going to leave on the jury is that all of this information

21   that is being gathered by at first the homicide detective and

22   then Agent Weaver is inextricably intertwined.  It's dependent

23   in that short period of time.

24        So the questions clearly are at first about drugs and then

25   second about the murder.  And they're all intertwined in

itself.  And without -- with an admission as to the drugs,
truthful admission as to the drugs, truthful admission as to
where I was, truthful admission as to the time sequence and
then, you know, bring in the truthful admission that I didn't
do it when questioned it does mislead the jury.

And, literally, the 2015 and the 2020 statements are
somewhat mirrored.

THE COURT:  Well, isn't -- isn't really the crux of
the difficulty with respect to the defense position on that
that it totally runs contrary to the clear holdings of *United
States v. Wilkerson*, the Fourth Circuit, a 1996 opinion at
84 F.3d. 692, and, essentially, that case clearly holds that
neither the hearsay rules nor Rule 106, which codifies under
regular Rules of Evidence, provide an exception for
self-serving exculpatory statements made by a party, which are
being sought for admission by that same party, i.e. Mr. Briscoe
here.  And that Rule 106 does not render admissibly evidence,
which is otherwise inadmissible under the hearsay rules.

It seems to me that the thrust, the thrust of the argument
here as is very clearly the Wilkerson case stands for the
proposition that the self-serving exculpatory statements are
not admissible and to be offered by Mr. Briscoe.  And we really
come down to whether or not this falls within any kind of
exception as noted by Judge Grimm, my colleague here on the
court in *United States v. Bailey* at 322 F.Supp. 3d 661, an

1   opinion by Judge Grimm in 2017, and essentially he found some

2   exception and to my knowledge.

3       There was no Fourth Circuit treatment of the *Bailey* case;

4   is that correct?  There was no appeal; is that right?

5           MS. WHALEN:  Your Honor, that was my case, and it was

6   a plea.

7           THE COURT:  It was?

8           MS. WHALEN:  It was a guilty plea.

9           THE COURT:  It was a guilty plea.  Okay.  So we have

10  the Fourth Circuit opinion, which clearly supports the

11  Government's position.  And you have Judge Grimm's opinion sort

12  of carving out an exception.  That's really where we are, it is

13  not, Mr. Purpura?

14          MR. PURPURA:  Your Honor, I'm not disagreeing with

15  you, I'm not disagreeing with the law presented by the

16  Government.  Again, as I mentioned earlier, I wouldn't have

17  even brought up this argument until the Government filed their

18  Motion --

19          THE COURT:  I understand.

20          MR. PURPURA:  -- and we responded.  Now we have, I

21  believe, protected the record on this.

22          THE COURT:  Yes, you have.  You've clearly protected

23  the record on it if you don't prevail, without question.

24          MR. PURPURA:  The only thing I'm going to add, I would

25  submit an exhibit to his honor, would be the Grand Jury Agent

1  Weaver, it's a couple pages, July 1st of 2020, when Mike

2  Hanlon, in essence, summarizes both statements, the 7/15

3  statement -- excuse me -- the 2015 statement and the 2020

4  statement.  And in both of those he combines the fact that

5  there was drugs, location, cell tower hits and in fact the

6  Defendant said he was not guilty of this.  So the information

7  of the not guilty was given to a Grand Jury, it was given by

8  Mike Hanlon, and there was an indictment.

9          THE COURT:  That's fine.  You can supplement that for

10 Defendant's Exhibit 1 for purposes of this hearing.  Any

11 objection by the Government as to that, Ms. Brusca?

12         MS. BRUSCA:  Your Honor, I would argue it's not

13 relevant but no objection to it.

14         THE COURT:  That's fine.  It can be admitted into

15 evidence.  Take it to the clerk's desk and --

16         MR. PURPURA:  Thank you.

17         THE COURT:  -- and Mr. Carrick will mark it as Defense

18 Exhibit 1.

19     Adam, if you'll make a note of that.

20     Just looking here -- just looking here -- really, I'm

21 going to grant the Government Motion here on this for the -- to

22 preclude the admission of the self-serving hearsay statements

23 for the reasons outlined within the ambit of the *Wilkerson* case

24 of the Fourth Circuit.  And the record will reflect that the

25 Defendant Briscoe has preserved his right of appeal on that

issue in the *Bailey* case, which I think is distinguishable from this case.

There was an issue in terms of a partially introduced statement that required completion in order to -- because incomplete evidence would be taken out of context.  That's simply not the case here.

And it doesn't exclude -- it doesn't -- including that evidence as moved by the Government, which will be granted, does not create a misleading perception because the Defendant, through counsel, is free to elicit from the officers that word had spread about the murders by June 5 of 2015, a week after the murders of May 27.

And the key point here is that Haynes and Briscoe discussed the murders.  That's the key point.  There's no -- there's nothing that needs to be completed here as far as I'm concerned within the ambit of the exception that Judge Grimm carved out.  And is clearly aptly noted this falls within the total ambit of the *Wilkerson* case, and with all due respect to the exception carved out by Judge Grimm in his opinion that did not go to the Fourth Circuit in the *Bailey* case, it would not apply here.  There's no misconception that's being conveyed to the jury, and there's no incomplete context that would cause it to be taken out of context.

So the -- the Defendant is clearly free to argue, I guess, from opening statement, as you summarize the positions of the

Government and the Defendant in opening statements.  The
Defendant is certainly free to have his counsel in opening
statement note that there are many hours of recorded
conversations in which he participated and that the only
evidence of any kind of confession comes from a cooperating
witness who allegedly has maybe something to gain.  And defense
is free to make that argument, and there's no prejudice to him
in that regard.

But, clearly, this falls within the ambit of Rule 106,
which -- the Federal Rules of Evidence -- which clearly sets
forth the marker here and clearly the *Wilkerson* case is the
guiding light here for the Court.

So for those reasons the Government's Motion to Preclude
the Admission of the Defendant's Self-Serving Hearsay
Statements is granted.

Is there anything further from the point of view of the
Government on this matter, Ms. Brusca?

**MS. BRUSCA:**  No, Your Honor.

**THE COURT:**  Mr. Purpura?

**MR. PURPURA:**  Not on that.  Just so I understand, in
cross-examination, even without a transcript, if there's clear
portions of either the video from 2015 and/or the audio from
2020, I can play those for the witnesses; is that correct?

**THE COURT:**  In terms of --

**MR. PURPURA:**  In terms of --

1      THE COURT:  No, not in terms of his -- not in terms of

2 his exculpatory statements, no.

3      MR. PURPURA:  Right.  Absolutely.  I absolutely agree.

4 Any time he says "I didn't do it," doesn't come in.  I

5 understand that.  But any other portions, even if the

6 Government is going to be limited in how they present theirs.

7      THE COURT:  Right.  That's correct. the Government

8 hasn't objected to that, correct, Ms. Brusca?  I mean, he

9 understands my ruling -- Mr. Purpura understands my ruling in

10 terms of self-serving hearsay statements under Rule 106.

11      MS. BRUSCA:  I just want to clarify, Your Honor, I

12 totally agree with both Mr. Purpura and you on the 2015

13 statement.  On the 2020 statement we are playing the entirety

14 of the video that we believe is admissible.  So with respect to

15 the 2020 statement, no.

16      MR. PURPURA:  I agree.  I have no problem --

17      THE COURT:  So the only issue would come up to the

18 2015 statement and even as to that the portion will not be

19 played and you're not free to play that.

20      MR. PURPURA:  That's right.  And my objection is to

21 that portion, which we're not going to play.

22      THE COURT:  That's fine.

23      MR. PURPURA:  Thank you very much.

24      THE COURT:  So and that's preserved for the record

25 then.  The objection on the record is as to the portion of the

1    2015 statement.

2        Mr. Purpura, so we're clear on the record here for

3    appellate purposes, if your client were to be convicted, it's

4    the portion of the 2015 statement that is not being played and

5    I've sustained the Government's Motion In Limine with respect

6    to that portion.

7            MR. PURPURA:  And the 2020 statement, which they will

8    not play.

9            THE COURT:  That's right.  That's exactly right.

10   Fine.  Okay.  I think we're all clear on that.

11       I'm going to issue a written opinion this week following

12   up and further explaining my rulings here from the bench.  So

13   that clarifies that.  I think we're clear on that.

14       So with that the fourth and last motion, I think, is with

15   respect -- we've dealt with the matter of reference to possible

16   penalties, Paper Number 152, notice of alibi, Paper Number 153.

17       I think the last motion that we have to deal with here is

18   the Government's Motion In Limine to admit excerpts of three

19   jail calls involving Kiara Haynes that it contends do not

20   constitute hearsay and to preclude the admission of other jail

21   calls that it contends are hearsay and that's Paper Number 151.

22   I think that's the last matter we have before us this

23   afternoon.

24       Is that right, Ms. Brusca, from your point of view?

25           MS. BRUSCA:  Yes, Your Honor.

```
 1          THE COURT:  Ms. Whalen and Mr. Purpura, is that
 2   correct?  Is that where we are?
 3          MS. WHALEN:  Yes, sir.
 4          THE COURT:  Okay.  So with that, just for background,
 5   we have the jail call on May 26, 2015, and then we have the
 6   jail calls on May 27, 2015, at 9:43 a.m. and 9:58 a.m.  And
 7   with that, I'll be glad to hear from you, Ms. Brusca?
 8          MS. BRUSCA:  Thank you, Your Honor.  If I may, would
 9   it be okay if I break it into two portions?
10          THE COURT:  Sure.
11          MS. BRUSCA:  The jail calls the Government wants to
12   admit --
13          THE COURT:  That probably makes more sense.  Let's go
14   over what you want to admit and what you don't want to admit
15   and we'll go from there.
16          MS. BRUSCA:  Perfect.  Thank you, Your Honor.  So with
17   respect to the three calls that the Government is seeking to
18   admit, none of those calls, the portions that we've excerpted
19   within this Motion and now also provided to defense counsel,
20   they're not hearsay.
21          With respect to the call about the gun, those statements
22   in that call are not hearsay because they are statements of
23   coconspirators in furtherance of the conspiracy.  I understand
24   that the defense has made an argument that the Government
25   hasn't shown that a conspiracy existed at the time of the call.
```

1   It's simply not true.  That the phone call with respect to the

2   gun took place at 9:19 p.m.

3         We will have witnesses who testified --

4               THE COURT:  That conversation is between whom?  It's

5   between Haynes and the individual providing the gun; is that

6   correct?

7               MS. BRUSCA:  Correct and --

8               THE COURT:  And who is what I would call the Gun

9   Giver?  Is that person identified or not?

10              MS. BRUSCA:  Yes, Your Honor.  We can identify him for

11  today's purposes.  The person in jail is named Tariek Powell,

12  and the person out of jail who actually hands the gun we would

13  say to Ms. Kiara or provides it, maybe doesn't hand it

14  hand-to-hand is Tarrell Powell.  So Tarrell and Tariek Powell

15  are brothers and they are Ms. Haynes's cousins.

16        So in the call itself, the call itself makes clear there

17  is a conspiracy.  Tariek Powell, the Gun Giver, says, as I

18  earlier proffered to the Court, "I want to know the business.

19  I want to know who, what, where, when you need this gun."

20  Ms. Haynes doesn't respond "It's for me.  I'm going to go do

21  this," she says "It's for fam.  It's fam.  It's my blood, and

22  the business is there's a woman sitting on hundreds of grams of

23  boy" -- is what she ends up calling it, the code word for dope,

24  for heroin -- "and we're going to take it from her."

25        So the statement itself provides evidence that there is a

1    conspiracy.

2          And we also have a witness who's going to testify that

3    Mr. Briscoe called him and said I'm going to rob Jennifer

4    Jeffrey, the victim.

5          And the witness said, in substance, "How are you going to

6    do that?  She knows you."

7          Like, that's kind of a stupid plan.  How can you rob

8    somebody that knows you.  They're going to be able to identify

9    you.

10          And Mr. Briscoe says "Don't worry about it.  Shut up."

11          And then later Mr. Briscoe calls the witness back and says

12    "It's done.  Come and get me."

13          And the witness will say there were many hours in between

14    there and that during this period Mr. Briscoe is calling him,

15    calling him, calling him and calling him.  And the phone

16    records reflect that Mr. Briscoe started calling this witness

17    at 4 -- around 4:30 p.m. the night that they get the gun.  So

18    Mr. Briscoe starts calling his coconspirator who's going to

19    pick him up at 4:30 p.m.  This gun call happens five hours

20    later at 9:19 p.m.

21          **THE COURT:**  On May 26, 2015.

22          **MS. BRUSCA:**  Correct.  No dispute that Mr. Briscoe is

23    with Ms. Haynes at this time.  There's cell site evidence.

24    Ms. Haynes will say it, the owner of the apartment where

25    Mr. Briscoe was at the time is expected to say it.

1    So there's all kinds of witnesses who put them together.

2  Put them together in East Baltimore, put them together as they

3  drive to get the gun, put them together as they go back to

4  Ms. Haynes's house.  The statement itself talks about my fam

5  and my blood, my family.  And there's only one person who that

6  is that night, we will argue Mr. Briscoe.

7         THE COURT:  Because the evidence that you intend to

8  offer that Kiara Haynes is a cousin of Mr. Briscoe.

9         MS. BRUSCA:  Correct, Your Honor.  Her family, her

10  blood.  So we think there's going to be more than enough

11  evidence for the Court to find that there is a conspiracy at

12  the time of the call and that that conspiracy includes

13  Mr. Briscoe.  So it's not hearsay.  It's our argument with

14  respect to that --

15         THE COURT:  Under 801(d)(2)(E) in terms of comments in

16  furtherance of a conspiracy.

17         MS. BRUSCA:  Correct.

18         THE COURT:  This is not a conspiracy specifically

19  charged in the indictment.

20         MS. BRUSCA:  And we would say it is both a conspiracy

21  to commit the robbery and a conspiracy in furtherance of the

22  larger drug trafficking that's going on with Mr. Briscoe --

23         THE COURT:  But not specifically charged in the

24  indictment?

25         MS. BRUSCA:  Well, we do charge in Count 1 the drug

```
 1  trafficking conspiracy.
 2          THE COURT:  That's what I'm trying to clarify.  It
 3  would be within the ambit of Count 1 conspiracy in terms of
 4  narcotics distribution.
 5          MS. BRUSCA:  It would be both.  But with Count 1
 6  conspiracy as to drugs and an uncharged conspiracy to commit
 7  Hobbs Act robbery.
 8          THE COURT:  Uncharged conspiracy.
 9          MS. BRUSCA:  Correct.
10          THE COURT:  So it's a charged conspiracy and uncharged
11  conspiracy.
12          MS. BRUSCA:  Correct, Your Honor.
13          THE COURT:  And that is as to the jail call on
14  May 26th, 2015 around 9:00 o'clock or thereafter.
15          MS. BRUSCA:  Correct, Your Honor.
16          THE COURT:  And with respect to the jail calls on
17  May 27, 9:43 and 9:58, and where she says essentially the
18  inmate number one asked Haynes to whom she is speaking in the
19  background and she says "my cousin," correct?
20          MS. BRUSCA:  Correct, Your Honor.  And again we would
21  say both of those calls are not hearsay.  They're not being
22  offered for the truth of the matter, and they're not
23  statements.  In one call she's saying "Get me some cigarettes.
24  Get me some cigarettes."  Those are imperatives.  "You hear me?
25  Poo, you hear me?"
```

```
 1        And so that's not being offered for the truth --it's not a
 2   statement.  She's just saying get me some cigarettes.
 3             THE COURT:  I understand.  The Government is going to
 4   be proffering evidence sometime during its case in chief that
 5   the Defendant Andre Briscoe is also known as Poo.
 6             MS. BRUSCA:  Correct.  Thank you, Your Honor.  So that
 7   statement and the one preceding it show that they are together
 8   and also further show that Mr. Briscoe leaves the apartment.
 9             THE COURT:  Thank you.  We have not addressed -- we
10   have not addressed other calls that you feel should not be
11   admitted.  We'll get to those in a minute.
12             MS. BRUSCA:  Thank you, Your Honor.
13             THE COURT:  That covers those calls within the ambit
14   of your seeking to have a Motion In Limine to admit certain
15   excerpts of those three jail calls, correct?
16             MS. BRUSCA:  Yes, Your Honor.
17             THE COURT:  Ms. Whalen or Mr. Purpura?  Ms. Whalen?
18             MS. WHALEN:  Thank you, Your Honor.  Let me start with
19   the May 26th call --
20             THE COURT:  Yes.
21             MS. WHALEN:  -- with Gun Giver 1.  What the Government
22   has just argued I believe is that the statements themselves
23   show that there's a conspiracy.  But the case law is such that
24   you can't rely just upon the statement itself.  You have to
25   have evidence separate and apart from the statement to
```

demonstrate that there is a conspiracy.  They've also said --

   **THE COURT:**  That's why I was asking.  I understand your point on that but that's why I was asking about the charged conspiracy in Count 1 and an uncharged conspiracy.

  The Government is contending that there is a charged conspiracy in Count 1 as to which the Government is offering evidence in its case in chief and that these comments are, under 802(d)(2)(E), are in furtherance of that charged conspiracy in the indictment apart from any uncharged conspiracy.

   **MS. WHALEN:**  However, what I'm saying is regardless of whether it's charged or uncharged, if you are using the content of the statement only to demonstrate that there is a conspiracy and, therefore, it's in furtherance of the conspiracy, whether it be charged or uncharged, those statements -- the Government can't rely on just those statements in order to prove their conspiracy because the case law, I think it's *Stroupe* and *Dockins* which are both, I think, listed in the pleadings, either by the Government or the defense, say specifically that you must show your conspiracy separate and apart from that.

  So that's just one angle of their argument.  Then I go to the second which is they're saying --

   **THE COURT:**  If I can continue just so I'm following you on that.  My point is that to the extent that it is an item of proof but there are other items of proof as to the

conspiracy.  That's what those cases stand for.

MS. WHALEN:  And I agree.

THE COURT:  Okay.  And that's my point about the fact that there's, apart from the uncharged conspiracy as to the Hobbs Act robbery, there is the charged conspiracy in Count 1 with respect to narcotics distribution, as to which there's clearly going to be other evidence other than just these calls.

MS. WHALEN:  However, Your Honor, this is evidence in further of the conspiracy to getting a gun.  There's not going to be any other evidence that I'm aware of in which there would be some other piece of this of getting a gun.

In other words, in the drug conspiracy itself there's not going to be evidence that I'm aware of that somehow as part of that drug conspiracy he needed to get a gun or he wanted to get a gun.  It's specifically, I think, going to be evidence that this gun was to be gotten by Ms. Haynes for the intent to rob the victim.

But having said that, the Government says there's no dispute that Mr. Briscoe was with her.  Well, I totally disagree with that.  There is a dispute as to whether he was with her and cell phone location site records simply show he's in the area -- the phone's in the area, excuse me.

So there is a dispute as to who is with her and there will be witnesses who do not identify or cannot identify Mr. Briscoe as being with her.

100

1        So I take issue with how they're going to try to prove the

2    conspiracy and in furtherance of the conspiracy.

3        Finally, the Government argued that Mr. Briscoe called a

4    co-- excuse me, not a codefendant, but called a person, I

5    believe that's Wayne Briscoe from what I'm understanding them

6    to be arguing, and that --

7            THE COURT:  On the morning of May 27?

8            MS. WHALEN:  No.  I believe what they're saying is the

9    call to Wayne Briscoe began around 4:30 in the afternoon -- now

10    these are just --

11            THE COURT:  On May 26?

12            MS. WHALEN:  On May 26.  These are just cell phone

13    records.

14            THE COURT:  I understand.

15            MS. WHALEN:  They're not, obviously, the calls

16    themselves.  So Mr. Briscoe is not going to be able to

17    pinpoint, I suggest to you, when that call was made from -- if

18    indeed it was made that my client said he was going to do a

19    robbery.

20        So he's only going to be able to say sometime, who knows

21    when, Mr. Briscoe called him and said he was going to do a

22    robbery.  Now, if that call came after he got the gun at 9

23    something in the evening then those statements on this phone

24    call are not in furtherance of the conspiracy.  They predate

25    the conspiracy.

1     And so I'm asking Your Honor to take a look at what it is

2 that the Government -- I mean, usually the Government can prove

3 all kinds of facts to demonstrate there's a conspiracy.  But in

4 this limited case I would suggest that they don't have the kind

5 of evidence that we normally would see to show that the

6 statements made at this time during this phone call were in

7 furtherance of the conspiracy, whether charged or not.

8     On the May 27th calls, both of them we have simply argued

9 that they were cumulative, and I'm not going to take Your

10 Honor's time and argue more on that.  I think we've put our

11 objections in writing.  Thank you.

12     **THE COURT:**  Thank you.  Anything further on that from

13 your point of view, Ms. Brusca?

14     **MS. BRUSCA:**  No, Your Honor.

15     **THE COURT:**  Again, I will embellish upon this in the

16 written opinion but without question the Government's Motion to

17 admit these experts will be granted.  They do not constitute

18 hearsay.  I've reviewed the jail call on May 26, 2015, at

19 9:19 p.m., as well as the calls on May 27, 2015, the next day

20 at 9:43 a.m. and 9:58 a.m.  And the Federal Rule of Evidence,

21 to which we've all made reference, 801(d)(2)(E), provides as an

22 exception to the hearsay rule for the admission of statements

23 by coconspirators made during the course and in furtherance of

24 the conspiracy.

25     And the Government to admit this evidence under this rule

1   must show by a preponderance of the evidence that there was a

2   conspiracy involving the declarant and the party against whom

3   the admission of the evidence is sought and that the statements

4   were made in furtherance and in course of the conspiracy.  And

5   I'm satisfied by the proffer of evidence that that falls within

6   the ambit of the *Bourjaily*, B-O-U-R-J-A-I-L-Y, *versus United*

7   *States* at 43 U.S. 171, as well as the opinion by the United

8   States Court of Appeals for the Fourth Circuit in *United States*

9   *v. Smith*, 441 F.3d 254, an opinion of the Fourth Circuit of

10  which *certiorari* was denied by the Supreme Court in 2006.

11       Most courts, generally, as the Fourth Circuit noted in the

12  *Smith* case, most courts, including the Fourth Circuit, construe

13  the "in furtherance" requirement so broadly that even a casual

14  relationship the conspiracy suffices.  And I'm satisfied that

15  these statements that are proffered by the Government are in

16  the course of the conspiracy and there's two prongs there as

17  were clearly reflected here before the Court this afternoon.

18  They are the conspiracy as charged, the narcotics conspiracy in

19  Count 1, as well as the uncharged Hobbs Act conspiracy in Count

20  2.  So that they will be admissible, and we will embellish upon

21  that.

22       I would further note that the comment by Haynes in the

23  May 27, 2015, call that she was talking to, quote, "my cousin,"

24  end of quote, is admissible as a present sense impression under

25  Rule 803(1) and because it was made by her at a time that she

perceived Briscoe to be near here, or at least that's the

argument of the Government, while she spoke on the telephone.

So for those reasons that we further embellished upon, the

Government's Motion will be granted there.

Now, there's another portion to this Motion and that is

that the Government is also seeking to preclude the admission

of other jail calls that the Government contends are hearsay.

And as to those, Ms. Brusca, I'll be glad to hear from you

specifically what they are?

MS. BRUSCA:  Thank you, Your Honor.

THE COURT:  I gather these are calls that you contend

that the defense should not be permitted to introduce into

evident; is that correct?

MS. BRUSCA:  That is correct, Your Honor, and I would

readily --

THE COURT:  I guess I'm trying to clarify has the

defense indicated that they --

MS. BRUSCA:  I was just going to say, so I would

readily acknowledge that this particular issue may not yet be

ripe, but we did not want to raise it for the Court at the

first moment when the defense sought to play the calls.

THE COURT:  So at this present time you have not been

notified the defense is seeking to introduce those calls --

MS. BRUSCA:  Correct.

THE COURT:  -- but in an abundance of caution and to

1  save time you want to have an advanced ruling on this; isn't

2  that right?

3      MS. BRUSCA:  If not today, if the defense isn't ready,

4  at least at some point.  Because, frankly, the calls are very

5  long.  We have tried to pick out the portions we think they

6  might want to use but, you know, there are a lot -- there's a

7  lot of ground covered in these calls.

8      THE COURT:  As I understand it, they're a series of,

9  correct me if I'm wrong, but according to my review of the

10  submissions here there are -- we have calls, I gather, correct

11  me if I'm wrong, we have calls in early May of 2015.  These are

12  the calls of which you're speaking; is that right?

13     MS. BRUSCA:  Yes, Your Honor, I would say May 1st

14  through about --

15     THE COURT:  May 11th?

16     MS. BRUSCA:  May 1st through May 11th.  I think

17  there's --

18     THE COURT:  I believe that there are essentially --

19  the calls that are in issue here are May 1, 2015, May 6, 2015,

20  May 9, 2015, May 10, 2015, and May 11, 2015.  These are also

21  jail calls that you contend should not be admissible into

22  evidence?

23     MS. BRUSCA:  Correct, Your Honor.

24     THE COURT:  I'm not going to require the defense to

25  indicate at this point in time whether they seek to do that or

1    not.  That's within their prerogative to see it and they don't

2    need to advise me ahead of time in terms of their own strategy

3    in representation of Mr. Briscoe but I'll be glad to hear from

4    you on this.

5        Ms. Whalen, if you want to be heard or Mr. Purpura, you

6    can be addressed, you need not, I need to hear what the

7    Government's position on it is to get prepared ahead of time.

8        **MS. BRUSCA:**  Yes, Your Honor.  So I'd say there are

9    really two categories of statements in these calls that I'm

10   going to address broadly.  The first would be Haynes'

11   statements on these jail calls, so her out-of-court statements

12   on the jail calls, about what she was thinking at some past

13   time.

14       So a present sense impression just like "I'm talking to my

15   cousin Poo," is one that she would give on the phone of her

16   mental state at the time of the call.  A present sense

17   impression the Third Circuit has held is not present sense, if

18   it's either 50 minutes later, five-zero minutes later in the

19   event.

20       So, in particular, the one about Ms. Haynes saying "Oh,

21   well, last night I was dressed up in black."  That's not a

22   mental impression at all.  That's just something she's saying

23   she did.  Who knows if it's true or not.

24       "And I stood outside and I thought about this and I

25   thought about that."  She's telling her boyfriend on that call

1  hours and hours, a full day even, later after it happened.

2          THE COURT:  Just so I'm clear in terms of the context.

3  These are calls she is having with an inmate at the jail?

4          MS. BRUSCA:  Correct.

5          THE COURT:  She is not in jail.  She's talking to

6  someone.

7          MS. BRUSCA:  Correct.

8          THE COURT:  And is it the Government's contention it's

9  the same person each time with whom she's speaking?

10         MS. BRUSCA:  I believe we've tried to say Inmate 1

11 whenever it was the same person and Inmate 2.

12         THE COURT:  I'm looking here.  Apparently it's as

13 to --

14         MS. BRUSCA:  On May 9th and May --

15         THE COURT:  May 10th I see there's reference to Inmate

16 2.

17         MS. BRUSCA:  That's a different inmate, Your Honor.

18 So yes, May 6th and May 9th and May 1st, the first three calls

19 are all to the same individual.

20         THE COURT:  Okay.

21         MS. BRUSCA:  And during those calls she's talking

22 about things in the past.  She may say something like "I'm so

23 mad."  If she said something like that during the call, we

24 would agree that could be her -- her mental state at that

25 moment, which may or may not be relevant depending on the rest

1  of the call.

2      But what she's saying on those calls about something she

3  did in the past squarely falls outside the then existing mental

4  state rule.  So I just want to look at it for a moment.  It's

5  803(3).  In the rule it says "Statements of future intent are

6  admissible, but statements of past intent are not" -- and this

7  is Judge Cardozo, of course -- "there would be an end or nearly

8  that to the rule against hearsay if the distinction were

9  ignored."

10      So where she's telling her inmate boyfriend about what

11  happened in the past, that's just straight hearsay.  If she

12  were to tell him I'm so mad, I'm going to do X.  Like, for

13  example, "I'm going to sell my own pills."  That is a future

14  intent.  We would say it's not relevant because she's talking

15  about selling her own pills, much less somebody else's and

16  somebody else's heroin.  But this category of where she's

17  talking to her inmate boyfriend about what happened in the past

18  simply not admissible.

19          THE COURT:  Well, one of these is the matter of the

20  alleged threats by Ms. Jennifer, the ultimate victim, alleged

21  threats made to Haynes is one of the calls, correct?

22          MS. BRUSCA:  She's talking --

23          THE COURT:  She talks about threats from Jennifer.

24          MS. BRUSCA:  She's talking about events in the past,

25  yes.

1        THE COURT:  And one of them is an alleged threat to

2   her?

3        MS. BRUSCA:  Correct.

4        THE COURT:  Right.

5        MS. BRUSCA:  But again, Your Honor, so to say if I

6   called someone and said "Man, yesterday somebody threatened

7   me," that's simply hearsay.  And there's no -- there's no

8   exception for it.  It's not a present sense impression.  She's

9   not saying Jennifer is outside my house threatening me right

10  now.

11       THE COURT:  Does it give context to her state of mind,

12  to Haynes' state of mind?

13       MS. BRUSCA:  No, because it's her state of mind at the

14  time of the call.  At the time of the call her state of mind is

15  whatever it is.  But what she's doing on the call is not

16  describing her state of mind at that moment.  She describing

17  her state of mind 24 hours or 48 hours or 72 hours earlier

18  whenever she had the fight with Jennifer.

19       So these are not present sense impressions.  The then

20  existing state of mind is the state of mind at the time of the

21  statement.  So at the time of the statement --

22       THE COURT:  How long is the state of mind from the

23  statement allowed to last, Ms. Brusca?

24       MS. BRUSCA:  Yeah, for present sense impression it's

25  50 minutes and many courts have held, including Judge Grimm,

1   803(3) is a specific carve-out from 803(1).  So it's --

2          THE COURT:  Is that Judge Grimm in the *Bailey* case?

3          MS. BRUSCA:  No, that's in the *Markel* case, *Lorraine*

4   *v. Markel American Insurance*.

5          THE COURT:  What is the year of that case?

6          MS. BRUSCA:  2007, Your Honor.

7          THE COURT:  Okay.

8          MS. BRUSCA:  And that's -- so we would say that her

9   state of mind has to be her state of mind on the call.  It's

10  not her describing her state of mind at some other point in

11  time in the past.  So for that reason this category of call

12  where she's talking about things that happened, she's telling

13  her boyfriend this happened or that happened, they're all

14  past -- past acts that are just plain hearsay for which there's

15  no exception, Your Honor.

16         THE COURT:  Thank you.  In 2007 that was authored by

17  Judge Grimm when he was a magistrate judge or a district judge?

18         MS. BRUSCA:  Your Honor, that was when he was a

19  district judge, Your Honor.

20         THE COURT:  2007?

21         MS. BRUSCA:  Correct.

22         THE COURT:  All right.  Thank you.  Thank you very

23  much.

24      Yes, Ms. Whalen, do you want to be heard generally on this

25  topic?

1          **MS. WHALEN:**  Just generally.  First I wanted to make

2     it clear that the Government does not object to us using these,

3     as they shouldn't object, in cross-examination of Ms. Haynes.

4          And the second thing that I think we will have to --

5          **THE COURT:**  So we're clear on that, you're saying the

6     Government does not object to you using these calls to

7     cross-examine?

8          **MS. WHALEN:**  Certainly, yes.

9          **THE COURT:**  I understand.

10          **MS. WHALEN:**  Okay.  And then the second thing is I

11     don't want to take a lot of time now because as you've said we

12     haven't given notice as to the specific calls, but I just raise

13     that I think the Government is really splitting hairs on

14     present sense impression.  And the reason I say that is if you

15     just take -- just take call number one on May 1st.

16          Ms. Haynes is saying what she has done to delete the

17     victim from her Facebook and not talking to her anymore, and

18     she's explaining her anger.  And the anger is what I think is

19     the present sense impression:  "I am angry, I am doing it for

20     this very reason and that's because she said she was going to

21     have her connect kill me."

22          So I think -- while it may be she said that at some point,

23     other given period of time, her present sense impression is I'm

24     angry because she said that and I'm telling you why.  And it's

25     the anger and the motive and the anger that translates into

1  motive to kill that I think makes these admissible.

2      Just so that it's clear for the record and the Government,

3  I don't believe we would intend to use the May 6th call.  I

4  don't believe we would intend to use the May 11th call.  And we

5  are still -- because these were given to us fairly recently

6  along with multitude of *Jencks* and everything else, we are

7  still making our decision as to how and if we would use any

8  other calls from --

9          THE COURT:  The other calls, I believe, there are

10  essentially five calls that I think are in question as to not

11  using the May 6 or May 11 calls to cross-examine Ms. Haynes,

12  you're still making a determination as to the May 1, May 9 and

13  May 10 calls I think is what we're talking about, correct.

14          MS. WHALEN:  May 1, May 9, May 10, and May 29.

15          THE COURT:  All right.  May 1, May 9, May 10, and

16  May 29?

17          MS. WHALEN:  Yes.

18          THE COURT:  As well as, I'm sorry, as well as the

19  May 16 call you're still not certain whether you're using that

20  or not; is that right?

21      Just so I'm clear, Ms. Whalen, you clearly are not

22  intending to use the May 6, May 10 call.  You may or may not be

23  utilizing the May 1, May 9, May 10, May 16 and May 29 calls; is

24  that right.

25          MS. WHALEN:  Yes, sir.

1        **THE COURT:**  All right.  Thank you very much.

2        **MS. BRUSCA:**  And, Your Honor, if I just may?

3        **THE COURT:**  Sure.

4        **MS. BRUSCA:**  I just want to read one thing from a

5    Ninth Circuit case.  The limiting language of Rule 803, quote,

6    "Bars statements --

7        **THE COURT:**  803 subsection 3.

8        **MS. BRUSCA:**  Correct -- "Bars statements as to why the

9    declarant held the particular state of mind or what he might

10   have believed that would have induced the state of mind."

11       So specifically in response to this argument that she said

12   I'm angry because.  They can admit I'm angry.  The rule, not

13   us, not the Government, is splitting the hair.  She cannot

14   admit why she was angry unless they ask her.  If she's a

15   witness they can certainly ask her and if she denies the reason

16   given on the call --

17       **THE COURT:**  She's free to be asked on

18   cross-examination why she was angry.

19       **MS. BRUSCA:**  Correct, Your Honor.

20       **THE COURT:**  I understand.

21       **MS. BRUSCA:**  But that's what the rule says and that's

22   what we'd ask the Court --

23       **THE COURT:**  The point being that it's the importance

24   the time of the declaration and the time at issue.

25       **MS. BRUSCA:**  Correct, Your Honor.

1          THE COURT:  All right.  Thank you all very much.  I've

2    made my ruling on this as well.  And we'll be following up with

3    an opinion this week on this.

4        Is there anything further -- any other matters from the

5    point of view of the Government, Ms. Brusca?

6          MS. BRUSCA:  No, Your Honor.  Thank you.

7          THE COURT:  Anything else from the point of view of

8    the defense, Mr. Purpura or Ms. Whalen?

9          MR. PURPURA:  Your Honor, I would just let the Court

10   know and let counsel know in particular that we've been to this

11   rodeo once or twice before.  That we have a pretty good grasp

12   of the rules of evidence.  If we, at all, think we're going to

13   contravene a rule of evidence or go into a swampy area, we'll

14   approach the bench first and say here's where we're going.

15       On this last -- this kind of makes me a little nervous --

16   on the last objections.  If the -- I assume that Jennifer is

17   going to be called as a witness --

18          MS. WHALEN:  Kiara.

19          MR. PURPURA:  -- we haven't received their witness

20   list yet.

21          MS. WHALEN:  Kiara.

22          MR. PURPURA:  I'm sorry, Kiara.  Excuse me, Jennifer

23   is not here --

24          THE COURT:  Kiara Haynes.

25          MR. PURPURA:  -- Kiara Haynes is going to be called as

1  a witness, on cross-examination obviously Ms. Whalen or myself
2  can go through these phone calls as the Government already
3  agreed they're not going to go object to it and they shouldn't
4  object.  If we can do that and we want an opening to make
5  reference to that she's not trustworthy and here's some of the
6  reasons why.  We can do that as well in good faith.  We know
7  that and I don't see the issue.
8           THE COURT:  Ms. Brusca?
9           MS. BRUSCA:  Sure, Your Honor.  I was just going to
10 say we have not objected to the proper use of the calls for
11 impeachment.  You would have to ask the witness first, why were
12 you mad --
13          THE COURT:  He may or may not, sometimes, you know,
14 there are some lawyers that never ask a why question.
15          MS. BRUSCA:  Exactly.
16          MR. PURPURA:  If I ask a why question I should be
17 fired.
18          MS. BRUSCA:  Did you previously say you are mad
19 because and she denies it then they can play the call.  They
20 can't just play the call just because.
21          THE COURT:  I'm sure he knows that.
22          MR. PURPURA:  Again, we have a pretty good grasp of
23 the rules of evidence.  We thank Ms. Brusca for the
24 explanation.
25          THE COURT:  I'm very confidence that neither

1   Ms. Whalen nor Mr. Purpura are going to ask why did you do

2   something.  I'm very confident of that.

3        The one thing I will note -- Ms. Brusca, anything else you

4   want to say?  Go ahead.

5             MS. BRUSCA:  Thank you.

6             MR. BUDLOW:  Sorry.

7             MS. BRUSCA:  My cocounsel admonishes me that I should

8   say we have not committed to calling Kiara Haynes one way or

9   the other so I don't know if Mr. Purpura is asking me to commit

10  to that.

11            THE COURT:  When are you going to provide a witness

12  list?

13            MS. BRUSCA:  I think we've been ordered to do so at

14  some time but even when we provide a witness list --

15            THE COURT:  I'm not sure when my order was but when is

16  it?  Just tell me.

17            MS. BRUSCA:  I believe it's this Friday.

18            THE COURT:  This Friday of this week?

19            MS. BRUSCA:  I believe so, Your Honor.  It's either

20  this Friday or next Friday, I don't remember.

21            THE COURT:  It's not next Friday.

22            MR. PURPURA:  It's this Friday.  Just so the Court

23  knows why, this is just one -- this is one of the three witness

24  binders we have.

25            THE COURT:  You're holding up a very big loose-leaf

Ronda J. Thomas, RMR, CRR - Federal Official Reporter

```
 1  notebook, Mr. Purpura.  At your age you should be careful with
 2  that.
 3          MR. PURPURA:  I should be very careful.  I shouldn't
 4  have to read --
 5          THE COURT:  I'm teasing you here.
 6          MR. PURPURA:  So we really need to focus and we really
 7  have trouble reviewing all of this with our client who is
 8  locked up.  So the sooner we know who --
 9          THE COURT:  It's going to be done by this Friday.
10  It's going to be done by this Friday.
11          MS. BRUSCA:  Your Honor, we have provided *Jencks*.  And
12  we did so more than a week early so we're doing our best, Your
13  Honor.
14          THE COURT:  I understand.
15          MS. WHALEN:  No complaints there.
16          MR. PURPURA:  Make it easy --
17          THE COURT:  Don't be talking to each other.  I'm
18  trying to clarify one thing.
19      Because of the -- very simply, because of the COVID-19
20  precautions the rules don't strictly apply on some matters.  We
21  had to take precautions.  This courtroom is one of the few,
22  there are more than a few courtrooms that are not so
23  retrofitted I'm pretty sure in this courthouse.  This
24  courthouse is retrofitted.
25      We really don't have bench conversations *per se*.  It's
```

1  very difficult to come up behind a wall of plexiglass and that

2  was before I tested positive two weeks ago and then have now

3  tested negative.  We're a little amused by that.

4      But the point is is that we don't have the luxury of

5  having long bench conferences with the jury and the sound

6  machine.  We have to have the jury leave the courtroom and go

7  into the jury box.  So we're doing our best to anticipate all

8  evidentiary issues.

9      So, believe me, I'm more than willing to make plenty of

10  time on the way up to the opening day on May 23.  If we have to

11  have another hearing on some matter then I will make time to do

12  it between now and May 23, if not later this week then next

13  week.  And I want both Government counsel and defense counsel

14  to understand that.  If there's something that comes up, let me

15  know and we'll have another hearing and we'll deal with it

16  forthwith.  Because we really cannot afford a lot of delay here

17  on this and that's why I've tried to make sure that you're

18  clear in terms of what the target date is.

19      I'm going to tell the jury when we pick the jury that this

20  trial is expected to last two weeks but a little bit longer and

21  will go into the beginning of a third week and leave it at that

22  because, you know, we really do run the issue of having a

23  number of jurors say that it's too long a period of time for

24  them.  And we've got to get this case moving.

25      So what exactly -- I said the deadline is this Friday,

```
 1    which is May the 13th, Friday the 13th.  I presume that does
 2    not need to be at 6:00 on Friday, May the 13th, Ms. Brusca.  I
 3    don't see why this material can't be delivered by 10 or
 4    11:00 o'clock in the morning on Friday, May the 13th to give
 5    them time to work Friday.
 6              MS. BRUSCA:  Sure, Your Honor.
 7              THE COURT:  And hopefully then through the weekend as
 8    well.
 9              MS. BRUSCA:  We understand, Your Honor.  We'll comply.
10              THE COURT:  Okay.  Is there anything else from the
11    point of view of the Government, Ms. Brusca or Mr. Budlow, of
12    any kind that I've forgot?
13              MS. BRUSCA:  No, thank you.
14              MR. PURPURA:  Judge, if we have any issues -- I forgot
15    all about the COVID issue with approaching the bench, we will
16    advise the Court or your clerk at 9:00 that morning or the
17    night before so we can address the Court.
18              THE COURT:  Yeah, if necessary we do this with the
19    jury just staying in -- the point is this is that I think from
20    the point of view of the comfort level of jurors and the trial
21    I had in October, this past October, in terms of the comfort
22    level of jurors, the less we have them in the jury room with
23    the door shut the better.  The more comfortable they feel being
24    in an open courtroom and taking breaks going out to lunch and
25    coming back.  We have to be sensitive to that.
```

```
 1        And I think it means that we -- we have to make every

 2   effort to anticipate, as we have -- I compliment all counsel on

 3   this -- we have made every effort to flush out all evidentiary

 4   questions we have.  To the extent any rulings I made clearly

 5   you preserve your rights of appeal on these issues.  The

 6   Wilkerson case, for example, and the issue as to whether or not

 7   Judge Grimm's carve-out in the Bailey case abided or not.  And

 8   we've done the best we can do on that.

 9              MR. PURPURA:  Thank you.

10              THE COURT:  Anything else from the point of view of

11   the defense?

12              MR. PURPURA:  No.

13              THE COURT:  With that, that covers it for the day and

14   this court stands adjourned.  Thank you all very much.

15              THE CLERK:  All rise.  Court stands in adjournment.

16        (Hearing concluded at 3:08 p.m.)

17

18

19

20

21

22

23

24

25
```

1        CERTIFICATE OF OFFICIAL REPORTER

2

3

4        I, Ronda J. Thomas, Registered Merit Reporter, Certified

5    Realtime Reporter, in and for the United States District Court

6    for the District of Maryland, do hereby certify, pursuant to 28

7    U.S.C. § 753, that the foregoing is a true and correct

8    transcript of the stenographically-reported proceedings held in

9    the above-entitled matter and the transcript page format is in

10   conformance with the regulations of the Judicial Conference of

11   the United States.

12                        Dated this 16th day of May 2022.

13

14

15   _____

16             Ronda J. Thomas, RMR, CRR
               Federal Official Reporter

17

18

19

20

21

22

23

24

25

MR. BUDLOW: [64]  3/16 12/4 13/13 13/19 13/25 14/3 15/20 16/11 21/25 22/6 22/9 22/11 22/14 22/17 22/25 23/2 24/9 24/21 25/4 25/16 25/19 25/21 26/7 27/10 27/12 28/16 29/4 29/16 29/20 30/11 30/25 31/16 32/16 33/6 34/12 34/18 34/22 35/16 36/18 37/3 37/5 37/11 37/16 39/8 43/14 43/25 44/10 44/24 45/5 45/8 45/10 45/15 45/25 46/24 47/5 47/20 48/1 48/17 49/2 49/5 49/9 49/12 74/15 115/6
MR. PURPURA: [36]  4/20 9/21 9/23 11/2 77/21 77/25 78/3 78/9 79/22 80/17 84/1 84/6 86/14 86/20 86/24 87/16 89/20 89/25 90/3 90/16 90/20 90/23 91/7 113/9 113/19 113/22 113/25 114/16 114/22 115/22 116/3 116/6 116/16 118/14 119/9 119/12
MS. BRUSCA: [116]  3/8 5/13 8/11 17/2 17/7 56/18 57/4 60/15 60/19 60/21 60/23 61/1 61/4 61/9 61/16 61/21 62/22 63/4 63/10 64/9 64/19 64/24 65/5 65/17 67/2 67/22 68/4 69/5 69/10 69/13 69/17 70/19 73/6 73/11 74/22 77/6 77/12 77/15 78/17 78/21 79/18 79/25 80/6 80/10 80/21 83/13 83/16 87/12 89/18 90/11 91/25 92/8 92/11 92/16 93/7 93/10 94/22 95/9 95/17 95/20 95/25 96/5 96/9 96/12 96/15 96/20 97/6 97/12 97/16 101/14 103/10 103/14 103/18 103/24 104/3 104/13 104/16 104/23 105/8 106/4 106/7 106/10 106/14 106/17 106/21 107/22 107/24 108/3 108/5 108/13 108/24 109/3 109/6 109/8 109/18 109/21 112/2 112/4 112/8 112/19 112/21 112/25 113/6 114/9 114/15 114/18 115/5 115/7 115/13 115/17 115/19 116/11 118/6 118/9 118/13
MS. WHALEN: [79]  3/25 4/4 4/6 4/14 5/16 8/25 12/6 14/6 14/11 14/16 14/24 15/2 15/23 16/14 18/4 18/8 18/12 19/3 19/13 19/16 20/16 21/7 21/12 21/17 30/7 35/1 35/25 36/3 37/18 38/7 48/20 49/23 49/25 50/17 50/20 51/9 51/13 51/25 52/9 55/11 55/13 55/16 55/19 55/21 57/10 57/13 57/18 58/3 59/2 60/4 64/16 66/8 66/18 66/25 70/21 70/24 71/24 72/2 74/24 86/5 86/8 92/3 97/18 97/21 98/11 99/2 99/8 100/8 100/12 100/15 110/1 110/8 110/10 111/14 111/17 111/25 113/18 113/21 116/15
THE CLERK: [2]  75/2 119/15
THE COURT: [290]
THE DEFENDANT: [1]  4/24

## 1

10 [10]  1/7 52/11 74/18 104/20 111/13 111/14 111/15 111/22 111/23 118/3
10-minutes [1]  43/16
101 [1]  1/24
106 [6]  74/7 78/23 85/13 85/17 89/9 90/10
10:00 [3]  11/2 11/3 11/3
10:00 o'clock [2]  10/5 10/6
10th [1]  106/15
11 [2]  104/20 111/11
11:00 o'clock [1]  118/4
11:09 [1]  1/7
11th [3]  104/15 104/16 111/4
12 [1]  84/17
12:44 [1]  75/3
138 [1]  76/20
139 [2]  1/4 2/3
13th [4]  118/1 118/1 118/2 118/4
14 [1]  84/18
147 [1]  12/17
147-2 [6]  19/1 19/6 22/5 44/8 44/8 50/22
148 [1]  15/7
15 [1]  87/2
150 [3]  15/10 73/23 76/7
151 [1]  91/21
152 [2]  16/2 91/16
153 [2]  16/17 91/16
16 [2]  111/19 111/23
16th [1]  120/12
17 [1]  53/4
170 [2]  16/3 16/18
171 [1]  102/7
18 [3]  11/19 11/22 56/3
19 [3]  6/14 50/8 116/19
1996 [1]  85/11
1997 [1]  55/5
1:00 [3]  11/3 51/17 51/18
1st [5]  87/1 104/13 104/16 106/18 110/15

## 2

20 [2]  65/1 70/2
2006 [1]  102/10
2007 [3]  109/6 109/16 109/20
2015 [44]  56/8 56/9 56/12 56/13 56/16 56/23 56/24 57/1 57/7 57/8 57/17 58/6 58/7 58/14 64/1 65/3 71/1 74/1 76/11 76/14 77/7 78/14 84/16 85/6 87/3 88/11 89/22 90/12 90/18 91/1 91/4 92/5 92/6 94/21 96/14 101/18 101/19 102/23 104/11 104/19 104/19 104/20 104/20 104/20
2016 [3]  67/17 70/22 70/23
2017 [1]  86/1
2018 [1]  72/23

2019 [2]  64/1 76/13
2020 [16]  57/23 58/10 74/2 76/11 76/20 76/21 82/21 83/11 84/16 85/6 87/1 87/3 89/23 90/13 90/15 91/7
2021 [2]  11/14 20/19
2022 [2]  1/7 120/12
21201 [1]  1/25
22 [2]  76/11 76/21
23 [6]  7/23 7/25 10/6 10/24 117/10 117/12
23rd [1]  2/5
24 [1]  108/17
24th [1]  11/1
254 [1]  102/9
26 [5]  92/5 94/21 100/11 100/12 101/18
26th [3]  84/18 96/14 97/19
27 [9]  58/13 65/3 65/8 88/12 92/6 96/17 100/7 101/19 102/23
27th [2]  84/18 101/8
28 [1]  120/6
29 [3]  111/14 111/16 111/23
2:00 [1]  51/18
2:00 o'clock [3]  74/18 74/19 75/1
2:00 to [1]  11/4
2:13 [2]  75/4 76/2

## 3

30 [3]  7/24 7/25 21/1
30 grams [1]  69/17
322 [1]  85/25
3559 [3]  11/19 11/20 11/23
3:08 [1]  119/16
3d [1]  85/25
3rd [2]  8/12 8/13

## 4

40 [2]  21/1 21/2
401 [3]  43/22 62/12 62/25
403 [4]  43/23 44/22 62/13 62/25
404 [1]  59/19 63/18 68/24
405 [1]  71/12
41 [1]  53/4
43 [1]  102/7
441 [1]  102/9
45 [1]  51/21
48 [2]  51/16 108/17
4:30 [1]  100/9
4:30 p.m [2]  94/17 94/19
4th [1]  1/24

## 5

50 [2]  105/18 108/25
55 [1]  84/15
57 [1]  84/15
5:00 [1]  11/4

## 6

609 [2]  52/11 52/25

**6**

**661 [1]** 85/25
**692 [1]** 85/12
**6:00 [1]** 118/2
**6th [4]** 7/19 8/13 106/18 111/3

**7**

**7/15 [1]** 87/2
**72 [1]** 108/17
**753 [1]** 120/7
**7th [1]** 7/21 8/3 8/13

**8**

**801 [12]** 24/5 26/21 27/22 28/3 28/8 64/4 74/6 78/23 81/3 84/8 95/15 101/21
**802 [1]** 98/8
**803 [7]** 31/11 102/25 107/5 109/1 109/1 112/5 112/7
**804 [2]** 12/24 12/25
**84 [1]** 85/12
**85 percent [1]** 83/16

**9**

**922 [2]** 56/3 71/9
**9:00 o'clock [1]** 96/14
**9:00 that [1]** 118/16
**9:19 p.m [3]** 93/2 94/20 101/19
**9:30 or [1]** 11/2
**9:43 a.m [1]** 92/6 101/20
**9:43 and [1]** 96/17
**9:58 [1]** 96/17
**9:58 a.m [1]** 92/6 101/20
**9th [2]** 106/14 106/18

**A**

**a.m [5]** 1/7 92/6 92/6 101/20 101/20
**abandoning [1]** 71/25
**abided [1]** 119/7
**abides [1]** 73/16
**ability [2]** 43/3 72/6
**able [16]** 18/5 19/17 19/24 38/9 46/20 48/11 53/10 61/15 61/19 66/4 66/21 66/23 80/13 94/8 100/16 100/20
**about [98]** 2/18 13/5 13/11 13/16 13/20 13/24 19/5 19/11 19/17 19/23 20/4 20/7 20/20 20/22 20/25 21/1 21/1 21/21 22/7 22/8 27/4 27/13 28/2 31/6 34/13 35/18 36/5 37/22 39/16 42/13 42/18 42/20 42/24 43/19 44/1 44/3 44/9 44/12 44/14 46/24 47/6 47/7 48/9 48/25 49/6 50/6 51/3 53/23 55/4 56/5 56/23 58/11 60/10 60/11 62/3 62/9 62/17 63/5 65/3 65/8 67/17 68/10 68/13 68/21 69/9 69/12 72/23 74/18 79/12 80/3 83/5 83/21 83/23 84/16 84/17 84/24 84/25 88/11 92/21 94/10 95/4 98/3 99/3 104/14 105/12 105/20 105/24 105/25 106/22 107/2 107/10 107/15 107/17 107/23

**107/24 109/12 111/13 118/15
above [2]** 1/9 120/9
**above-entitled [2]** 1/9 120/9
**absent [1]** 70/10
**absolutely [5]** 28/1 28/5 61/21 90/3 90/3
**abundance [3]** 64/11 84/14 103/25
**abusive [1]** 38/24
**accepted [2]** 30/24 31/23
**access [6]** 68/11 68/14 68/18 69/1 70/11 83/3
**according [4]** 12/8 18/13 25/6 104/9
**accordingly [1]** 46/8
**accurate [1]** 22/4
**ace [1]** 3/3
**acknowledge [1]** 103/19
**acknowledged [1]** 13/22
**acknowledging [2]** 54/16 54/16
**acquaintance [1]** 35/13
**act [8]** 19/17 19/21 29/6 66/14 66/18 96/7 99/5 102/19
**action [1]** 26/25
**actions [1]** 27/7
**activities [2]** 56/8 58/12
**activity [1]** 58/6
**acts [15]** 15/6 37/1 49/7 51/15 53/20 53/21 54/24 63/18 64/18 66/20 68/24 72/9 72/13 72/16 109/14
**actual [4]** 52/12 59/5 78/14 84/10
**actually [7]** 3/25 10/1 38/4 38/18 54/15 76/24 93/12
**Adam [1]** 87/19
**add [2]** 11/18 86/24
**additional [2]** 13/14 25/4
**Additionally [1]** 41/18
**address [27]** 7/9 9/20 12/13 12/15 13/8 14/2 15/17 16/8 17/14 27/12 35/24 36/1 36/25 37/9 39/24 40/7 49/24 49/25 50/9 56/4 58/2 72/9 74/10 74/20 78/20 105/10 118/17
**addressed [5]** 77/14 80/23 97/9 97/10 105/6
**addresses [1]** 41/21
**addressing [2]** 37/24 54/12
**adjourned [1]** 119/14
**adjournment [1]** 119/15
**admissibility [5]** 33/5 34/8 38/17 42/2 59/1
**admissible [21]** 14/17 20/5 20/8 27/19 27/20 28/24 30/11 30/13 37/23 39/4 52/16 58/7 59/22 85/22 90/14 102/20 102/24 104/21 107/6 107/18 111/1
**admissibly [1]** 85/17
**admission [18]** 15/9 15/15 61/7 73/22 76/6 81/4 85/1 85/2 85/2 85/3 85/4 85/16 87/22 89/14 91/20 101/22 102/3 103/6
**admit [19]** 15/12 27/16 69/2 73/24 76/9

**77/7 78/6 82/3 82/15 91/18 92/12 92/14 92/14 92/18 97/14 101/17 101/25 112/12 112/14
admitted [8]** 29/4 31/21 81/14 82/12 82/13 82/14 87/14 97/11
**admitting [2]** 28/24 28/25
**admonishes [1]** 115/7
**advanced [1]** 104/1
**advise [3]** 79/8 105/2 118/16
**advising [1]** 52/5
**affects [2]** 43/3 43/6
**affiliated [1]** 35/22
**afford [1]** 117/16
**afield [1]** 65/13
**after [15]** 8/4 14/8 31/14 57/17 59/16 60/9 65/19 68/22 70/2 70/24 73/1 76/21 88/11 100/22 106/24
**aftermath [1]** 14/23
**afternoon [7]** 3/25 10/8 75/5 76/3 91/23 100/9 102/17
**again [33]** 2/18 3/22 4/13 6/1 15/18 20/12 23/8 24/3 26/16 35/6 42/8 44/6 44/24 47/20 53/14 58/15 66/13 69/11 71/8 73/6 73/16 73/16 74/19 75/1 79/13 82/1 82/24 84/13 86/16 96/20 101/15 108/5 114/22
**against [9]** 11/16 19/7 20/3 24/18 33/22 41/12 63/16 102/2 107/8
**age [2]** 53/4 116/1
**agency [5]** 40/12 41/1 41/2 41/3 41/7
**agent [12]** 1/18 1/19 3/19 3/19 20/18 20/19 44/13 45/1 76/23 78/4 84/22 86/25
**agents [7]** 3/10 42/19 42/23 44/20 51/3 76/23 81/23
**ago [3]** 2/16 2/18 117/2
**agree [15]** 33/6 45/25 47/5 55/19 55/21 61/16 67/13 70/9 71/1 82/24 90/3 90/12 90/16 99/2 106/24
**agreed [4]** 41/22 42/9 78/17 114/3
**ahead [8]** 20/9 25/18 27/11 34/24 36/15 105/2 105/7 115/4
**aided [1]** 1/22
**AI [2]** 60/23 62/19
**alcohol [9]** 59/16 59/20 60/8 61/11 61/12 61/20 62/5 62/17 62/24
**alibi [3]** 16/17 16/25 91/16
**alibis [1]** 81/24
**alive [3]** 12/20 14/9 14/11
**all [92]** 2/9 2/20 3/22 4/25 5/3 5/5 5/17 6/11 6/11 6/20 6/21 7/13 7/23 8/22 9/1 9/2 9/8 9/17 9/17 9/20 10/13 11/9 12/16 16/15 17/5 23/1 24/5 24/21 26/20 27/3 32/3 33/9 35/8 36/14 36/20 36/22 38/2 38/15 40/20 42/7 47/2 48/18 49/24 49/25 51/13 51/21 51/23 52/23 52/25 53/1 53/25 54/24 58/5 59/11 60/7 60/25 61/6 63/2 63/14 67/13 70/20 78/20 79/4

# A

**all... [29]**  79/23 81/3 82/17 82/21 83/10 84/5 84/20 84/25 88/18 91/10 95/1 101/3 101/21 105/22 106/19 109/13 109/22 111/15 112/1 113/1 113/1 113/12 116/7 117/7 118/15 119/2 119/3 119/14 119/15

**alleged [7]**  42/15 53/13 59/8 59/17 107/20 107/20 108/1

**allegedly [6]**  59/25 63/8 71/20 72/12 73/25 89/6

**allow [3]**  7/20 9/6 9/17

**allowed [4]**  9/2 32/20 55/23 108/23

**almost [1]**  28/3

**along [2]**  19/20 111/6

**already [8]**  12/11 17/6 18/6 42/24 43/18 67/24 68/6 114/2

**already come [1]**  67/24

**also [25]**  1/18 3/4 3/16 4/6 16/25 20/4 35/14 38/16 53/14 53/15 53/21 57/19 61/1 63/23 66/11 77/7 80/13 81/10 92/19 94/2 97/5 97/8 98/1 103/6 104/20

**although [3]**  20/22 54/12 64/10

**Alvarez [14]**  37/25 38/7 38/8 38/8 40/5 40/6 40/7 40/16 40/18 41/7 41/18 42/7 42/8 43/1

**always [3]**  4/19 8/2 79/8

**am [4]**  2/22 74/24 110/19 110/19

**ambit [8]**  67/20 87/23 88/16 88/18 89/9 96/3 97/13 102/6

**Amendment [1]**  20/10

**AMERICA [2]**  1/3 2/3

**American [1]**  109/4

**ammunition [9]**  52/15 53/14 53/17 67/16 67/24 68/21 70/9 70/14 70/22

**among [2]**  13/21 18/19

**amount [4]**  22/1 23/25 41/22 84/16

**amused [1]**  117/3

**anal [1]**  66/16

**anally [1]**  66/1

**analysis [5]**  26/22 43/22 62/25 63/18 74/6

**analyze [2]**  28/14 30/20

**ANDRE [4]**  1/5 2/3 4/21 97/5

**anger [4]**  110/18 110/18 110/25 110/25

**angle [1]**  98/21

**angry [6]**  110/19 110/24 112/12 112/12 112/14 112/18

**another [11]**  6/8 24/15 28/4 50/24 51/21 65/1 69/24 70/1 103/5 117/11 117/15

**answer [8]**  5/21 6/6 42/24 46/3 46/5 73/13 82/25 83/1

**answers [6]**  6/10 6/12 6/13 6/17 6/19 84/11

**Anthony [2]**  12/19 39/12

**anticipate [7]**  7/13 8/6 18/5 50/11

**anticipated [1]**  50/11

**any [72]**  3/20 4/25 5/2 5/25 6/3 6/22 6/24 8/8 11/8 12/8 12/11 12/24 13/6 13/16 13/21 13/24 16/25 18/6 21/14 21/15 25/10 26/21 31/21 32/14 32/21 34/7 34/20 35/23 42/18 43/9 45/23 46/7 46/20 47/25 48/11 49/20 49/21 51/2 51/3 52/1 53/5 53/6 53/6 54/2 58/2 58/11 62/13 63/15 64/5 64/14 67/1 72/5 73/24 76/8 78/6 79/12 80/1 82/11 82/12 83/7 85/23 87/10 89/5 90/4 90/5 98/9 99/10 111/7 113/4 118/12 118/14 119/4

**anymore [2]**  57/11 110/17

**anyone [3]**  5/23 7/1 46/3

**anything [18]**  6/20 19/20 23/19 34/10 41/23 48/16 48/18 48/22 54/4 74/10 74/20 89/16 101/12 113/4 113/7 115/3 118/10 119/10

**apart [5]**  68/1 97/25 98/9 98/20 99/4

**apartment [2]**  94/24 97/8

**apparently [7]**  13/21 18/25 19/2 44/14 63/19 69/8 106/12

**appeal [6]**  6/3 7/4 63/15 86/4 87/25 119/5

**Appeals [1]**  102/8

**appellate [2]**  38/23 91/3

**apply [4]**  44/2 63/13 88/21 116/20

**appointed [1]**  19/8

**approach [2]**  63/3 113/14

**approaching [1]**  118/15

**appropriate [3]**  47/15 66/10 78/6

**approval [1]**  34/19

**approved [2]**  23/16 39/13

**approximately [1]**  84/15

**aptly [1]**  88/17

**are [143]**

**area [4]**  17/11 99/22 99/22 113/13

**areas [2]**  2/9 15/17 76/5

**aren't [4]**  38/19 53/5 73/12 81/13

**arguably [2]**  30/21 32/5

**argue [13]**  16/4 20/2 39/20 44/2 52/9 60/5 61/16 82/9 83/7 87/12 88/24 95/6 101/10

**argued [5]**  59/21 65/11 97/22 100/3 101/8

**argues [3]**  27/19 65/12 68/13

**arguing [3]**  16/6 61/14 100/6

**argument [20]**  25/25 40/16 40/21 44/23 44/24 47/24 47/25 49/10 49/13 68/9 70/10 72/2 85/19 86/17 89/7 92/24 95/13 98/21 103/2 112/11

**arguments [5]**  7/19 7/21 8/2 9/5 34/24

**around [5]**  71/8 83/6 94/17 96/14 100/9

**arrest [5]**  57/23 74/1 76/10 76/14 76/21

**arresting [1]**  41/1

**as [191]**

**as to [1]**  90/25

**aside [6]**  24/1 29/5 32/17 39/15 49/16 52/10

**ask [31]**  3/2 6/9 6/12 6/23 13/6 13/19 13/20 33/7 34/12 34/14 36/6 41/10 42/2 42/20 45/22 47/4 48/4 63/4 73/8 78/12 80/1 80/23 80/14 112/14 112/15 112/22 114/11 114/14 114/16 115/1

**asked [15]**  19/25 20/21 37/7 42/18 42/24 44/3 44/4 44/5 44/6 65/18 69/14 82/25 83/1 96/18 112/17

**asking [7]**  22/2 37/22 47/23 98/2 98/3 101/1 115/9

**asks [2]**  45/20 69/18

**aspect [2]**  28/20 49/1

**assault [5]**  52/13 53/8 67/7 67/10 71/7

**assaulted [2]**  53/12 53/25

**assaulting [1]**  53/10

**assaults [1]**  53/13

**asserted [23]**  14/20 19/15 24/8 24/11 24/20 24/25 26/5 26/17 26/21 28/13 29/13 30/1 30/16 30/23 33/19 34/3 43/8 43/12 43/22 45/23 47/9 47/14 47/17

**assisting [1]**  4/8

**assume [2]**  34/24 113/16

**assuming [4]**  18/4 18/20 20/2 56/1

**ATF [1]**  76/22

**attack [1]**  43/5

**attempt [3]**  18/8 73/24 76/8

**attempted [5]**  52/2 52/10 52/25 53/3 71/7

**attempting [1]**  81/6

**attorney [4]**  4/7 38/9 38/14 38/21

**Attorney's [1]**  41/2

**audible [2]**  77/14 78/11

**audio [5]**  63/21 76/15 76/22 77/8 89/22

**audio-statement [1]**  76/22

**August [2]**  63/25 76/13

**authored [1]**  109/16

**authority [1]**  58/8

**automatically [1]**  9/3 28/11

**available [1]**  42/6

**aware [8]**  7/10 9/14 11/22 39/11 73/8 79/4 99/10 99/13

**away [3]**  7/7 65/25 67/3

# B

**B-O-U-R-J-A-I-L-Y [1]**  102/6

**B-R-I-Z-U-E-L-A [1]**  58/9

**back [15]**  2/6 4/8 5/8 39/1 42/22 43/12 50/7 57/1 70/6 79/5 79/11 79/13 94/11 95/3 118/25

**background [2]**  92/4 96/19

**bad [13]**  15/6 37/1 49/6 51/15 53/21 54/24 62/9 63/18 64/18 72/9 72/13 82/25 83/16 118/7

**Bailey [7]**  82/2 85/25 86/3 88/1 88/20 109/2 119/7

**B**

balanced [1] 30/20
balancing [1] 43/7
Baltimore [5] 1/6 1/25 76/16 76/21
95/2
bank [1] 81/22
bar [2] 8/19 38/3
barred [2] 4/7 52/11
Bars [2] 112/6 112/8
based [3] 27/8 54/3 77/17
bases [1] 27/8
basically [5] 15/17 39/1 56/9 65/23
80/15
basis [8] 23/21 27/16 43/2 46/17 47/18
58/1 66/23 73/15
bat [1] 10/6
batting [1] 59/12
be [201]
because [51] 9/2 25/11 26/23 27/20
30/20 31/9 37/9 38/11 38/23 40/11 42/3
43/5 44/4 45/10 46/10 47/20 50/8 52/11
54/7 56/20 59/11 59/22 61/21 62/9 64/4
65/21 66/3 67/4 80/9 81/3 82/24 88/4
88/9 92/22 95/7 98/17 102/25 104/4
107/14 108/13 110/11 110/20 110/24
111/5 112/12 114/19 114/20 116/19
116/19 117/16 117/22
become [1] 68/15
becomes [4] 46/13 55/8 64/21 68/19
bedroom [3] 81/10 81/12 81/15
been [33] 2/12 2/15 2/25 3/10 3/17
3/21 4/3 4/4 4/23 5/11 5/24 6/14 6/22
12/18 12/20 25/21 31/6 32/19 32/20
35/5 38/9 40/3 43/15 55/9 55/15 55/20
55/24 67/19 73/3 79/14 103/22 113/10
115/13
before [24] 1/11 2/7 2/14 7/6 8/12 9/8
20/14 20/21 33/10 37/19 40/3 42/1 53/3
53/15 60/1 72/10 74/4 74/20 77/3 91/22
102/17 113/11 117/2 118/17
began [1] 100/9
beginning [4] 7/17 8/7 56/22 117/21
behalf [5] 1/14 1/16 3/8 3/24 4/2
behind [2] 2/22 117/1
behold [1] 49/19
being [50] 14/20 21/9 21/18 24/10
24/19 24/24 24/24 25/13 25/14 26/5
26/11 26/12 26/13 26/16 26/20 27/1
28/12 29/4 29/12 29/25 30/3 30/15
30/22 31/20 32/10 34/1 34/3 35/11
41/16 42/9 42/9 43/21 44/3 44/3 44/5
44/5 45/22 47/8 47/16 58/7 66/23 84/21
85/16 88/21 91/4 96/21 97/1 99/25
112/23 118/23
belief [1] 26/15
believe [21] 10/7 14/11 20/19 52/15
53/4 60/16 64/16 68/9 86/21 90/14

97/22 100/5 100/8 104/18 106/10 111/3
111/4 111/9 115/17 115/19 117/9
believed [1] 112/10
believes [2] 28/19 39/9
believing [1] 53/16
bench [5] 91/12 113/14 116/25 117/5
118/15
benefit [1] 3/3
BENNETT [2] 1/11 9/21
Besides [1] 10/21
best [6] 20/23 51/11 56/5 116/12 117/7
119/8
better [2] 59/12 118/23
between [7] 63/24 63/25 65/10 93/4
93/5 94/13 117/12
Beyond [1] 52/13
BGF [8] 18/10 18/11 18/15 35/14 35/23
36/5 36/10 36/19
big [1] 115/25
binders [1] 115/24
bit [9] 7/20 9/2 10/8 11/6 27/13 65/13
78/1 82/7 117/20
black [3] 13/7 13/23 105/21
blood [4] 69/22 93/21 95/5 95/10
blue [1] 77/2
boosted [1] 2/15
borrow [1] 69/15
both [15] 3/19 59/13 61/22 62/9 63/22
84/2 87/2 87/4 90/12 95/20 96/5 96/21
98/18 101/8 117/13
bottle [1] 62/2
Bourjaily [1] 102/6
box [1] 117/7
boy [1] 93/23
boyfriend [4] 105/25 107/10 107/17
109/13
BPD [4] 23/3 40/16 40/17 41/8
Brady [4] 5/11 5/14 41/24 42/2
brakes [1] 48/23
break [8] 51/18 51/22 65/2 72/10 74/5
74/17 74/25 92/9
breaks [1] 118/24
Bredar [1] 20/14
Brian [1] 76/17
brief [1] 23/4
briefing [1] 57/5
briefs [1] 57/12
bring [8] 18/5 18/8 28/23 28/23 38/19
54/14 64/18 85/4
bringing [2] 38/12 41/13
BRISCOE [55] 1/5 2/3 4/2 4/21 4/22
11/14 12/7 15/5 16/2 16/3 36/5 36/10
37/1 52/18 56/22 60/19 60/20 62/8
62/19 63/8 65/10 76/15 76/22 80/2
80/15 81/1 82/12 83/22 85/16 85/22
87/25 88/13 94/3 94/10 94/11 94/14
94/16 94/18 94/22 94/25 95/6 95/8
95/13 95/22 97/5 97/8 99/19 99/24

100/3 100/5 100/9 100/16 100/21 103/1
105/3
Briscoe's [3] 12/16 51/14 70/4
Brizuela [1] 58/9
broad [2] 83/2
broadbrush [2] 62/23 63/9
broadly [2] 102/13 105/10
brothers [1] 93/15
brought [3] 21/19 41/2 86/17
BRUSCA [41] 1/14 3/9 3/12 5/12 8/10
9/14 12/3 15/19 16/10 17/1 21/23 25/18
49/12 56/17 57/3 59/10 60/8 65/16 67/1
67/11 73/5 74/21 77/5 77/24 78/16
79/17 80/19 87/11 89/17 90/8 91/24
92/7 101/13 103/8 108/23 113/5 114/8
114/23 115/3 118/2 118/11
BUDLOW [18] 1/15 3/9 3/15 9/13
13/10 21/23 25/3 27/1 30/10 36/17 39/7
47/2 49/1 50/23 59/12 74/11 74/13
118/11
Bugg [51] 12/19 13/4 13/10 14/9 17/12
17/19 18/4 18/12 18/12 18/13 19/7 19/7
19/9 19/17 20/10 21/10 21/14 22/15
22/22 23/3 23/6 23/13 23/22 24/12
24/18 25/7 25/9 29/23 30/5 31/24 33/18
33/18 33/22 34/6 39/12 39/16 40/3
42/15 42/20 44/1 44/4 44/25 45/1 45/4
45/11 49/16 50/3 50/3 50/20 50/24 51/7
Bugg's [5] 13/15 17/22 37/10 43/25
45/6
business [3] 69/19 93/18 93/22

**C**

CADLE [4] 1/19 4/8 4/14 4/15
calendar [1] 8/4
caliber [1] 41/21
call [63] 6/18 13/3 17/12 17/15 17/25
18/3 18/9 18/15 19/10 20/12 24/16
29/15 30/1 33/14 33/18 34/6 39/12
39/18 49/22 50/4 69/8 69/13 69/14 70/2
72/12 72/15 92/5 92/21 92/22 92/25
93/1 93/8 93/16 93/16 94/19 95/12
96/13 96/23 97/19 100/9 100/17 100/22
100/24 101/6 101/18 102/23 105/16
105/25 106/23 107/1 108/14 108/14
108/15 109/9 109/11 110/15 111/3
111/4 111/19 111/22 112/16 114/19
114/20
called [9] 46/1 50/4 94/3 100/3 100/4
100/21 108/6 113/17 113/25
calling [13] 2/2 39/15 65/11 66/9 66/15
93/23 94/14 94/15 94/15 94/15 94/16
94/18 115/8
calls [50] 15/12 15/15 64/1 64/3 64/18
91/19 91/21 92/6 92/11 92/17 92/18
94/11 96/16 96/21 97/10 97/13 97/15
99/7 100/15 101/8 101/19 103/7 103/11
103/21 103/23 104/4 104/7 104/10

# C

**calls... [22]** 104/11 104/12 104/19 104/21 105/9 105/11 105/12 106/3 106/18 106/21 107/2 107/21 110/6 110/12 111/8 111/9 111/10 111/11 111/13 111/23 114/2 114/10
**Cambridge [2]** 67/18 76/15
**came [3]** 1/9 38/7 100/22
**can [66]** 3/1 3/13 3/21 4/16 5/8 5/17 7/20 8/1 8/2 8/13 8/23 9/9 10/7 14/12 25/18 29/10 29/23 29/24 31/18 32/5 32/13 33/3 33/16 36/14 36/15 44/1 44/2 44/25 45/15 46/1 46/19 47/11 48/8 48/10 50/10 50/11 50/25 51/12 57/1 58/17 63/4 65/9 67/4 67/10 71/4 71/4 78/5 78/14 79/15 81/18 87/9 87/14 89/23 93/10 94/7 98/23 101/2 105/6 112/12 112/15 114/2 114/4 114/6 114/19 118/17 119/8
**can't [11]** 10/13 30/16 46/1 54/2 54/18 81/5 81/19 97/24 98/16 114/20 118/3
**cannot [4]** 33/18 99/24 112/13 117/16
**Cardozo [1]** 107/7
**care [1]** 65/23
**careful [1]** 116/1 116/3
**Carrick [1]** 87/17
**carve [2]** 109/1 119/7
**carve-out [2]** 109/1 119/7
**carved [2]** 88/17 88/19
**carving [1]** 86/12
**case [80]** 2/2 2/3 2/4 3/10 4/8 5/10 6/4 7/16 7/19 8/1 9/12 11/10 11/15 17/20 20/14 20/23 28/4 35/17 36/21 37/25 38/2 38/5 38/6 38/14 39/13 40/11 40/14 41/2 41/25 42/3 42/8 42/12 42/20 42/23 43/2 50/5 50/16 52/8 53/12 53/18 54/11 54/13 54/14 54/19 58/20 61/19 63/2 71/11 71/16 71/22 73/7 73/19 73/20 76/23 82/1 82/10 85/12 85/20 86/3 86/5 87/23 88/1 88/2 88/6 88/18 88/20 89/11 97/4 97/23 98/7 98/17 101/4 102/12 109/2 109/3 109/5 112/5 117/24 119/6 119/7
**cases [13]** 27/2 27/2 27/3 27/4 27/16 27/18 37/24 40/5 40/8 40/11 41/18 82/3 99/1
**casual [1]** 102/13
**categories [5]** 55/4 56/4 56/7 64/25 105/9
**category [5]** 58/17 59/9 63/17 107/16 109/11
**cause [5]** 6/24 7/1 7/3 7/5 88/22
**caution [2]** 64/11 103/25
**cautionary [3]** 29/10 30/8 32/10
**cautionary instruction [1]** 30/8
**cell [6]** 16/20 70/5 87/5 94/23 99/21 100/12

**certain [9]** 13/5 17/21 55/4 60/12 78/25 80/8 80/14 97/14 111/19
**certainly [23]** 3/13 4/9 4/12 6/15 10/9 29/10 30/11 33/23 33/24 37/23 58/5 59/5 62/12 68/19 69/2 71/4 71/19 71/21 72/5 73/9 89/2 110/8 112/15
**CERTIFICATE [1]** 119/13
**Certified [1]** 120/4
**certify [1]** 120/6
**certiorari [1]** 102/10
**challenge [5]** 3/4 34/7 58/25 59/2 73/18
**challenging [4]** 36/10 44/21 46/8 53/19
**changed [2]** 65/20 65/22
**character [6]** 52/18 52/23 53/22 59/22 71/14 71/19
**characterize [1]** 66/21
**characterizing [1]** 66/10
**charge [9]** 9/6 9/15 28/4 41/8 41/9 56/3 67/8 71/9 95/25
**charged [13]** 53/6 58/7 95/19 95/23 96/10 98/4 98/5 98/8 98/12 98/15 99/5 101/7 102/18
**charges [5]** 56/20 56/22 63/23 74/3 76/13
**chased [1]** 37/21
**check [1]** 10/15
**chief [19]** 35/4 36/21 50/5 52/7 55/5 56/2 58/16 61/19 67/20 67/21 68/2 70/10 71/8 71/11 71/16 73/7 73/20 97/4 98/7
**child [4]** 23/23 53/25 62/1 65/21
**choice [1]** 3/22
**choose [2]** 3/1 78/15
**chooses [4]** 2/12 17/12 20/11 78/13
**Christian [1]** 22/18
**chuckling [1]** 35/6
**cigarettes [3]** 96/23 96/24 97/2
**circuit [21]** 8/19 35/4 37/24 38/6 58/8 58/10 80/22 80/22 81/21 82/1 85/11 86/3 86/10 87/24 88/20 102/8 102/9 102/11 102/12 105/17 112/5
**circumstances [2]** 38/24 59/25
**circumstantially [1]** 21/20
**cite [1]** 40/5
**cited [1]** 40/6
**city [1]** 20/17
**clarified [2]** 12/18 58/16
**clarifies [1]** 91/13
**clarify [8]** 31/20 69/6 69/11 79/25 90/11 96/2 103/16 116/18
**classic [2]** 39/17 81/2
**clear [30]** 18/24 23/19 30/22 36/18 39/9 39/24 45/21 46/25 49/8 49/9 49/15 50/3 50/12 63/14 71/24 80/22 82/3 83/15 85/10 89/21 91/2 91/10 91/13 93/16 106/2 110/2 110/5 111/2 111/21

117/18
**clearly [29]** 3/3 5/9 16/5 18/17 25/9 26/19 30/1 30/13 31/7 32/13 48/4 48/10 50/25 55/5 67/4 84/24 85/12 85/20 86/10 86/22 88/17 88/24 89/9 89/10 89/11 90/7 102/17 111/21 119/4
**clerk [1]** 118/16
**clerk's [1]** 87/15
**client [6]** 52/2 53/4 70/25 91/3 100/4 116/7
**client's [2]** 53/22 54/22
**close [2]** 8/15 8/16
**closing [6]** 7/19 7/21 8/2 9/5 40/15 40/21
**co [3]** 3/9 4/6 100/4
**co-counsel [2]** 3/9 4/6
**coconspirator [1]** 94/18
**coconspirators [3]** 27/20 92/23 101/23
**cocounsel [1]** 115/7
**code [4]** 11/19 11/22 56/3 93/23
**codefendant [4]** 54/16 58/19 58/23 100/4
**codifies [1]** 85/13
**colleague [1]** 85/24
**colloquy [1]** 74/12
**combined [1]** 42/7
**combines [1]** 87/4
**come [18]** 4/10 4/12 4/16 6/18 33/10 39/1 52/23 53/1 54/14 67/24 70/10 71/22 73/12 85/23 90/4 90/17 94/12 117/1
**comes [6]** 56/19 79/13 81/3 81/15 89/5 117/14
**comfort [2]** 118/20 118/21
**comfortable [1]** 118/23
**coming [6]** 9/11 10/3 23/12 65/19 84/3 118/25
**comment [5]** 20/20 26/10 33/25 46/15 102/22
**comments [5]** 13/2 32/22 63/8 95/15 98/7
**commit [4]** 70/12 95/21 96/6 115/9
**committed [4]** 25/1 72/13 72/16 115/8
**committing [2]** 60/12 61/7
**complaint [1]** 11/11
**complaints [1]** 116/1
**complete [1]** 38/3
**completed [1]** 88/15
**completely [1]** 45/25
**completeness [4]** 74/8 78/23 80/12 84/9
**completion [1]** 88/4
**compliance [1]** 5/11
**compliment [1]** 119/2
**comply [1]** 118/9
**Computer [1]** 1/22
**Computer-aided [1]** 1/22
**concern [1]** 77/14

# C

**concerned [1]** 88/16
**concluded [1]** 119/16
**conclusion [1]** 65/12
**condition [1]** 31/13
**conduct [4]** 54/17 58/8 67/8 82/14
**conference [5]** 8/23 9/6 9/10 9/15 120/10
**conferences [1]** 117/5
**conferring [1]** 29/17
**confess [1]** 62/9
**confessed [1]** 60/1
**confession [4]** 61/15 62/6 63/6 89/5
**confessions [2]** 59/17 60/12
**confidence [1]** 114/25
**confident [1]** 115/2
**conformance [1]** 120/10
**confused [1]** 41/14
**confuses [1]** 66/15
**confusion [1]** 34/20
**connect [2]** 46/20 110/21
**connection [3]** 2/4 33/9 48/10
**consensual [2]** 66/24 67/6
**consent [1]** 65/15
**consented [1]** 67/10
**consider [4]** 30/12 39/2 39/21 39/22
**consistent [2]** 7/16 58/8
**consistently [1]** 18/21
**conspiracy [53]** 27/21 28/4 28/6 28/8 56/22 92/23 92/25 93/17 94/1 95/11 95/12 95/16 95/18 95/20 95/21 96/1 96/3 96/6 96/6 96/8 96/10 96/11 97/23 98/1 98/4 98/4 98/6 98/9 98/10 98/13 98/14 98/17 98/20 99/1 99/4 99/5 99/9 99/12 99/14 100/2 100/2 100/24 100/25 101/3 101/7 101/24 102/2 102/4 102/14 102/16 102/18 102/18 102/19
**constitute [3]** 15/14 91/20 101/17
**Constitution [1]** 54/12
**constitutional [3]** 54/18 54/23 72/2
**construe [1]** 102/12
**contact [1]** 13/7
**contain [1]** 78/18
**contend [2]** 103/11 104/21
**contended [1]** 17/18
**contending [1]** 98/5
**contends [7]** 15/13 15/15 76/9 79/7 91/19 91/21 103/7
**content [1]** 98/12
**contention [1]** 106/8
**contesting [1]** 82/13
**context [24]** 17/14 18/1 19/9 23/24 25/4 26/3 26/13 26/14 28/22 28/24 40/18 43/13 43/16 60/13 62/21 70/21 78/22 82/4 83/10 88/5 88/22 88/23 106/2 108/11
**continue [2]** 74/11 98/23

**continuing [3]** 56/23 65/1 76/4
**contrary [3]** 66/2 71/15 85/10
**contravene [1]** 113/13
**contrition [1]** 61/7
**control [1]** 66/1
**conversation [18]** 18/21 19/2 21/11 22/15 22/17 24/13 26/1 26/3 26/13 26/14 29/24 30/17 30/18 30/19 32/1 46/7 69/12 93/4
**conversations [5]** 20/15 48/22 63/24 89/4 116/25
**conveyed [1]** 88/21
**convicted [5]** 53/10 55/20 55/24 58/14 91/3
**conviction [16]** 6/4 11/23 12/2 52/2 52/3 52/10 52/12 55/7 55/8 55/10 67/16 67/17 67/24 68/15 68/16 70/13
**convictions [13]** 15/6 37/2 51/16 52/14 52/19 52/20 53/1 53/9 63/18 68/24 71/7 71/15 71/21
**cooperating [4]** 63/25 74/2 76/12 89/5
**copies [2]** 6/11 6/12
**copy [3]** 5/20 5/21 79/8
**correct [82]** 5/12 12/3 12/4 12/5 13/9 14/4 15/18 15/20 15/21 16/9 16/12 16/14 16/25 19/2 19/3 19/13 20/15 21/7 21/12 22/25 24/8 24/9 27/8 28/5 28/8 36/17 37/11 37/15 44/23 56/17 56/18 57/3 59/1 60/15 61/9 65/4 65/5 66/18 68/4 69/9 73/11 77/12 79/16 79/18 79/20 80/6 80/10 80/15 80/17 86/4 89/23 90/7 90/8 92/2 93/6 93/7 94/22 95/9 95/17 96/9 96/12 96/15 96/19 96/20 97/6 97/15 103/13 103/14 103/24 104/9 104/10 104/23 106/4 106/7 107/21 108/3 109/21 111/13 112/8 112/19 112/25 120/7
**correcting [1]** 54/20
**Corrections [1]** 22/19
**correctly [2]** 77/3 77/19
**corroborated [1]** 17/19
**couched [1]** 21/4
**could [16]** 8/13 27/10 32/16 33/6 38/13 38/14 38/16 47/12 54/14 66/25 66/25 77/25 79/2 82/23 83/4 106/24
**counsel [22]** 2/7 2/14 3/6 3/6 3/9 4/6 4/10 5/24 11/22 16/1 16/3 29/17 51/2 51/17 82/18 88/10 89/2 92/19 113/10 117/13 117/13 119/2
**counsel's [1]** 34/19
**count [11]** 52/4 52/4 56/21 95/25 96/3 96/5 98/4 98/6 99/5 102/19 102/19
**countless [1]** 27/4
**country [2]** 28/1 42/5
**counts [1]** 11/16
**County [1]** 76/22
**couple [2]** 40/25 87/1
**course [8]** 28/5 39/16 66/21 66/25

**101/23 102/4 102/16 107/7**
**court [52]** 1/1 2/8 2/11 3/4 13/22 16/1 16/3 16/18 19/19 22/2 23/11 28/25 29/21 30/11 30/24 33/7 33/11 34/13 36/3 38/24 40/19 41/19 42/8 45/16 51/20 52/5 54/9 54/11 54/18 55/6 75/2 79/3 79/6 81/14 83/8 85/25 89/12 93/18 95/11 102/8 102/10 102/17 103/20 105/11 112/22 113/9 115/22 118/16 118/17 119/14 119/15 120/5
**court's [8]** 8/9 28/19 28/21 29/16 32/18 32/22 43/3 47/22
**courthouse [3]** 2/9 116/23 116/24
**courtroom [12]** 2/10 2/23 6/8 6/9 6/19 9/15 28/2 76/24 79/14 116/21 117/6 118/24
**courtrooms [1]** 116/22
**courts [5]** 29/1 40/11 102/11 102/12 108/25
**cousin [9]** 60/21 60/22 61/5 69/18 81/13 95/8 96/19 102/23 105/15
**cousins [2]** 58/21 93/15
**covered [2]** 67/19 104/7
**covers [2]** 97/13 119/13
**COVID [7]** 2/16 6/14 7/6 10/18 50/8 116/19 118/15
**COVID-19 [3]** 6/14 50/8 116/19
**create [1]** 88/9
**credibility [2]** 61/24 67/5
**credible [1]** 23/5
**crime [1]** 58/14
**crimes [5]** 53/6 55/18 55/24 63/22 70/12
**criminal [5]** 1/4 5/10 11/11 55/23 66/13
**critical [1]** 41/19
**critically [1]** 41/24
**criticize [1]** 42/12
**cross [28]** 13/16 14/13 25/2 36/9 37/7 37/14 40/9 45/7 51/2 52/20 68/14 70/18 78/10 78/12 80/13 80/25 81/1 81/6 81/18 82/5 82/18 84/9 89/21 110/3 110/7 111/11 112/18 114/1
**cross-examination [19]** 14/13 25/2 37/7 37/14 45/7 68/14 70/18 78/10 78/12 80/25 81/6 81/18 82/5 82/18 84/9 89/21 110/3 112/18 114/1
**cross-examine [6]** 13/16 36/9 52/20 80/13 110/7 111/11
**cross-examining [1]** 51/2
**CRR [2]** 1/23 120/16
**crux [2]** 82/19 85/8
**cry [1]** 62/8
**cumulative [1]** 101/9
**current [2]** 31/9 31/9
**custom [1]** 79/5

# D

**DANA [2]** 1/14 3/9

**D**

**dancing [1]** 71/8
**date [7]** 7/15 7/18 52/12 54/3 65/4 65/6 117/18
**Dated [1]** 120/12
**daughter [1]** 72/20
**day [12]** 7/24 9/16 10/10 10/23 10/24 11/2 28/2 101/19 106/1 117/10 119/13 120/12
**days [7]** 7/23 7/24 7/25 8/1 8/1 8/15 59/20
**dead [1]** 49/19
**deadline [1]** 117/25
**deal [9]** 14/25 15/4 15/4 17/5 46/7 71/18 72/6 91/17 117/15
**dealing [7]** 15/7 17/16 26/18 49/17 50/21 83/19 83/19
**deals [2]** 30/10 84/17
**dealt [3]** 35/8 50/25 91/15
**death [2]** 11/24 11/25
**debating [5]** 19/5 24/17 33/21 44/18 44/19
**decades [1]** 79/6
**deceased [3]** 12/17 12/21 12/23
**December [1]** 11/13
**decide [2]** 17/15 50/4
**decision [3]** 41/8 41/9 111/7
**declarant [10]** 12/17 12/21 12/23 12/25 31/14 32/23 33/14 45/16 102/2 112/9
**declarants [2]** 28/25 44/2
**declaration [1]** 112/24
**declarations [1]** 20/3
**deep [1]** 74/5
**defendant [59]** 1/5 1/16 3/24 11/14 11/14 12/16 13/6 16/19 17/13 36/19 36/20 37/1 51/14 55/6 56/11 58/14 58/18 58/22 59/16 59/19 59/25 60/10 63/14 63/16 63/21 63/24 65/2 65/7 65/20 65/21 65/23 68/6 68/7 68/12 69/24 70/11 71/13 72/16 72/17 72/20 72/21 72/23 72/25 73/14 73/24 76/8 76/22 80/2 80/24 81/4 81/11 83/2 87/6 87/25 88/9 88/24 89/1 89/2 97/5
**Defendant's [24]** 15/5 15/9 35/13 56/7 57/23 60/24 61/1 61/4 63/11 67/12 67/15 68/10 68/18 69/1 71/6 73/22 76/6 76/18 81/3 81/10 81/24 83/18 87/10 89/14
**defense [84]** 6/2 7/4 8/14 13/15 16/23 17/12 20/11 22/2 23/7 23/11 23/14 23/15 23/19 24/1 25/5 25/6 28/10 28/20 30/6 30/16 31/25 32/20 32/25 33/9 33/17 35/17 35/21 36/9 37/13 37/19 38/1 38/9 38/13 38/18 38/20 39/1 39/6 39/9 39/20 42/1 42/3 44/18 45/11 46/7 46/18 48/4 48/23 51/2 53/19 54/13 54/21 61/14 64/6 64/10 64/13 65/11

65/12 68/17 68/18 68/25 71/17 71/20 72/7 72/11 73/8 73/10 80/11 82/20 83/12 85/9 87/17 89/6 92/19 92/24 98/19 103/12 103/17 103/21 103/23 104/3 104/24 113/8 117/13 119/11
**defense's [2]** 17/14 42/12
**defer [1]** 57/11
**definitely [2]** 12/14 64/4
**definition [2]** 24/5 24/6
**degree [2]** 66/19 71/7
**delay [2]** 42/4 117/16
**delete [1]** 110/16
**deliberations [1]** 79/11
**delivered [1]** 118/3
**Demetriou [2]** 10/17 35/10
**demonstrate [3]** 98/1 98/13 101/3
**denial [4]** 20/22 20/22 81/15 84/10
**denied [10]** 20/14 48/3 48/14 58/11 63/12 67/12 68/7 76/18 82/16 102/10
**denies [4]** 20/21 20/23 112/15 114/19
**deny [1]** 81/17
**Department [1]** 22/19
**dependent [1]** 84/22
**depending [1]** 106/25
**depends [1]** 67/22
**describe [2]** 67/4 67/10
**describing [4]** 31/12 108/16 108/16 109/10
**desk [1]** 87/15
**despite [1]** 66/2
**detail [3]** 33/13 41/20 50/17
**detailed [2]** 48/22 54/1
**details [3]** 48/21 67/17 67/21
**detective [30]** 17/21 22/11 22/18 22/20 22/21 22/22 22/23 22/23 24/14 24/15 33/21 37/15 38/13 39/10 39/10 39/11 41/16 44/14 44/14 45/1 45/17 46/8 50/23 77/8 77/11 78/4 80/1 81/20 82/24 84/21
**detective's [2]** 80/14 82/10
**detectives [13]** 14/14 17/20 20/17 21/19 23/3 37/8 38/10 39/3 39/22 44/3 45/10 76/17 78/13
**Detector [1]** 22/13
**determination [1]** 111/12
**determine [1]** 14/19
**determined [1]** 12/20
**develop [2]** 38/14 38/15
**developed [1]** 32/20
**did [43]** 9/24 10/16 11/18 17/15 19/25 23/3 30/3 30/14 32/11 35/3 37/20 39/4 39/22 40/5 40/16 40/17 40/25 40/25 41/11 42/10 42/19 43/6 45/20 45/20 46/20 48/9 51/4 69/25 70/13 73/8 80/2 80/3 80/5 82/15 83/2 83/14 88/19 103/20 105/23 107/3 114/18 115/1 116/12
**didn't [18]** 10/18 32/11 41/8 41/23

41/25 43/6 51/4 68/14 70/11 73/12 80/5 81/1 81/19 81/19 81/20 83/3 85/4 90/4
**die [14]** 19/5 19/12 24/18 24/21 25/3 25/11 32/2 33/22 33/25 43/18 44/19 46/6 47/7 48/9
**difference [1]** 27/17
**different [12]** 21/2 23/18 38/23 40/10 42/8 44/1 48/1 53/23 53/24 54/12 60/16 106/17
**difficult [3]** 77/17 79/1 117/1
**difficulties [1]** 50/8
**difficulty [5]** 9/10 25/24 28/15 32/9 85/9
**dire [4]** 5/20 5/21 5/23 6/1
**directly [1]** 70/5
**disagree [2]** 29/20 99/20
**disagreeing [2]** 86/14 86/15
**discovery [1]** 54/3
**discretion [5]** 2/10 2/25 12/8 33/7 38/25
**discuss [5]** 21/19 33/23 40/11 45/21 83/2
**discussed [15]** 7/16 22/21 22/23 27/1 28/11 45/22 46/3 46/4 46/12 46/13 47/4 47/10 48/6 50/14 88/14
**discussing [2]** 30/4 30/5
**discussion [14]** 13/21 13/24 19/5 19/11 21/11 24/23 28/10 32/13 33/23 34/5 34/6 35/15 69/7 69/8
**dispute [4]** 94/22 99/19 99/20 99/23
**disputed [1]** 72/9
**distinction [1]** 107/8
**distinguish [1]** 41/10
**distinguishable [1]** 88/1
**distinguished [1]** 38/8
**distinguishes [1]** 40/6
**distinguishing [1]** 40/8
**distribution [2]** 96/4 99/6
**district [6]** 1/1 1/1 109/17 109/19 120/5 120/6
**DIVISION [1]** 1/2
**do [65]** 5/7 6/12 8/13 8/24 9/13 10/18 15/13 17/10 21/5 21/5 21/18 31/16 33/6 33/14 36/18 39/10 39/24 40/6 41/10 41/11 41/23 45/15 45/19 46/19 47/24 48/9 51/4 51/12 51/17 52/18 52/19 57/11 65/15 67/20 69/3 79/2 79/11 81/7 81/18 81/19 83/22 84/7 84/8 85/5 90/4 91/19 93/20 94/6 95/25 99/24 100/18 100/21 101/17 104/25 107/12 109/24 114/4 114/6 115/1 115/13 117/11 117/22 118/18 119/8 120/6
**Dockins [1]** 98/18
**document [2]** 33/3 44/12
**document that [1]** 33/3
**does [22]** 8/8 8/21 13/13 16/4 18/4 18/18 18/18 18/19 20/11 64/6 68/15 68/18 71/10 80/24 81/16 85/5 85/17

**D**

**does...** [5]  88/9 108/11 110/2 110/6 118/1
**doesn't** [13]  10/22 29/22 30/6 30/10 30/16 54/4 54/22 78/10 88/7 88/7 90/4 93/13 93/20
**doing** [12]  5/8 28/16 46/18 51/11 51/19 51/20 69/22 80/25 108/15 110/19 116/12 117/7
**don't** [60]  3/1 5/1 6/2 6/21 7/5 9/7 10/11 11/4 11/4 16/8 19/22 25/5 28/11 30/7 30/15 32/7 32/22 34/19 35/18 36/1 37/12 39/20 45/10 47/20 48/1 50/16 52/24 54/8 55/2 57/11 60/5 64/16 64/17 65/23 67/9 68/17 68/20 69/2 74/16 79/1 82/3 82/20 82/24 83/23 86/23 92/14 94/10 101/4 105/1 110/11 111/3 111/4 114/7 115/9 115/20 116/17 116/20 116/25 117/4 118/3
**done** [12]  6/14 6/14 6/16 6/25 10/10 10/14 43/2 94/12 110/16 116/9 116/10 119/8
**door** [8]  54/13 54/17 54/22 54/25 68/25 71/4 71/12 118/23
**doors** [1]  73/10
**dope** [1]  93/23
**dots** [1]  46/20
**double** [1]  24/3
**down** [13]  2/13 3/1 3/13 3/21 6/20 37/21 38/1 38/21 51/19 56/19 65/16 71/18 85/23
**drag** [1]  43/12
**dressed** [1]  105/21
**drift** [2]  7/17 7/20
**drifted** [1]  9/5
**drifting** [1]  11/5
**drink** [3]  61/23 62/2 62/8
**drinking** [2]  62/5 62/24
**drive** [1]  95/3
**drove** [2]  69/25 70/3
**drug** [6]  83/19 83/19 95/22 95/25 99/12 99/14
**drugs** [6]  58/3 84/24 85/1 85/2 87/5 96/6
**due** [1]  88/18
**during** [11]  9/11 22/14 57/25 59/17 69/14 94/14 97/4 101/6 101/23 106/21 106/23

**E**

**each** [4]  29/1 43/11 106/9 116/17
**earlier** [11]  32/17 33/1 37/5 41/15 68/9 73/12 74/11 77/18 86/16 93/18 108/17
**early** [3]  10/8 104/11 116/12
**East** [1]  95/2
**easy** [1]  116/16
**echoed** [1]  27/13

**effect** [1]  38/20
**effectively** [1]  80/25
**effort** [3]  6/24 119/2 119/3
**either** [10]  18/23 33/6 44/13 53/24 68/12 82/10 89/22 98/19 105/18 115/19
**elements** [3]  53/6 56/2 71/9
**elicit** [3]  35/22 53/21 88/10
**eloquent** [1]  35/5
**else** [13]  25/11 34/10 39/19 48/16 48/18 48/22 74/10 74/20 111/6 113/7 115/3 118/10 119/10
**else's** [2]  107/15 107/16
**embellish** [2]  101/15 102/20
**embellished** [1]  103/3
**emotion** [1]  31/9
**end** [8]  4/12 9/4 9/12 23/6 30/18 83/20 102/24 107/7
**ends** [1]  93/23
**enforcement** [16]  13/16 16/21 16/22 17/3 18/6 18/14 18/25 41/23 74/1 76/10 80/23 81/11 81/23 83/13 83/15 83/20
**enough** [2]  9/6 95/10
**entire** [3]  35/4 40/8 84/3
**entirety** [2]  84/3 90/13
**entitled** [3]  1/9 66/9 120/9
**ESQUIRE** [5]  1/14 1/15 1/16 1/17 1/19
**essence** [1]  87/2
**essential** [1]  39/5
**essentially** [21]  11/16 13/2 19/9 22/8 44/23 55/24 60/9 60/14 64/3 73/23 76/4 76/7 76/14 78/22 78/24 79/3 85/12 86/1 96/17 104/18 111/10
**establish** [2]  30/3 53/5
**even** [19]  7/6 13/10 16/7 19/22 23/10 23/12 30/8 32/22 39/16 54/7 66/14 84/1 86/17 89/21 90/5 90/18 102/13 106/1 115/14
**evening** [1]  100/23
**event** [2]  31/13 105/19
**events** [1]  107/24
**ever** [2]  36/10 45/11
**every** [7]  27/23 28/3 40/17 40/22 80/22 119/1 119/3
**everyone** [2]  6/5 76/3
**everything** [3]  9/16 50/11 111/6
**evidence** [60]  12/25 15/6 16/20 27/3 37/1 39/2 51/15 55/18 56/10 56/15 57/1 57/7 58/6 58/22 59/1 59/6 59/19 59/23 62/14 62/17 63/20 63/23 65/9 71/11 71/13 71/20 73/6 74/9 77/7 78/6 79/9 85/14 85/17 87/15 88/5 88/8 89/5 89/10 93/25 94/23 95/7 95/11 97/4 97/25 98/7 99/7 99/8 99/10 99/13 99/15 101/5 101/20 101/25 102/1 102/3 102/5 104/22 113/12 113/13 114/23
**evidenced** [1]  32/21
**evident** [1]  103/13
**evidentiary** [8]  27/23 28/13 32/15

**exactly** [11]  6/2 17/9 17/23 46/19 67/4 68/4 70/19 83/14 91/9 114/15 117/25
**examination** [19]  14/13 25/2 37/7 37/14 45/7 68/14 70/18 78/10 78/12 80/25 81/6 81/18 82/5 82/18 84/9 89/21 110/3 112/18 114/1
**examine** [6]  13/16 36/9 52/20 80/13 110/7 111/11
**examining** [1]  51/2
**example** [5]  24/25 73/13 81/8 107/13 119/6
**except** [3]  30/20 52/2 78/17
**exception** [17]  2/9 20/8 29/5 31/3 31/10 31/12 31/17 82/7 85/14 85/24 86/2 86/12 88/16 88/19 101/22 108/8 109/15
**exceptions** [1]  44/2
**excerpted** [1]  92/18
**excerpts** [3]  15/12 91/18 97/15
**exchange** [1]  69/17
**exclude** [6]  15/6 15/25 37/1 51/15 58/1 88/7
**excluded** [2]  55/8 82/1
**exclusively** [1]  83/17
**exculpatory** [5]  73/25 76/9 85/15 85/21 90/2
**excuse** [4]  87/3 99/22 100/4 113/22
**excused** [1]  7/1
**executed** [1]  81/9
**executing** [1]  62/1
**exempts** [1]  81/4
**exerted** [1]  65/25
**exhibit** [3]  86/25 87/10 87/18
**Exhibit 1** [1]  87/10
**existed** [1]  92/25
**existing** [2]  107/3 108/20
**expect** [1]  65/18
**expected** [2]  94/25 117/20
**experienced** [2]  72/13 72/15
**experts** [1]  101/17
**explaining** [3]  31/13 91/12 110/18
**explains** [2]  61/22 66/3
**explanation** [3]  25/7 83/6 114/24
**explanations** [1]  81/25
**extent** [23]  5/23 21/13 33/20 33/24 34/12 36/8 37/21 40/10 45/20 46/2 48/13 50/2 53/10 62/14 63/11 67/12 68/12 68/18 71/19 78/18 98/24 119/4
**extra** [1]  45/3
**extremely** [1]  42/7
**extrinsic** [1]  58/7

**F**

**F.3d** [2]  85/12 102/9
**F.Supp** [1]  85/25
**face** [2]  6/14 62/2

**F**

**Facebook [1]** 110/17
**facilitated [1]** 18/14
**fact [24]** 12/20 18/18 20/6 21/10 23/2
26/5 26/12 27/2 29/19 30/4 38/18 41/8
55/6 55/15 58/13 64/19 64/20 65/4
68/13 82/16 83/5 87/4 87/5 99/3
**factor [4]** 7/20 24/23 40/9 41/19
**facts [4]** 27/1 27/8 32/4 101/3
**factually [1]** 38/23
**fail [1]** 10/22
**fair [9]** 30/9 30/19 31/19 39/4 51/5
54/19 57/19 73/13 82/7
**fairly [2]** 82/6 111/5
**fairness [1]** 31/25
**faith [1]** 114/6
**fall [1]** 31/8
**falls [5]** 85/23 88/17 89/9 102/5 107/3
**fam [4]** 69/22 93/21 93/21 95/4
**family [4]** 13/7 13/23 95/5 95/9
**far [6]** 46/19 48/23 59/10 59/11 65/13
88/15
**fashion [5]** 16/24 21/16 30/24 72/7
73/15
**February [7]** 56/8 56/12 56/20 57/1
57/8 57/10 58/6
**federal [11]** 1/24 3/5 5/9 12/25 27/23
28/2 42/20 74/8 89/10 101/20 120/16
**feel [3]** 51/10 97/10 118/23
**feeling [1]** 2/20
**feels [1]** 80/12
**felon [1]** 52/4
**felony [1]** 55/7
**felt [2]** 30/2 62/9
**female [1]** 69/20
**few [5]** 5/5 5/19 72/8 116/21 116/22
**Fifth [1]** 20/10
**fight [1]** 108/18
**file [4]** 16/3 44/7 76/20 80/20
**filed [4]** 5/23 52/1 84/7 86/17
**filings [1]** 42/12
**finally [3]** 11/12 49/15 100/3
**find [1]** 95/11
**findings [1]** 11/19
**fine [18]** 2/20 17/8 34/17 48/9 49/11
49/14 49/14 50/1 63/4 64/12 64/22
64/22 74/16 80/18 87/9 87/14 90/22
91/10
**finished [1]** 74/13
**firearm [3]** 52/14 69/7 73/2
**firearms [5]** 68/11 68/15 68/19 69/1
83/3
**fired [1]** 114/17
**first [50]** 11/11 11/17 12/16 14/19 15/3
17/10 17/23 19/16 19/22 22/3 23/14
23/20 24/4 24/21 26/19 28/2 35/9 37/6
37/25 40/19 41/9 42/14 42/16 45/15

47/24 52/25 54/2 55/4 55/25 56/7 60/21
60/22 61/13 66/19 67/23 71/1 72/3 78/7
82/24 83/10 83/16 84/16 84/21 84/24
103/21 105/10 106/18 110/1 113/14
114/11
**first-degree [1]** 66/19
**five [6]** 7/23 7/24 72/25 94/19 105/18
111/10
**five-zero [1]** 105/18
**flip [1]** 28/9
**Floor [1]** 1/24
**flush [2]** 36/14 119/3
**focus [2]** 52/22 116/6
**focused [4]** 21/8 40/12 42/8 83/17
**follow [7]** 6/22 41/23 42/13 42/14
42/19 43/6 44/19
**follow-up [3]** 6/22 41/23 42/13
**followed [2]** 40/17 40/22
**following [10]** 46/15 59/20 68/3 72/13
72/16 74/1 76/10 91/11 98/23 113/2
**footnote [1]** 52/17
**foregoing [1]** 120/7
**forgot [2]** 118/12 118/14
**forgotten [1]** 35/6
**form [2]** 12/8 56/10
**format [1]** 120/9
**former [1]** 35/4
**forth [2]** 50/8 89/11
**forthwith [1]** 117/16
**forward [3]** 8/20 24/1 73/12
**found [4]** 14/9 23/5 81/9 86/1
**four [8]** 7/25 15/17 60/16 60/17 63/2
72/23 74/2 76/11
**fourth [18]** 8/19 35/3 58/8 58/10 59/15
80/22 81/21 82/1 82/5 85/11 86/3 86/10
87/24 88/20 91/14 102/8 102/9 102/11
102/12
**fourthly [1]** 15/11
**frame [1]** 70/24
**frankly [7]** 64/20 71/22 80/22 84/1 84/6
84/19 104/4
**free [20]** 6/22 28/7 33/18 33/23 34/5
34/7 35/11 36/9 46/15 48/4 48/7 48/7
55/18 59/5 88/10 88/24 89/2 89/7 90/19
112/17
**fresh [1]** 10/25
**Friday [14]** 8/12 115/17 115/18 115/20
115/20 115/21 115/22 116/9 116/10
117/25 118/1 118/2 118/4 118/5
**front [1]** 35/3
**fudge [1]** 7/20
**full [4]** 5/11 50/6 60/13 106/1
**fully [8]** 2/12 2/15 3/10 3/17 3/21 4/3
4/20 4/23
**functioning [1]** 10/17
**further [11]** 34/24 55/7 60/6 89/16
91/12 97/8 99/9 101/12 102/22 103/3
113/4

**furtherance [15]** 27/21 28/6 28/7 41/3
92/23 95/16 95/21 98/8 98/14 100/2
100/24 101/7 101/23 102/4 102/13
**future [1]** 107/5 107/13

**G**

**gain [1]** 89/6
**gallery [1]** 2/6
**game [2]** 39/4 51/5
**gang [6]** 18/10 18/17 18/18 18/18
18/19 19/18
**garage [3]** 81/10 81/13 81/16
**gather [5]** 37/14 44/6 58/25 103/11
104/10
**gathered [1]** 84/21
**gave [5]** 21/1 76/15 76/22 81/24 84/11
**general [6]** 32/12 35/15 48/6 48/24
62/16 79/14
**generally [4]** 79/4 102/11 109/24 110/1
**generation [1]** 17/24
**gentlemen [1]** 29/24
**get [33]** 6/12 8/3 9/11 10/5 10/9 10/13
14/12 19/8 29/23 48/21 57/17 59/4 59/6
61/23 64/25 67/3 70/4 71/6 74/5 81/17
82/3 83/4 94/12 94/17 95/3 96/23 96/24
97/2 97/11 99/14 99/14 105/7 117/24
**gets [3]** 5/25 79/8 81/20
**getting [5]** 47/11 61/17 65/19 99/9
99/11
**girlfriend [1]** 72/18
**girlfriends [1]** 72/22
**give [10]** 29/10 30/8 34/19 47/24 54/4
73/15 80/24 105/15 108/11 118/4
**given [13]** 5/24 16/19 33/7 36/4 40/3
47/24 83/6 87/7 87/7 110/12 110/23
111/5 112/16
**Giver [3]** 93/9 93/17 97/21
**giving [3]** 20/6 32/9 80/23
**glad [9]** 21/23 51/23 60/1 66/6 77/23
80/18 92/7 103/8 105/3
**go [44]** 2/21 5/6 5/19 6/13 6/16 6/19
9/17 9/18 10/14 17/10 22/2 24/4 25/18
26/8 27/5 27/11 29/1 33/16 33/18 36/24
38/9 46/19 49/6 50/7 50/13 51/17 51/21
55/3 56/5 65/16 65/24 67/20 88/20
92/13 92/15 93/20 95/3 98/21 113/13
114/2 114/3 115/4 117/6 117/21
**goes [4]** 8/2 20/19 33/4 34/8 48/23
79/5
**going [93]** 7/18 8/18 13/11 17/25 18/2
25/9 27/5 32/8 33/13 35/1 38/1 38/19
38/21 39/20 40/2 40/22 43/8 43/15
45/11 46/9 48/24 48/24 49/12 49/22
50/4 50/5 50/7 50/9 50/13 50/18 51/1
51/6 51/7 53/9 57/1 57/17 61/6 65/21
65/23 68/8 68/9 70/10 72/5 73/18 73/19
79/23 80/1 82/25 83/21 84/20 86/24
87/21 90/6 90/21 91/11 93/20 93/24

## G

**going... [36]** 94/2 94/3 94/5 94/8 94/18 95/10 95/22 97/3 99/7 99/9 99/13 99/15 100/1 100/16 100/18 100/20 100/21 101/9 103/18 104/24 105/10 107/12 107/13 110/20 113/12 113/14 113/17 113/25 114/3 114/9 115/1 115/11 116/9 116/10 117/19 118/24
**gone [2]** 43/18 84/10
**gonna [4]** 45/6 69/22 69/23 69/24
**good [18]** 3/12 3/15 3/16 3/25 4/1 4/18 4/20 4/22 9/16 10/18 36/22 48/2 64/22 74/4 76/3 113/11 114/6 114/22
**Gorilla [2]** 13/7 13/23
**got [9]** 24/14 40/19 59/15 65/1 70/4 81/1 82/7 100/22 117/24
**gotten [1]** 99/16
**Government [127]**
**Government's [28]** 15/8 15/11 15/14 15/25 16/16 28/7 30/25 31/19 33/10 33/17 39/15 45/17 48/14 52/21 54/4 56/6 72/6 76/5 77/23 84/12 86/11 89/13 91/5 91/18 101/16 103/4 105/7 106/8
**grabbed [1]** 65/24
**grams [3]** 69/17 69/21 93/22
**Grand [2]** 86/25 87/7
**grant [3]** 7/5 72/5 87/21
**granted [4]** 88/8 89/15 101/17 103/4
**grasp [2]** 113/11 114/22
**gravamen [1]** 29/23
**Gray [23]** 13/5 13/20 13/21 14/17 18/3 18/11 18/12 18/15 19/10 19/25 20/4 20/11 20/12 20/13 20/18 21/14 22/4 23/14 24/16 24/17 24/17 25/10 42/17
**great [3]** 3/18 32/14 40/17
**green [2]** 8/18 18/23
**greenlit [6]** 23/14 23/16 23/23 32/23 33/14 39/13
**Grimm [9]** 82/6 84/13 85/24 86/1 88/16 88/19 108/25 109/2 109/17
**Grimm's [3]** 82/2 86/11 119/7
**ground [1]** 104/7
**groundwork [1]** 17/9
**group [1]** 13/7
**guess [8]** 25/4 53/19 57/21 61/13 78/17 78/25 88/24 103/16
**guiding [1]** 89/12
**guilty [5]** 58/20 86/8 86/9 87/6 87/7
**gun [35]** 53/17 53/24 53/24 65/24 65/25 66/1 66/4 68/8 68/10 69/4 69/9 69/12 69/15 70/4 70/15 70/16 72/20 72/24 92/21 93/2 93/5 93/8 93/12 93/17 93/19 94/17 94/19 95/3 97/21 99/9 99/11 99/14 99/15 99/16 100/22
**guns [3]** 70/11 70/11 70/12
**guys [1]** 42/24

## H

**had [50]** 2/17 6/16 7/13 12/11 13/6 19/5 19/12 24/17 24/21 25/1 25/3 25/11 25/15 26/2 26/5 26/10 26/12 26/24 30/2 33/22 33/25 37/5 37/7 42/5 42/18 44/19 46/6 48/10 51/3 52/1 53/17 53/24 57/24 58/20 58/22 67/6 68/21 70/11 70/11 72/20 73/1 78/25 83/3 83/22 84/2 84/13 88/11 108/18 116/21 118/21
**hair [1]** 112/13
**hairs [2]** 66/12 110/13
**half [4]** 9/16 44/9 44/13 44/15
**hand [4]** 68/20 93/13 93/14 93/14
**handed [1]** 6/8
**handle [2]** 49/12 62/25
**handled [2]** 31/18 62/17
**handlers [1]** 42/19
**hands [1]** 93/12
**handwritten [2]** 17/21 19/1
**Hanlon [2]** 87/2 87/8
**happen [4]** 40/22 40/24 66/12 66/12
**happened [13]** 31/7 38/5 38/11 41/24 42/17 54/3 62/10 106/1 107/11 107/17 109/12 109/13 109/13
**happens [1]** 94/19
**Happy [1]** 74/15
**hard [1]** 40/2
**harm [1]** 42/3
**Harris [3]** 60/23 61/1 61/4
**Harrises [1]** 62/19
**has [62]** 2/12 3/4 5/23 6/5 6/14 12/18 12/19 13/4 14/12 16/19 18/6 18/20 20/13 20/14 20/16 23/11 23/19 25/5 27/2 28/4 32/20 33/1 33/7 33/11 33/11 36/4 40/3 49/9 50/23 52/17 53/20 54/8 56/9 56/15 57/16 58/21 59/18 59/24 63/19 65/7 65/11 67/17 67/19 68/6 70/14 71/10 71/17 72/11 72/14 73/24 76/8 78/3 80/23 83/8 87/25 89/6 92/24 97/22 103/16 105/17 109/9 110/16
**hasn't [3]** 55/15 63/19 82/20 90/8 92/25
**hate [1]** 9/2
**have [191]**
**haven't [3]** 59/10 110/12 113/19
**having [20]** 13/17 25/24 26/14 27/5 27/7 28/15 31/5 32/2 43/18 47/7 48/9 54/23 58/20 62/3 69/3 81/15 99/18 106/3 117/5 117/22
**Haynes [31]** 15/13 58/18 58/23 65/3 65/8 65/10 65/17 67/5 69/4 69/8 69/13 69/25 70/3 88/13 91/19 93/5 93/20 94/23 94/24 95/8 96/18 99/16 102/22 105/20 107/21 110/3 110/16 111/11 113/24 113/25 115/8
**Haynes' [5]** 16/22 17/3 70/6 105/10 108/12

## H (column 3)

**Haynes's [3]** 65/15 93/15 95/4
**he [151]** 4/9 4/12 17/24 21/4 21/21 33/23 46/9 47/9 49/19 50/13 51/7 53/4 55/20 55/24 64/19 65/21 65/22 81/6 99/21 100/20
**he's [20]** 17/23 19/6 19/20 21/23 34/21 39/5 51/23 56/5 60/1 60/2 60/7 66/7 77/23 77/24 79/10 80/19 92/7 96/24 96/25 103/8 105/3 105/6
**head [1]** 54/7
**hear [22]** 17/23 19/6 19/20 21/23 34/21 39/5 51/23 56/5 60/1 60/2 60/7 66/7 77/23 77/24 79/10 80/19 92/7 96/24 96/25 103/8 105/3 105/6
**heard [7]** 13/2 25/9 28/11 33/8 42/13 105/5 109/24
**hearing [7]** 1/10 12/11 77/18 87/10 117/11 117/15 119/16
**hearsay [84]** 15/10 15/14 15/16 20/8 23/25 24/3 24/5 24/6 25/3 25/25 26/19 26/22 27/6 27/9 27/18 28/12 28/14 28/21 28/25 30/22 30/22 31/1 32/5 32/17 38/12 38/16 38/17 39/17 41/13 43/12 43/16 43/16 43/19 43/24 43/25 44/4 44/15 44/24 44/25 45/1 45/2 45/18 45/21 46/2 46/12 46/25 47/2 47/3 47/3 47/8 48/2 48/15 50/18 54/15 64/4 70/15 73/22 74/12 76/6 78/19 80/9 81/2 81/4 81/16 82/4 85/13 85/18 87/22 89/14 90/10 91/20 91/21 92/20 92/22 95/13 96/21 101/18 101/22 103/7 107/8 107/11 108/7 109/14
**held [5]** 81/14 105/17 108/25 112/9 120/8
**help [1]** 69/21
**helps [1]** 81/2
**Hemphill [1]** 54/11
**her [56]** 18/22 21/15 27/14 28/2 50/14 65/20 65/22 66/1 66/1 66/2 66/4 66/5 66/23 67/4 67/5 67/7 69/12 69/14 69/15 69/18 69/21 72/20 93/24 95/9 95/9 99/19 99/21 99/23 99/25 102/25 105/11 105/15 105/25 106/24 106/24 107/10 107/15 107/17 108/2 108/11 108/13 108/14 108/16 108/17 109/8 109/9 109/10 109/10 109/13 110/17 110/17 110/18 110/21 110/23 112/14 112/15
**here [90]** 3/5 3/20 4/1 4/8 4/9 4/15 4/17 5/1 5/6 5/8 5/8 5/14 6/14 7/12 8/19 9/6 9/15 10/21 11/25 12/13 17/15 22/2 22/7 25/24 26/18 26/18 26/23 27/1 27/9 27/25 28/14 28/15 33/8 35/6 36/25 40/14 40/23 40/24 43/2 44/9 44/13 44/16 49/17 51/10 51/12 53/8 53/15 54/19 55/4 56/4 56/25 58/2 59/7 59/15 62/20 63/23 64/25 65/14 69/20 72/9 74/13 76/5 76/24 79/5 79/13 79/23 83/6 85/17 85/20 85/24 87/20 87/20 87/21 88/6 88/13 88/15 88/21 89/11 89/12 91/2 91/12 91/17 102/17 103/1 104/10 104/19 106/12 113/23 116/5 117/16

**H**

**here's [4]** 29/9 66/22 113/14 114/5
**hereby [1]** 120/6
**heroin [5]** 57/24 69/17 69/23 93/24 107/16
**high [2]** 18/13 40/1
**high-ranking [1]** 18/13
**highlighted [3]** 77/1 77/2 82/22
**highly [1]** 8/12
**him [38]** 11/16 17/12 17/15 17/25 18/5 18/9 19/25 20/20 23/5 38/13 42/20 42/22 42/23 44/10 44/11 49/22 50/4 50/6 52/20 65/24 65/25 70/5 70/15 72/24 72/24 73/1 80/3 81/2 89/7 93/10 94/3 94/14 94/15 94/15 94/19 100/21 107/12
**him about [1]** 80/3
**himself [3]** 81/5 81/18 81/24
**his [47]** 4/13 13/22 16/4 16/21 16/22 18/2 18/20 27/9 28/2 32/9 42/19 46/9 46/10 52/12 52/12 55/23 59/17 60/11 61/7 61/7 61/12 61/19 61/21 62/6 71/13 72/18 72/19 72/22 74/1 76/10 76/14 76/21 81/6 81/10 81/14 81/15 81/18 82/17 83/13 83/18 86/25 87/25 88/9 89/2 90/1 90/2 94/18
**historic [1]** 31/5
**hit [3]** 18/23 20/24 21/5
**hits [2]** 21/2 87/5
**Hobbs [3]** 96/7 99/5 102/19
**holding [1]** 115/25
**holdings [1]** 85/10
**holds [1]** 85/12
**home [1]** 65/21
**homes [1]** 73/2
**homicide [4]** 21/19 37/8 76/16 84/21
**honor [97]** 3/8 3/16 4/1 4/4 4/7 5/13 5/16 8/11 8/25 14/3 16/11 17/2 18/17 20/2 21/25 27/10 28/16 30/7 30/25 32/16 34/18 35/16 37/3 39/8 49/2 51/20 51/25 52/10 57/4 58/4 60/4 60/15 61/9 61/16 61/21 63/4 63/10 64/9 64/16 64/20 65/17 67/2 67/22 68/5 71/1 73/6 74/15 74/22 77/1 77/25 79/19 79/25 80/21 84/1 86/5 86/14 86/25 87/12 89/18 90/11 91/25 92/8 92/16 93/10 95/9 96/12 96/15 96/20 97/6 97/12 97/16 97/18 99/8 101/1 101/14 103/10 103/14 104/13 104/23 105/8 106/17 108/5 109/6 109/15 109/18 109/19 112/2 112/19 112/25 113/6 113/9 114/9 115/19 116/11 116/13 118/6 118/9
**Honor's [1]** 101/10
**HONORABLE [2]** 1/11 75/2
**hopefully [1]** 118/7
**hour [4]** 11/3 43/15 43/19 74/18
**hours [9]** 84/18 89/3 94/13 94/19 106/1

106/1 108/17 108/17 108/17
**house [4]** 70/6 72/21 95/4 108/9
**how [26]** 7/16 9/24 10/14 11/6 25/24 31/22 36/11 36/16 41/17 43/4 46/19 46/25 50/2 50/12 51/8 51/19 52/21 77/14 79/2 79/2 90/6 94/5 94/7 100/1 108/22 111/7
**however [8]** 21/18 23/2 23/10 39/14 67/24 68/17 98/11 99/8
**hundreds [2]** 69/20 93/22
**hurdle [1]** 26/19

**I**

**I'd [4]** 21/23 27/12 32/16 105/8
**I'll [23]** 6/13 6/20 7/6 7/7 7/9 8/19 14/25 19/6 34/21 43/19 48/23 51/7 51/23 59/4 60/1 60/2 66/6 77/23 77/24 80/18 92/7 103/8 105/3
**I'm [90]** 2/20 3/9 4/1 8/18 9/5 9/14 9/17 13/11 20/9 22/5 25/24 27/25 28/15 31/15 31/20 33/20 35/1 37/3 37/8 38/20 40/9 43/10 43/17 47/23 49/7 49/23 50/5 50/7 50/21 51/1 51/11 51/20 54/5 59/13 62/2 62/3 65/23 67/19 69/5 69/6 72/4 72/14 74/16 77/10 86/14 86/15 86/24 87/20 88/15 91/11 93/20 94/3 96/2 98/11 98/23 99/10 99/13 100/5 101/1 101/9 102/5 102/14 103/16 104/9 104/11 104/24 105/9 105/14 106/2 106/12 106/22 107/12 107/12 107/13 110/23 110/24 111/18 111/21 112/12 112/12 113/22 114/21 114/25 115/2 115/15 116/5 116/17 116/23 117/9 117/19
**I've [16]** 2/19 5/21 7/14 9/1 9/1 17/5 35/5 35/5 47/3 57/12 59/15 91/5 101/18 113/1 117/17 118/12
**i.e [1]** 85/16
**idea [1]** 36/19
**identified [2]** 82/21 93/9
**identify [5]** 3/7 93/10 94/8 99/24 99/24
**ignore [2]** 53/10 54/18
**ignored [1]** 107/9
**illegal [1]** 67/16
**imagination [1]** 45/24
**imagine [1]** 46/1
**immediately [3]** 7/8 7/10 31/13
**impartial [2]** 54/20 54/23
**impeachment [1]** 114/11
**imperatives [1]** 96/24
**impermissible [1]** 59/22
**importance [2]** 44/6 112/23
**important [3]** 27/23 36/14 43/11
**imposed [2]** 11/24 11/25
**impression [19]** 20/6 31/1 31/3 31/4 31/4 31/9 31/10 31/12 32/9 54/20 102/24 105/14 105/17 105/22 108/8 108/24 110/14 110/19 110/23

**impressions [3]** 29/14 31/22 108/19
**imprisonment [1]** 12/1
**inadmissible [5]** 28/23 54/15 82/4 83/24 85/18
**incarcerated [3]** 63/22 74/3 76/12
**incident [2]** 67/18 84/14
**include [4]** 12/17 16/20 63/20 63/24
**included [1]** 19/1
**includes [1]** 95/12
**including [5]** 59/17 59/20 88/7 102/12 108/25
**incomplete [2]** 88/5 88/22
**inconsistencies [1]** 23/12
**inconsistent [1]** 33/2
**incriminating [1]** 81/9
**inculpatory [1]** 82/15
**indeed [2]** 19/24 100/18
**indicate [7]** 7/7 18/16 33/24 37/19 57/8 66/23 104/25
**indicated [10]** 7/14 13/4 32/13 48/4 56/15 57/16 63/19 68/7 71/10 103/17
**indicates [1]** 16/4
**indication [2]** 48/8 82/12
**indictment [13]** 11/11 11/12 11/12 11/13 11/18 41/4 56/20 56/21 56/21 87/8 95/19 95/24 98/9
**indictments [1]** 11/18
**individual [7]** 12/19 22/18 25/10 48/5 57/24 93/5 106/19
**individually [1]** 63/9
**individuals [1]** 83/20
**induced [1]** 112/10
**indulgence [1]** 29/16
**inextricably [1]** 44/22
**informant [1]** 42/15
**information [15]** 13/17 22/20 23/12 23/22 23/22 24/14 41/16 41/17 41/22 42/1 42/20 50/15 51/3 84/20 87/6
**initial [3]** 11/10 17/13 38/25
**initially [3]** 13/24 21/25 77/14
**initials [1]** 11/20
**inmate [8]** 96/18 106/3 106/10 106/11 106/15 106/17 107/10 107/17
**inquire [4]** 2/13 2/24 3/6 35/12
**inquiries [1]** 51/3
**inquiring [1]** 48/25
**inquiry [3]** 17/11 46/17 76/5
**instance [2]** 20/9 67/23
**instances [1]** 82/22
**instruction [6]** 29/11 30/8 32/10 34/13 34/20 40/2
**instructions [3]** 9/7 9/8 9/11
**instructive [1]** 38/11 54/13
**Insurance [1]** 109/4
**intend [12]** 16/4 16/23 35/22 50/6 52/5 52/19 52/19 54/8 64/18 95/7 111/3 111/4
**intending [3]** 64/7 65/14 111/22

# I

**intends [9]**  16/19 56/10 57/22 58/22 59/19 72/12 72/14 73/7 77/1
**intent [4]**  99/16 107/5 107/6 107/14
**intercourse [1]**  66/14
**interest [1]**  20/3
**interfere [1]**  78/10
**internally [1]**  33/2
**interrupt [2]**  29/9 37/3
**intersection [2]**  70/4 70/5
**intertwined [2]**  84/22 84/25
**interview [4]**  20/20 48/5 76/16 76/25
**interviewed [5]**  20/16 42/22 42/23 50/24 80/2
**intrinsic [2]**  63/22 67/8
**introduce [17]**  4/7 36/19 55/18 56/15 57/23 58/22 59/5 59/19 63/20 64/7 65/7 71/1 71/16 77/1 84/5 103/12 103/23
**introduced [1]**  88/3
**introduction [1]**  57/1
**investigating [3]**  21/20 37/20 44/20
**investigation [4]**  37/20 40/13 41/6 43/5
**investigator [4]**  22/19 40/12 40/25 42/9
**inviting [1]**  39/1
**involved [4]**  19/10 27/6 27/9 56/11
**involvement [1]**  13/23
**involving [4]**  15/13 53/9 91/19 102/2
**irrelevant [1]**  55/8
**is [476]**
**isn't [13]**  17/24 26/11 26/17 29/19 30/20 33/9 35/14 39/11 82/16 85/8 85/8 104/1 104/3
**issue [67]**  6/3 7/8 7/12 12/22 12/23 12/24 13/1 13/8 13/10 13/11 13/14 14/1 14/16 14/22 15/11 17/3 29/6 31/1 32/15 32/18 35/10 35/24 37/6 37/8 37/9 38/1 38/19 43/24 48/17 49/3 49/10 52/18 53/2 53/22 56/14 56/19 56/25 57/3 57/10 57/13 57/19 58/1 58/2 58/3 61/13 64/5 64/14 67/15 68/18 69/1 69/2 72/6 77/3 78/7 82/19 88/1 88/3 90/17 91/11 100/1 103/19 104/19 112/24 114/7 117/22 118/15 119/6
**issues [11]**  5/14 13/25 20/22 28/13 35/9 36/15 38/15 66/15 117/8 118/14 119/5
**it [269]**
**it's [108]**  3/22 3/25 6/15 8/11 8/15 12/9 14/18 17/18 17/25 19/19 21/10 21/20 24/6 24/7 25/13 25/25 26/12 26/13 30/15 30/22 30/22 30/22 31/18 31/22 31/23 32/8 32/19 34/23 36/12 36/14 37/22 38/23 39/5 39/24 40/2 40/10 40/10 42/11 43/11 43/25 43/25 44/4 44/25 46/2 47/2 50/12 50/22 52/11

53/15 53/16 58/5 59/22 59/24 60/9 61/11 62/19 66/3 66/13 66/14 66/20 67/24 71/3 72/6 73/18 79/3 80/21 84/20 84/22 87/1 87/12 91/3 93/1 93/4 93/20 93/21 93/21 93/21 94/12 95/13 95/13 96/10 97/1 98/12 98/14 98/17 99/15 105/18 105/23 106/8 106/12 107/4 107/14 108/8 108/13 108/24 109/1 109/9 110/24 111/2 112/23 115/17 115/19 115/21 115/22 116/9 116/10 116/25 117/23
**item [2]**  59/15 98/24
**items [7]**  81/9 81/12 81/12 81/14 81/15 81/17 98/25
**its [10]**  40/3 42/2 54/7 63/14 71/11 71/16 73/7 73/20 97/4 98/7
**itself [10]**  52/11 54/25 84/10 85/1 93/16 93/16 93/25 95/4 97/24 99/12

# J

**jail [25]**  15/12 15/15 64/1 64/3 64/19 69/8 69/13 69/14 91/19 91/20 92/5 92/6 92/11 93/11 93/12 96/13 96/16 97/15 101/18 103/7 104/21 105/11 105/12 106/3 106/5
**Jason [1]**  76/23
**JAVON [2]**  1/18 3/10
**JEFF [2]**  1/19 3/10
**Jeffrey [1]**  94/4
**Jeffreys [2]**  21/15 50/14
**Jencks [2]**  111/6 116/11
**Jennifer [7]**  94/3 107/20 107/23 108/9 108/18 113/16 113/22
**job [3]**  10/18 39/23 40/17
**joined [1]**  18/17
**JR [1]**  1/17
**judge [27]**  2/11 3/5 9/21 20/14 35/4 38/1 38/12 38/18 38/25 39/1 82/2 82/6 84/13 85/24 86/1 86/11 88/16 88/19 107/7 108/25 109/2 109/17 109/17 109/17 109/19 118/14 119/7
**Judge Grimm [8]**  84/13 85/24 86/1 88/16 88/19 108/25 109/2 109/17
**Judge Grimm's [3]**  82/2 86/11 119/7
**Judicial [1]**  120/10
**July [3]**  63/25 76/13 87/1
**July 1st [1]**  87/1
**jumping [1]**  20/9
**June [8]**  7/19 7/21 8/3 9/5 74/1 76/11 76/14 88/11
**June 5 [2]**  76/14 88/11
**June 7 [1]**  9/5
**June 7th [1]**  8/3
**juror [7]**  5/21 6/6 6/25 6/25 7/3 7/5 10/2
**jurors [5]**  6/8 6/18 117/23 118/20 118/22
**jury [43]**  9/7 9/8 9/10 9/19 9/24 9/24

10/7 10/24 32/14 33/11 37/19 39/5 39/21 39/21 40/2 41/14 43/8 47/15 50/7 53/9 53/16 54/20 54/23 54/23 78/7 79/8 79/9 79/9 79/13 82/8 83/7 84/20 85/5 86/25 87/7 88/22 117/5 117/6 117/7 117/19 117/19 118/19 118/22
**just [93]**  2/7 5/2 5/9 5/19 6/1 6/19 10/14 11/9 12/7 13/13 18/24 21/8 23/20 24/4 31/3 31/20 32/9 34/12 35/10 36/6 36/18 38/15 40/13 43/2 49/15 51/7 54/5 57/6 57/8 62/15 63/1 63/13 64/10 64/19 66/11 67/9 67/11 68/16 69/11 69/22 69/23 70/21 71/24 72/4 72/8 72/8 72/9 73/8 73/20 78/3 81/19 82/9 82/9 82/17 83/14 84/13 87/20 87/20 89/20 90/11 92/4 97/2 97/22 97/24 98/16 98/21 98/23 99/7 100/10 100/12 103/18 105/14 105/22 106/2 107/4 107/11 109/14 110/1 110/12 110/15 110/15 111/2 111/21 112/2 112/4 113/9 114/9 114/20 114/20 115/16 115/22 115/23 118/19

# K

**K.B [1]**  11/21
**keep [4]**  3/13 5/3 8/20 29/9
**keeping [1]**  3/4
**keeps [1]**  10/17
**KELLY [5]**  1/19 3/10 3/19 20/19 20/19
**key [2]**  88/13 88/14
**Kiara [17]**  15/13 16/21 17/3 58/18 58/23 65/3 65/8 65/10 91/19 93/13 95/8 113/18 113/21 113/22 113/24 113/25 115/8
**kill [10]**  18/16 18/18 18/22 18/23 20/7 20/7 72/17 72/24 110/21 111/1
**killed [3]**  25/23 39/19 62/1
**killing [1]**  19/18
**kind [9]**  50/14 68/23 83/7 85/23 89/5 94/7 101/4 113/15 118/12
**kinds [4]**  53/25 79/5 95/1 101/3
**know [35]**  8/14 9/13 11/4 19/20 32/7 35/18 39/16 45/11 50/16 51/1 54/24 59/11 61/23 62/1 64/7 68/17 69/18 73/11 74/7 79/2 84/7 84/8 84/9 85/4 93/18 93/19 104/6 113/10 113/10 114/6 114/13 115/9 116/8 117/15 117/22
**knowing [1]**  18/17
**knowledge [7]**  5/15 16/18 19/21 20/17 42/18 55/9 86/2
**known [2]**  13/7 97/5
**knows [8]**  21/1 47/1 94/6 94/8 100/20 105/23 114/21 115/23
**knows that [1]**  47/1

# L

**lack [4]**  23/20 24/1 61/8 65/15
**ladies [1]**  29/24

# L

**language [2]** 44/18 112/5
**larger [1]** 95/22
**last [17]** 7/13 7/14 8/5 8/5 8/6 9/24
16/15 30/25 34/9 91/14 91/17 91/22
105/21 108/23 113/15 113/16 117/20
**later [17]** 9/11 22/22 38/8 42/22 56/23
59/25 60/11 70/9 74/17 82/11 82/16
94/11 94/20 105/18 105/18 106/1
117/12
**laughing [2]** 10/21 59/13
**Laughter [4]** 10/20 35/7 59/14 74/14
**law [20]** 13/16 16/21 16/22 17/3 18/6
18/14 18/25 41/23 66/13 66/16 74/1
76/10 80/23 81/11 83/13 83/15 83/20
86/15 97/23 98/17
**lawyers [2]** 7/8 114/14
**layer [1]** 45/3
**lays [1]** 17/9
**lead [8]** 40/12 40/12 40/17 40/22 40/25
42/9 42/10 43/6
**leader [1]** 18/15
**leaf [1]** 115/25
**leap [1]** 33/8
**learns [1]** 28/2
**least [6]** 56/12 70/25 73/14 74/10
103/1 104/4
**leave [6]** 29/15 82/8 83/7 84/20 117/6
117/21
**leaves [1]** 97/8
**leaving [1]** 29/5
**legal [1]** 65/12
**legitimate [2]** 33/2 43/1
**less [2]** 107/15 118/22
**let [12]** 2/7 5/19 11/9 17/23 24/4 45/19
60/7 69/15 97/18 113/9 113/10 117/14
**let's [3]** 11/6 64/25 92/13
**letter [4]** 16/1 16/2 16/18 54/1
**letters [1]** 51/9
**level [6]** 19/16 19/16 19/22 19/24
118/20 118/22
**Lewis [10]** 17/21 33/21 37/15 37/17
39/11 41/17 42/15 44/14 76/17 77/11
**Liberto [1]** 10/16
**life [2]** 12/1 12/9
**light [5]** 8/18 8/18 8/19 18/23 89/12
**like [23]** 2/18 4/11 8/14 8/21 9/9 11/4
23/4 23/18 27/12 32/16 33/1 40/16
45/12 50/17 51/10 61/17 70/12 83/22
94/7 105/14 106/22 106/23 107/12
**likely [5]** 27/18 53/11 53/11 53/16
61/22
**Limine [13]** 12/16 15/5 15/12 15/25
48/3 48/14 51/15 58/11 72/5 84/7 91/5
91/18 97/14
**limit [8]** 14/13 27/9 27/15 37/7 37/14
53/5 62/15 63/12

**limited [8]** 34/20 44/18 55/22 66/20
73/15 84/17 90/6 101/4
**limiting [4]** 34/13 40/1 47/18 112/5
**line [5]** 39/25 40/8 40/9 41/12 51/4
**lines [1]** 19/21
**lingers [2]** 14/22 35/11 35/14
**linked [1]** 6/9
**lips [1]** 61/23
**liquor [1]** 62/2
**list [3]** 113/20 115/12 115/14
**listed [2]** 73/3 98/18
**listens [1]** 79/13
**literally [2]** 40/18 85/6
**little [18]** 7/20 8/3 8/17 9/2 10/7 11/6
27/13 30/14 30/21 33/12 51/6 65/13
78/1 82/6 83/6 113/15 117/3 117/20
**live [2]** 78/5 78/14
**lo [1]** 49/19
**located [1]** 81/23
**location [2]** 87/5 99/21
**locations [1]** 16/21
**locked [1]** 116/8
**Lombard [1]** 1/24
**long [9]** 9/24 11/5 78/9 79/3 79/14
104/5 108/22 117/5 117/23
**long-term [1]** 79/3
**longer [3]** 12/20 42/6 117/20
**look [5]** 22/2 43/3 66/13 101/1 107/4
**looked [3]** 61/13 84/12 84/13
**looking [9]** 22/5 23/10 33/20 41/10
41/16 45/12 87/20 87/20 106/12
**looks [1]** 79/10
**loose [2]** 61/23 115/25
**loose-leaf [1]** 115/25
**Lorraine [1]** 109/3
**lot [6]** 49/18 84/10 104/6 104/7 110/11
117/16
**lots [1]** 82/14
**lowered [1]** 2/11
**lunch [11]** 11/4 51/18 51/22 65/2 72/10
74/17 74/18 74/20 74/23 74/25 118/24
**lunchtime [1]** 10/7
**luxury [1]** 117/4

# M

**machine [1]** 117/6
**mad [4]** 106/23 107/12 114/12 114/18
**madder [2]** 47/21 47/23
**made [35]** 12/18 13/2 17/13 17/18
17/19 17/21 22/23 27/20 28/6 28/7
31/13 34/9 41/8 44/20 60/12 63/8 63/8
63/21 70/25 72/3 73/25 76/10 85/15
92/24 100/17 100/18 101/6 101/21
101/23 102/4 102/25 107/21 113/2
119/3 119/4
**made in [1]** 72/3
**magistrate [1]** 109/17
**maintain [1]** 53/2

**major [1]** 76/4
**majority [2]** 18/15 23/16
**make [29]** 7/2 7/11 8/20 10/12 23/20
29/2 29/18 33/3 38/25 40/9 41/8 42/7
43/20 47/15 47/21 49/20 61/15 71/24
73/8 80/20 87/19 89/7 110/1 114/4
116/16 117/9 117/11 117/17 119/1
**makes [6]** 20/20 84/13 92/13 93/16
111/1 113/15
**making [6]** 21/15 26/9 47/23 73/12
111/7 111/12
**male [3]** 38/14 69/25 70/3
**man [2]** 49/21 108/6
**mandatory [2]** 12/9 16/7
**manner [1]** 53/12
**many [8]** 7/8 9/9 27/2 32/25 36/15 89/3
94/13 108/25
**March [4]** 56/20 56/23 57/7 57/10
**March 2015 [1]** 57/7
**mark [1]** 87/17
**Markel [2]** 109/3 109/4
**marker [1]** 89/11
**MARYLAND [9]** 1/1 1/6 1/25 5/11
66/13 66/16 67/12 78/15 120/6
**mask [6]** 2/13 3/1 3/2 3/13 3/21 5/3
**masks [2]** 2/8 2/11
**material [1]** 118/3
**matter [73]** 1/9 12/22 14/20 15/4 17/11
18/2 19/15 20/11 22/22 24/7 24/8 24/11
24/20 24/25 26/4 26/17 26/21 27/6 28/4
28/13 29/11 29/13 29/19 29/25 30/16
30/23 32/6 33/19 34/3 35/11 35/13 40/3
43/8 43/11 43/17 43/22 45/23 47/9
47/14 47/17 48/6 49/6 49/15 49/18
50/21 50/22 56/19 57/6 58/13 58/15
59/7 59/7 59/8 60/8 61/10 65/2 67/5
68/1 69/7 71/6 71/8 74/7 74/12 78/20
79/3 79/23 89/17 91/15 91/22 96/22
107/19 117/11 120/9
**matters [8]** 5/5 28/11 49/7 57/17 63/14
63/15 113/4 116/20
**may [122]**
**May 1 [5]** 104/19 111/12 111/14 111/15
111/23
**May 10 [6]** 104/20 111/13 111/14
111/15 111/22 111/23
**May 10th [1]** 106/15
**May 11 [2]** 104/20 111/11
**May 11th [3]** 104/15 104/16 111/4
**May 16 [2]** 111/19 111/23
**May 1st [4]** 104/13 104/16 106/18
110/15
**May 22 [2]** 76/11 76/21
**May 23 [6]** 7/23 7/25 10/6 10/24 117/10
117/12
**May 26 [5]** 92/5 94/21 100/11 100/12
101/18
**May 26th [2]** 96/14 97/19

**M**

**May 27 [9]** 58/13 65/3 65/8 88/12 92/6 96/17 100/7 101/19 102/23

**May 27th [1]** 101/8

**May 29 [3]** 111/14 111/16 111/23

**May 30 [2]** 7/24 7/25

**May 6 [3]** 104/19 111/11 111/22

**May 6th [2]** 106/18 111/3

**May 9 [5]** 104/20 111/12 111/14 111/15 111/23

**May 9th [1]** 106/18

**maybe [7]** 10/7 45/8 45/9 77/25 84/8 89/6 93/13

**me [55]** 2/7 2/7 2/14 5/19 7/6 7/18 10/17 10/18 10/22 11/9 12/8 17/23 18/2 24/4 29/10 32/13 42/24 45/1 45/19 46/17 47/23 47/24 52/15 60/1 60/7 62/11 62/14 69/11 70/16 77/3 85/19 87/3 93/20 94/12 96/23 96/24 96/24 96/25 97/2 97/18 99/22 100/4 104/9 104/11 105/2 108/7 108/9 110/21 113/15 113/22 115/7 115/9 115/16 117/9 117/14

**mean [12]** 30/16 31/17 33/14 34/16 34/23 50/21 54/22 68/23 68/25 79/3 90/8 101/2

**Meaning [1]** 40/1

**meaningful [1]** 32/21

**means [3]** 9/3 26/9 119/1

**meet [1]** 23/3

**meeting [5]** 22/4 23/4 23/6 23/8 23/9

**meetings [1]** 23/7

**member [6]** 18/10 18/11 18/13 18/13 36/10 36/19

**members [2]** 35/14 35/23

**memo [1]** 80/20

**Memorial [1]** 7/24

**memorializes [1]** 79/7

**mental [8]** 31/8 60/11 61/8 61/14 105/16 105/22 106/24 107/3

**mentioned [5]** 17/6 33/1 37/5 41/15 86/16

**Merit [1]** 120/4

**met [4]** 42/15 44/10 44/11 70/3

**Michael [4]** 13/20 18/3 19/10 23/14

**might [11]** 11/5 23/13 41/6 47/21 61/16 61/22 61/25 62/2 83/5 104/6 112/9

**Mike [5]** 13/5 24/16 24/16 87/1 87/8

**mind [16]** 65/20 65/22 108/11 108/12 108/13 108/14 108/16 108/17 108/20 108/20 108/22 109/9 109/9 109/10 112/9 112/10

**mine [2]** 81/12 81/13

**minor [1]** 11/20

**minute [6]** 8/23 19/7 25/18 40/7 59/7 97/11

**minutes [8]** 43/16 51/22 65/1 70/2

74/18 105/18 105/18 108/25

**mirrored [1]** 85/7

**misconception [1]** 88/21

**misimpression [4]** 82/8 82/23 83/7 84/19

**mislead [1]** 85/5

**misleading [2]** 54/20 88/9

**moment [6]** 32/14 35/6 103/21 106/25 107/4 108/16

**Monday [8]** 2/4 7/19 7/23 10/6 10/6 10/9 10/12 10/24

**money [2]** 81/23 81/25

**months [2]** 40/25 68/21

**moot [6]** 12/14 12/23 16/5 16/25 17/2 67/14

**more [22]** 31/20 33/13 35/5 40/9 51/6 53/11 53/16 53/19 54/4 58/14 61/22 62/15 68/19 76/4 83/1 92/13 95/10 101/10 116/12 116/22 117/9 118/23

**morning [18]** 19/5 19/12 19/18 23/23 24/17 24/21 25/2 25/8 25/15 25/22 25/23 25/25 26/1 26/5 26/10 26/12 28/17 29/7 29/11 30/2 30/3 30/14 32/2 32/6 32/11 33/22 33/25 34/2 43/17 44/19 46/5 46/24 47/6 47/12 48/8

**most [5]** 27/18 27/22 68/23 102/11 102/12

**mother [31]** 19/5 19/12 19/18 23/23 24/17 24/21 25/2 25/8 25/15 25/22 25/23 25/25 26/1 26/5 26/10 26/12 28/17 29/7 29/11 30/2 30/3 30/14 32/2 32/6 32/11 33/22 33/25 34/2 43/17 44/19 46/5 46/24 47/6 47/12 48/8

**motion [49]** 12/16 13/8 14/2 14/7 14/25 15/5 15/8 15/12 15/14 15/25 16/2 17/13 23/7 25/6 36/24 36/25 37/6 48/3 48/14 51/15 51/24 52/1 52/1 58/10 63/11 67/12 68/9 72/5 73/21 76/5 76/7 76/18 77/4 77/23 84/2 84/7 84/12 86/18 87/21 89/13 91/5 91/14 91/17 91/18 92/19 97/14 101/16 103/4 103/5

**motions [5]** 1/10 12/10 12/11 12/12 12/13

**motive [5]** 20/7 20/7 41/21 110/25 111/1

**moved [6]** 35/18 42/5 73/24 76/8 77/7 88/8

**moves [1]** 48/13

**moving [3]** 8/20 29/9 117/24

**Mr [11]** 3/15 13/10 14/9 14/17 20/9 25/3 25/7 74/13 95/22 105/3 115/9

**Mr. [132]**

**Mr. Briscoe [37]** 4/2 4/22 11/14 12/7 16/2 16/3 36/10 52/18 56/22 60/20 62/8 63/8 65/10 76/15 80/15 81/1 82/12 83/22 85/16 85/22 94/3 94/10 94/11 94/14 94/16 94/18 94/22 94/25 95/6 95/8 95/13 97/8 99/19 99/24 100/3 100/16 100/21

**Mr. Briscoe's [1]** 70/4

**Mr. Budlow [12]** 9/13 21/23 27/1 30/10

36/17 39/7 47/2 49/1 50/23 59/12 74/11 118/11

**Mr. Bugg [36]** 13/4 17/12 17/19 18/4 18/12 18/12 18/13 19/17 20/10 21/10 21/14 22/15 22/22 23/3 23/6 23/13 23/22 24/12 25/9 29/23 30/5 31/24 33/18 33/18 34/6 39/16 40/3 42/15 44/25 45/11 49/16 50/3 50/3 50/20 50/24 51/7

**Mr. Bugg's [3]** 13/15 17/22 37/10

**Mr. Cadle [1]** 4/15

**Mr. Carrick [1]** 87/17

**Mr. Demetriou [2]** 10/17 35/10

**Mr. Gray [11]** 18/11 18/12 18/15 20/11 20/12 20/13 20/18 21/14 22/4 25/10 42/17

**Mr. Haynes [1]** 67/5

**Mr. Michael [2]** 18/3 19/10

**Mr. Purpura [24]** 4/6 4/18 8/21 9/13 9/22 10/15 29/22 51/24 77/20 77/24 79/20 80/19 83/25 86/13 89/19 90/9 90/12 91/2 92/1 97/17 105/5 113/8 115/1 116/1

**Mr. Purpura's [1]** 35/1

**Ms [10]** 3/3 14/5 16/10 51/23 67/1 69/8 74/21 80/19 115/3 118/11

**Ms. [86]** 3/12 5/12 5/15 8/10 8/21 9/14 9/14 12/3 12/5 15/19 15/21 16/12 17/1 17/23 21/15 21/22 21/23 25/18 27/13 29/22 34/23 35/24 37/12 37/17 48/18 49/12 49/17 50/5 50/14 55/2 56/17 57/3 57/6 59/10 60/8 64/15 65/15 65/16 65/17 66/6 67/11 69/4 69/13 69/25 70/3 70/6 73/5 73/17 74/23 77/5 77/24 78/16 79/17 87/11 89/17 90/8 91/24 92/7 101/13 103/8 105/5 105/20 107/20 108/23 109/24 110/3 110/16 111/11 111/21 113/5 113/8 114/1 114/8 114/23 115/1 118/2

**Ms. Brusca [33]** 3/12 5/12 8/10 9/14 12/3 15/19 17/1 21/23 25/18 49/12 56/17 57/3 59/10 60/8 65/16 67/11 73/5 77/5 77/24 78/16 79/17 87/11 89/17 90/8 91/24 92/7 101/13 103/8 108/23 113/5 114/8 114/23 118/2

**Ms. Haynes [13]** 65/17 69/4 69/13 69/25 70/3 93/20 94/23 94/24 99/16 105/20 110/3 110/16 111/11

**Ms. Haynes' [1]** 70/6

**Ms. Haynes's [3]** 65/15 93/15 95/4

**Ms. Jeffreys [2]** 21/15 50/14

**Ms. Jennifer [1]** 107/20

**Ms. Kiara [1]** 93/13

**Ms. Whalen [31]** 5/15 8/21 9/14 12/5 15/21 16/12 17/23 21/22 27/13 29/22 34/23 35/24 37/12 37/17 48/18 49/17 50/5 55/2 57/6 64/15 66/6 73/17 74/23

## M

**Ms. Whalen... [8]** 97/17 97/17 105/5 109/24 111/21 113/8 114/1 115/1
**Ms. Whalen and [1]** 92/1
**much [17]** 5/4 5/18 14/9 17/24 21/22 23/11 36/23 49/15 68/19 77/22 83/25 90/23 107/15 109/23 112/1 113/1 119/14
**multiple [1]** 24/15
**multitude [1]** 111/6
**murder [19]** 11/20 13/24 21/19 21/20 25/1 39/12 52/3 52/10 52/25 53/3 62/10 65/4 65/6 65/19 67/7 68/22 70/8 71/7 84/25
**murders [19]** 23/15 23/17 57/25 59/16 59/21 60/9 60/12 61/7 65/18 67/8 73/1 82/12 82/14 82/15 82/16 83/21 88/11 88/12 88/14
**must [2]** 98/20 102/1
**my [54]** 2/23 3/3 3/9 7/2 7/10 8/3 8/9 14/12 14/22 16/18 20/17 28/9 29/5 29/9 30/13 41/9 49/19 51/9 53/4 55/2 55/9 57/5 60/9 61/13 69/21 69/22 70/25 76/20 77/14 79/1 81/13 85/24 86/2 86/5 90/9 90/9 90/20 91/12 93/21 95/4 95/5 95/5 96/19 98/24 99/3 100/18 102/23 104/9 105/14 107/13 108/9 113/2 115/7 115/15
**myself [1]** 114/1

## N

**name [1]** 4/13
**named [3]** 12/19 22/18 93/11
**names [1]** 41/21
**narcotics [10]** 56/8 56/11 56/16 56/22 57/7 58/12 83/18 96/4 99/6 102/18
**nature [2]** 55/7 69/12
**near [1]** 103/1
**nearly [1]** 107/7
**necessarily [1]** 65/16
**necessary [3]** 53/5 59/24 118/18
**need [32]** 5/1 8/17 9/7 9/20 12/14 16/8 30/7 34/19 35/24 36/12 50/6 50/12 50/15 50/15 51/6 56/4 57/10 60/5 62/15 65/15 67/9 67/20 69/18 72/9 74/10 74/20 93/19 105/2 105/6 105/6 116/6 118/2
**needed [2]** 59/10 99/14
**needs [1]** 88/15
**negative [3]** 2/17 2/19 117/3
**neither [2]** 85/13 114/25
**nervous [1]** 113/15
**never [10]** 20/16 35/5 35/5 45/16 46/6 53/9 70/3 70/11 70/11 114/14
**New [1]** 54/11
**newly [1]** 4/7
**newly-barred [1]** 4/7

**next [10]** 8/5 9/10 42/17 49/13 59/9 63/17 101/19 115/20 115/21 117/12
**nice [9]** 3/12 3/15 3/18 3/19 4/9 4/15 4/16 4/18 4/22
**night [6]** 62/10 70/2 94/17 95/6 105/21 118/17
**nightmares [1]** 62/3
**nine [3]** 7/25 8/1 68/21
**Ninth [1]** 112/5
**no [84]** 1/4 4/24 5/14 5/16 9/10 12/8 12/20 16/11 20/16 20/25 21/9 26/19 27/6 27/9 27/24 32/9 33/2 34/24 35/25 36/3 42/6 42/21 42/25 43/16 43/19 43/21 44/15 46/4 46/5 46/6 46/12 46/17 47/4 47/7 48/2 48/10 48/15 48/20 49/9 49/9 52/14 56/22 57/14 58/1 58/3 58/25 59/2 64/16 65/8 67/2 71/1 74/17 74/22 78/5 81/12 83/11 83/22 83/22 84/2 86/3 86/4 87/13 88/14 88/21 88/22 89/7 89/18 90/1 90/2 90/15 90/16 94/22 99/18 100/8 101/14 108/7 108/7 108/13 109/3 109/15 113/6 116/15 118/13 119/12
**Nobody [1]** 82/13
**none [4]** 23/18 33/10 49/2 92/18
**normal [2]** 10/2 11/2
**normally [2]** 7/6 101/5
**NORTHERN [1]** 1/2
**not [291]**
**notation [1]** 20/18
**note [20]** 2/7 2/15 5/22 6/6 6/10 7/1 7/9 7/12 11/9 16/15 19/6 44/8 51/7 61/19 76/18 82/20 87/19 89/3 102/22 115/3
**notebook [1]** 116/1
**noted [6]** 11/20 50/23 76/7 85/24 88/17 102/11
**notes [24]** 1/22 17/21 18/25 19/1 21/18 22/3 22/4 22/5 22/10 22/11 22/24 23/4 23/8 23/10 24/2 24/14 33/20 33/21 44/9 44/13 44/15 46/9 46/10 50/23
**nothing [9]** 5/7 16/8 20/25 41/1 43/2 47/8 83/5 83/22 88/15
**notice [19]** 11/18 16/16 16/19 16/25 17/2 35/16 36/4 54/4 56/9 57/14 57/15 58/21 59/18 64/10 65/7 72/11 72/14 91/16 110/12
**notified [1]** 103/23
**noting [1]** 29/11
**now [42]** 11/9 11/15 12/10 12/18 12/19 12/23 16/25 20/9 23/15 26/23 35/24 36/25 37/9 39/20 40/22 43/15 43/19 43/25 44/4 46/17 49/16 50/2 53/4 55/9 59/13 63/17 64/25 67/13 67/19 67/24 74/17 75/2 83/21 86/20 92/19 100/9 100/22 103/5 108/10 110/11 117/2 117/12
**number [24]** 2/3 12/17 15/7 16/2 16/17 16/18 19/6 27/4 50/22 51/16 72/17

72/19 72/21 72/23 72/25 73/23 76/7 76/20 91/16 91/16 91/21 96/18 110/15 117/23
**Numbers [2]** 19/1 44/7
**numerous [1]** 27/2
**nutshell [1]** 57/2

## O

**o'clock [7]** 10/5 10/6 74/18 74/19 75/1 96/14 118/4
**object [6]** 73/9 110/2 110/3 110/6 114/3 114/4
**objected [3]** 82/21 90/8 114/10
**objection [11]** 5/25 8/8 33/17 46/22 57/9 83/11 84/3 87/11 87/13 90/20 90/25
**objections [3]** 12/11 101/11 113/16
**obligations [1]** 5/12
**obtained [1]** 57/24
**obvious [2]** 21/21 28/20
**obviously [9]** 7/3 11/22 23/21 25/19 63/13 84/7 84/8 100/15 114/1
**occasions [5]** 57/14 57/15 57/21 74/2 76/11
**occurred [5]** 42/14 66/8 66/9 67/4 67/11
**occurrence [1]** 62/7
**October [11]** 6/15 6/16 10/23 56/9 56/12 56/16 56/24 57/17 58/7 118/21 118/21
**October 2015 [1]** 56/16
**off [1]** 50/13
**offense [1]** 53/5
**offer [8]** 28/7 29/25 67/23 68/2 68/16 70/14 81/5 95/8
**offered [30]** 14/20 21/9 24/11 24/19 24/24 25/12 25/13 25/14 26/11 26/12 26/14 26/16 26/20 28/12 29/12 30/3 30/15 30/23 32/10 34/1 39/18 43/21 45/23 47/8 47/14 47/16 81/5 85/22 96/22 97/1
**offering [1]** 98/6
**offers [1]** 55/6
**Office [1]** 41/2
**officer [8]** 42/20 46/6 46/15 47/1 47/4 47/11 47/19 48/5
**officers [7]** 13/16 37/20 46/19 48/6 48/10 81/8 88/10
**Official [3]** 1/24 120/1 120/16
**Oh [3]** 31/6 42/23 105/20
**okay [31]** 5/3 9/1 17/7 17/8 19/4 22/13 26/3 34/22 35/20 43/17 43/19 44/15 47/8 49/11 50/1 58/19 60/22 60/25 61/3 73/20 78/24 80/18 86/9 91/10 92/4 92/9 99/3 106/20 109/7 110/10 118/10
**old [11]** 52/7 53/3 55/5 56/1 58/16 67/20 67/21 68/2 70/10 71/8 72/19
**once [5]** 2/18 35/3 53/10 73/16 113/11

**O**

**one [64]** 3/22 6/18 6/18 8/15 10/10 10/12 10/17 12/11 13/13 15/3 16/15 17/20 19/16 21/8 23/8 27/24 28/18 30/21 32/24 34/24 34/25 36/4 36/15 40/24 44/21 45/12 48/11 51/9 53/11 57/20 58/15 58/19 61/18 61/24 68/6 69/13 71/1 72/17 72/22 76/19 76/23 78/25 79/1 83/4 83/4 95/5 96/18 96/23 97/7 98/21 105/15 105/20 107/19 107/21 108/1 110/15 112/4 115/3 115/8 115/23 115/23 116/18 116/21
**only [20]** 7/12 10/8 11/14 26/23 32/5 36/3 45/17 47/1 52/22 53/22 57/25 63/5 68/21 81/2 86/24 89/4 90/17 95/5 98/13 100/20
**open [6]** 12/13 54/22 54/25 68/25 71/4 118/24
**opened [2]** 54/17 71/12
**opening [9]** 10/9 10/12 10/13 10/25 88/25 89/1 89/2 114/4 117/10
**opens [2]** 54/13 73/10
**operative [4]** 21/10 24/23 27/1 32/3
**opinion [14]** 47/21 55/6 58/10 82/2 85/11 86/1 86/10 86/1 88/19 91/11 101/16 102/7 102/9 113/3
**opponent [1]** 74/7
**opportunity [6]** 33/11 33/12 34/14 40/4 80/24 82/17
**opposed [7]** 10/2 32/2 62/16 62/23 63/9 66/19 77/16
**opposing [1]** 64/5
**orange [1]** 8/18
**order [7]** 5/7 18/22 45/13 76/20 88/4 98/16 115/15
**ordered [5]** 19/18 20/24 21/5 39/13 115/13
**ordering [1]** 20/7
**orders [1]** 2/8
**originally [1]** 38/13
**Ortega [1]** 81/8
**other [62]** 3/22 4/12 7/12 10/12 11/8 15/15 18/18 18/19 19/8 27/8 28/13 32/18 37/21 37/22 38/10 40/20 42/5 44/2 47/25 48/11 49/1 49/3 49/7 49/10 51/3 52/5 52/9 53/1 53/20 54/4 54/24 58/2 61/18 64/5 64/14 64/18 68/20 68/24 69/21 70/14 72/8 77/2 82/14 83/19 84/11 90/5 91/20 97/10 98/25 99/7 99/7 99/10 99/11 99/12 103/7 109/10 110/23 111/8 111/9 113/4 115/9 116/17
**others [3]** 12/14 19/11 36/6
**otherwise [6]** 28/22 68/13 68/14 71/14 82/4 85/18
**our [25]** 4/7 14/13 35/19 36/21 37/18 38/4 39/3 39/5 52/2 52/24 53/22 54/2

54/19 54/22 60/4 68/12 74/11 77/18 82/10 95/13 101/10 111/7 116/7 116/12 117/7
**out [38]** 5/10 6/8 11/7 18/5 18/8 19/19 22/1 27/17 28/18 28/25 34/21 36/6 36/7 36/11 36/14 36/16 42/5 42/11 45/16 50/2 51/8 53/8 54/9 64/10 70/4 81/2 86/12 88/5 88/17 88/19 88/23 93/12 104/5 105/11 109/1 118/24 119/3 119/7
**outlier [1]** 82/3
**outlined [1]** 87/23
**outside [3]** 105/24 107/3 108/9
**outweighs [2]** 43/9 53/7
**over [13]** 4/17 5/6 5/19 6/13 6/17 6/19 7/17 52/11 61/25 65/24 66/1 77/14 92/14
**overall [1]** 67/8
**overbear [1]** 66/4
**overruled [1]** 33/17
**own [5]** 71/13 81/6 105/2 107/13 107/15
**owner [1]** 94/24
**ownership [2]** 68/11 81/15
**owning [1]** 68/8

**P**

**p.m [9]** 75/3 75/4 76/2 93/2 94/17 94/19 94/20 101/19 119/16
**page [7]** 22/5 44/8 44/9 44/12 44/14 64/17 120/9
**pages [5]** 44/7 44/9 50/22 84/15 87/1
**painkillers [1]** 62/17
**painstakingly [1]** 29/1
**pandemic [1]** 6/14
**panel [1]** 35/4
**Paper [19]** 12/17 15/6 15/10 16/2 16/3 16/17 16/18 19/1 19/6 44/7 44/8 50/22 51/16 73/23 76/7 76/20 91/16 91/16 91/21
**papers [2]** 35/13 59/9
**paraphrasing [1]** 38/20
**pardon [1]** 52/15
**Parker [15]** 22/12 22/13 22/20 22/23 22/23 37/16 37/17 39/11 41/17 42/14 44/14 46/8 50/23 76/17 77/11
**Parker's [1]** 24/14
**parole [1]** 52/13
**part [11]** 18/21 29/4 32/1 39/5 41/15 42/1 46/24 54/12 62/4 62/9 99/13
**partial [1]** 2/17
**partially [1]** 88/3
**participant [3]** 2/12 13/3 18/9
**participated [1]** 89/4
**particular [7]** 21/17 31/6 62/16 103/19 105/20 112/9 113/10
**particularly [1]** 68/20
**parties [3]** 2/7 2/14 31/2
**party [6]** 2/12 64/5 74/7 85/15 85/16

102/2
**past [14]** 7/17 31/7 53/14 105/12 106/22 107/3 107/6 107/11 107/17 107/24 109/11 109/14 109/14 118/21
**path [1]** 65/16
**PAUL [2]** 1/15 3/9
**peaceful [1]** 71/21
**peacefulness [1]** 71/14
**penal [1]** 20/3
**penalties [2]** 16/1 91/16
**penalty [1]** 11/25
**pending [2]** 12/10 56/3
**people [16]** 3/2 10/3 11/5 18/19 21/2 24/15 26/1 26/13 26/24 27/5 27/7 29/14 30/1 40/20 61/23 69/21
**per [1]** 116/25
**perceived [2]** 31/14 103/1
**percent [1]** 83/16
**perception [4]** 26/9 26/11 27/5 88/9
**perceptions [1]** 27/7
**Percocet [8]** 59/16 59/20 60/9 61/11 61/13 61/20 62/18 62/24
**Percocets [1]** 62/6
**Perfect [1]** 92/16
**perfectly [2]** 31/19 33/18
**period [6]** 84/17 84/17 84/23 94/14 110/23 117/23
**periodically [1]** 10/3
**permit [1]** 13/11
**permitted [5]** 13/1 13/16 16/6 80/8 103/12
**person [11]** 42/4 42/23 50/24 71/21 93/9 93/11 93/12 95/5 100/4 106/9 106/11
**personal [1]** 19/21
**personally [2]** 72/12 72/15
**phone [12]** 18/9 25/10 39/12 70/2 93/1 94/15 99/21 100/12 100/23 101/6 105/15 114/2
**phone's [1]** 99/22
**photocopy [1]** 6/21
**phrase [1]** 21/6
**phrased [1]** 46/25
**phrases [1]** 15/9
**physical [1]** 66/1
**pick [7]** 10/24 11/6 32/16 69/25 94/19 104/5 117/19
**picked [3]** 9/23 10/7 70/2
**piece [5]** 29/1 30/14 30/21 39/2 99/11
**pieces [1]** 29/25
**pills [2]** 107/13 107/15
**pinpoint [1]** 100/17
**place [2]** 68/22 93/2
**placed [1]** 64/1
**plain [1]** 109/14
**Plaintiff [2]** 1/4 1/14
**plan [5]** 35/19 36/19 39/14 65/19 94/7
**planning [1]** 40/15

**P**

**play [13]** 78/4 78/11 78/11 78/18 80/4 80/13 89/23 90/19 90/21 91/8 103/21 114/19 114/20
**played [2]** 90/19 91/4
**playing [1]** 90/13
**plays [6]** 11/6 36/7 36/11 36/16 50/2 51/8
**plea [3]** 86/6 86/8 86/9
**pleading [1]** 66/11
**pleadings [2]** 60/5 98/18
**please [1]** 3/7
**pled [1]** 58/20
**plenty [1]** 117/9
**plexiglass [3]** 2/23 2/23 117/1
**Plus [1]** 44/10
**point [79]** 8/9 8/9 8/22 14/4 14/10 14/22 15/18 15/21 16/9 16/12 17/1 20/6 21/25 23/20 27/17 28/9 28/15 28/18 29/5 30/13 30/25 31/17 31/25 34/9 34/10 35/21 36/17 41/9 42/11 44/21 48/16 48/19 49/20 50/10 51/5 53/8 53/19 54/9 55/4 57/2 60/5 61/19 64/6 64/7 64/15 64/20 65/25 66/4 66/22 68/12 73/5 74/21 77/4 77/20 79/16 79/20 80/7 80/11 80/12 88/13 88/14 89/16 91/24 98/3 98/24 99/3 101/13 104/4 104/25 109/10 110/22 112/23 113/5 113/7 117/4 118/11 118/19 118/20 119/10
**pointed [5]** 53/24 57/20 70/15 72/20 72/24
**police [10]** 20/17 37/20 38/12 42/10 46/15 47/19 48/4 48/10 70/25 76/16
**policies [1]** 79/4
**policy [1]** 54/22
**Poo [3]** 96/25 97/5 105/15
**portion [8]** 67/13 83/23 90/18 90/21 90/25 91/4 91/6 103/5
**portions [8]** 78/18 80/4 80/14 89/22 90/5 92/9 92/18 104/5
**position [17]** 17/15 21/9 24/24 28/19 31/19 37/13 37/18 38/4 39/3 52/21 52/24 53/22 54/2 78/5 85/9 86/11 105/7
**positions [1]** 88/25
**positive [3]** 2/16 2/18 117/2
**possessed [1]** 69/4
**possessing [1]** 70/13
**possession [6]** 52/4 52/14 67/16 69/7 70/21 81/25
**possible [6]** 8/14 16/1 16/4 16/6 50/17 91/15
**possibly [1]** 8/6
**post [2]** 56/16 57/23
**posture [3]** 35/21 77/4 77/19
**potential [1]** 73/4
**Powell [4]** 93/11 93/14 93/14 93/17

**precautions [6]** 2/17 2/19 43/20 50/9 116/20 116/21
**preceding [1]** 97/7
**precise [1]** 56/25
**precisely [1]** 17/16
**preclude [13]** 15/8 15/15 40/20 46/18 51/2 73/22 73/24 76/5 76/8 87/22 89/13 91/20 103/6
**precluded [2]** 38/12 48/24
**predate [1]** 100/24
**predated [1]** 57/7
**prejudice [9]** 39/25 41/13 43/7 43/23 44/22 53/7 53/16 62/13 89/7
**prejudicial [2]** 62/15 68/20
**preliminary [1]** 5/5
**prepare [2]** 77/16 79/2
**prepared [5]** 22/10 49/20 49/23 49/24 105/7
**prepares [1]** 79/6
**preparing [1]** 79/24
**preponderance [1]** 102/1
**prerogative [1]** 105/1
**presence [1]** 6/25
**present [20]** 1/18 4/21 20/5 31/3 31/4 31/8 31/11 64/2 90/6 102/24 103/22 105/14 105/16 105/17 108/8 108/19 108/24 110/14 110/19 110/23
**presentation [2]** 71/13 71/19
**presented [4]** 32/19 65/9 71/17 86/15
**presenting [1]** 73/19
**preserve [3]** 6/3 7/4 119/5
**preserved [4]** 5/25 12/12 87/25 90/24
**preserves [1]** 63/14
**presiding [1]** 2/10
**presumably [1]** 46/9
**presume [1]** 118/1
**pretrial [1]** 9/9
**pretty [6]** 10/16 54/13 82/3 113/11 114/22 116/23
**prevail [1]** 86/23
**previous [1]** 21/4
**previously [5]** 13/22 20/13 58/19 76/18 114/18
**prior [18]** 15/6 21/6 37/1 51/15 52/2 52/19 52/20 53/21 54/24 55/7 55/10 55/24 58/13 63/18 67/15 68/24 71/6 72/22
**prison [1]** 58/15
**privy [1]** 19/10
**probably [4]** 10/23 56/5 74/4 92/13
**probative [4]** 41/12 43/4 53/7 62/15
**problem [4]** 7/7 7/9 67/1 90/16
**problematic [1]** 54/10
**procedural [2]** 77/4 77/19
**procedure [2]** 5/10 9/24
**proceed [2]** 6/7 70/6
**proceeding [2]** 2/4 11/10 11/15
**proceedings [1]** 120/8

**process [3]** 10/2 41/15 79/14
**produce [1]** 56/10
**proffer [17]** 17/22 18/2 21/14 23/21 24/7 24/7 24/12 30/17 49/20 49/21 50/6 50/13 50/15 60/14 62/17 65/14 102/5
**proffered [7]** 17/24 23/11 34/1 34/3 67/11 93/18 102/15
**proffering [2]** 28/10 97/4
**project [1]** 10/5
**projecting [1]** 9/18
**projection [2]** 8/9 8/22
**promised [1]** 9/4
**prongs [1]** 102/16
**proof [1]** 55/7 98/25 98/25
**propensity [1]** 71/20
**proper [3]** 37/23 54/25 114/10
**proposal [1]** 8/24
**propose [2]** 17/10 51/17
**proposing [1]** 24/1
**proposition [1]** 85/21
**prosecution [1]** 27/23
**prosecutor [3]** 28/1 40/16 40/18
**protected [2]** 86/21 86/22
**protestations [1]** 66/2
**prove [5]** 39/18 52/4 98/16 100/1 101/2
**provide [6]** 2/8 25/7 41/25 85/14 115/11 115/14
**provided [25]** 5/21 16/20 22/19 23/19 25/5 25/21 33/1 35/16 37/24 37/25 38/2 41/16 41/20 41/21 56/9 57/19 58/21 59/18 64/9 65/7 67/17 72/11 72/14 92/19 116/11
**provides [5]** 11/23 71/14 93/13 93/25 101/21
**providing [4]** 23/22 31/2 34/13 93/5
**public [1]** 2/9
**pull [1]** 2/13 2/25 3/21
**punishable [1]** 58/14
**purposes [3]** 87/10 91/3 93/11
**PURPURA [26]** 1/17 4/6 4/18 8/21 9/13 9/22 10/15 29/22 51/24 77/20 77/24 79/20 80/19 83/25 86/13 89/19 90/9 90/12 91/2 92/1 97/17 105/5 113/8 115/1 115/9 116/1
**Purpura's [1]** 35/1
**pursuant [1]** 120/6
**pursue [1]** 42/10
**push [1]** 8/17
**put [24]** 7/15 8/17 21/1 24/1 25/6 32/5 36/12 48/23 52/18 55/23 60/13 66/11 68/7 68/18 69/2 70/21 80/20 81/13 82/18 95/1 95/2 95/2 95/3 101/10
**puts [3]** 27/3 69/1 70/5
**putting [2]** 49/15 68/4

**Q**

**quarantined [1]** 2/19
**question [23]** 8/5 10/8 20/21 44/17

# Q

**question... [19]** 45/15 46/3 46/11 46/13 46/18 46/25 58/11 62/13 65/8 71/21 71/23 73/9 82/25 83/1 86/23 101/16 111/10 114/14 114/16
**questionable [1]** 41/11
**questioned [1]** 85/5
**questioning [4]** 39/25 41/12 44/13 51/4
**questions [19]** 5/24 6/1 6/10 6/11 6/23 6/23 9/23 11/8 13/19 13/20 37/22 47/18 78/12 79/12 80/13 83/9 84/15 84/24 119/4
**quick [1]** 3/5
**quick-talking [1]** 3/5
**quicker [1]** 10/1
**quickly [1]** 10/16
**quite [5]** 28/8 71/22 84/1 84/6 84/19
**quote [3]** 102/23 102/24 112/5

# R

**raise [7]** 7/8 16/23 37/19 49/3 68/25 103/20 110/12
**raised [8]** 14/7 14/8 14/12 14/16 35/10 60/4 64/14 72/6
**raises [1]** 36/20
**raising [1]** 36/20
**ranking [1]** 18/13
**rape [13]** 59/7 59/8 65/11 66/10 66/14 66/14 66/17 66/19 66/19 66/19 66/21 67/3 67/9
**raped [4]** 59/3 65/8 66/1 72/22
**raping [1]** 65/3
**rather [1]** 77/8
**rationale [1]** 43/4
**RDB [2]** 1/4 2/3
**RDB-20-139 [2]** 1/4 2/3
**reaction [1]** 61/13
**read [5]** 57/12 78/4 80/1 112/4 116/4
**readily [2]** 103/15 103/19
**reading [1]** 23/10
**ready [4]** 9/12 36/24 74/23 104/3
**realistic [1]** 7/22
**realized [1]** 65/20
**really [32]** 9/7 14/7 21/9 23/19 29/18 30/20 38/11 43/3 43/9 52/22 55/3 56/14 57/13 59/10 62/3 66/12 82/16 82/19 83/5 83/8 83/17 85/8 85/22 86/12 87/20 105/9 110/13 116/6 116/6 116/25 117/16 117/22
**Realtime [1]** 120/5
**rear [1]** 54/7
**reason [12]** 3/20 4/25 5/2 7/4 54/10 61/24 66/3 81/2 109/11 110/14 110/20 112/15
**reasonable [2]** 8/22 8/24
**reasonably [2]** 10/4 13/9

**reasons [11]** 23/5 32/19 38/21 40/23 48/3 66/11 68/3 87/23 89/13 103/3 114/6
**rebut [1]** 35/17
**rebuttal [1]** 36/12
**recall [6]** 10/15 21/18 25/6 54/16 78/25 79/15
**received [3]** 13/17 41/17 113/19
**recently [2]** 58/9 111/5
**recess [2]** 75/2 75/3
**recognize [1]** 7/17
**recognized [1]** 42/11
**recommendation [1]** 35/2
**record [21]** 2/22 3/7 6/2 9/15 9/16 12/12 18/24 45/21 49/25 50/22 55/23 63/13 71/25 83/15 86/21 86/23 87/24 90/24 90/25 91/2 111/2
**recorded [3]** 64/3 76/16 89/3
**recording [1]** 77/9
**recordings [3]** 63/21 63/24 64/1
**records [3]** 94/16 99/21 100/13
**red [1]** 8/18
**reference [8]** 12/19 19/8 21/15 26/24 91/15 101/21 106/15 114/5
**referenced [2]** 23/7 27/14
**references [3]** 15/25 32/25 40/20
**referred [2]** 24/16 67/9
**reflect [4]** 2/22 21/18 87/24 94/16
**reflected [3]** 23/4 24/14 102/17
**refuses [1]** 20/10
**refuted [1]** 54/17
**regard [4]** 14/7 48/14 55/23 89/8
**regarding [2]** 52/23 70/7
**regardless [3]** 40/1 46/25 98/11
**Registered [1]** 120/4
**regular [3]** 27/16 62/7 85/14
**regulations [1]** 120/10
**reiterate [2]** 35/19 37/13
**reject [1]** 47/24
**related [3]** 37/9 37/10 58/24
**relates [1]** 76/14
**relating [3]** 11/20 23/22 31/2
**relation [1]** 60/20
**relationship [7]** 58/20 58/23 59/6 65/10 65/11 83/18 102/14
**relative [1]** 69/15
**relatives [3]** 60/10 69/14 70/14
**relay [1]** 44/4
**release [1]** 52/12
**released [1]** 64/20
**relevance [4]** 39/24 41/5 43/23 44/21
**relevant [16]** 40/9 40/10 53/2 61/12 62/12 64/21 66/3 66/8 68/15 68/19 82/9 82/15 82/17 87/13 106/25 107/14
**reliability [1]** 24/2
**rely [3]** 16/19 97/24 98/16
**remain [1]** 12/12
**remaining [1]** 11/15 13/1

**remains [1]** 13/10
**remedy [1]** 42/2
**remember [2]** 42/24 115/20
**render [1]** 85/17
**repeat [1]** 6/20
**reported [2]** 1/23 120/8
**reporter [7]** 1/24 3/4 51/20 120/1 120/4 120/5 120/16
**representation [1]** 105/3
**represented [1]** 44/7
**representing [1]** 40/13
**request [3]** 16/16 16/16 66/20
**requested [3]** 6/1 6/3 6/5
**requesting [1]** 52/1
**requests [1]** 5/23
**require [1]** 104/24
**required [3]** 12/1 56/2 88/4
**requirement [1]** 102/13
**requires [2]** 31/3 65/12
**resolved [1]** 59/11
**respect [31]** 6/6 9/7 12/23 12/24 13/14 28/17 34/6 35/12 36/9 44/6 44/18 46/14 49/5 56/2 66/5 67/18 68/8 68/10 70/9 79/18 85/9 88/18 90/14 91/5 91/15 92/17 92/21 93/1 95/14 96/16 99/6
**Respectfully [1]** 29/20
**respond [4]** 47/11 59/10 71/5 93/20
**responded [2]** 59/24 86/20
**response [7]** 16/17 27/14 28/21 56/6 78/16 80/14 112/11
**responses [3]** 68/6 80/8 80/15
**rest [2]** 8/12 106/25
**rested [1]** 38/18
**rests [1]** 39/17
**result [3]** 30/19 42/4 61/8
**retrofitted [3]** 2/23 116/23 116/24
**returned [1]** 11/13
**reverse [2]** 41/19 45/12
**reversed [3]** 37/25 38/8 41/18
**review [1]** 104/9
**reviewed [1]** 101/18
**reviewing [2]** 59/9 116/7
**revisit [2]** 38/16 38/19
**RICHARD [1]** 1/11
**RICO [1]** 27/16
**right [64]** 4/25 5/17 7/7 9/1 10/6 11/9 13/25 14/15 16/15 17/5 22/6 22/9 23/1 25/20 26/7 29/3 35/8 38/22 40/13 42/1 45/5 47/2 48/18 50/19 51/13 51/21 51/23 52/8 54/19 54/19 54/23 57/13 57/18 58/5 59/13 60/7 60/25 61/23 69/10 69/16 70/20 70/24 77/13 78/8 78/20 79/17 86/4 87/25 90/3 90/7 90/20 91/9 91/9 91/24 104/2 108/4 108/9 109/22 111/15 111/20 111/24 112/1 113/1
**rights [3]** 7/4 63/14 119/5
**ripe [2]** 71/3 103/20

# R

**rise [1]** 119/15
**risk [5]** 39/25 40/1 41/12 41/13 43/7
**Rivera [8]** 38/5 38/6 38/7 38/11 40/6
41/7 41/11 41/11
**RMR [2]** 1/23 120/16
**road [2]** 38/22 71/18
**rob [3]** 94/3 94/7 99/16
**robbed [1]** 73/1
**robbery [6]** 81/23 95/21 96/7 99/5
100/19 100/22
**ROBERT [3]** 1/19 4/8 4/14
**rodeo [1]** 113/11
**roll [1]** 61/25
**rolled [1]** 10/3
**Ronda [5]** 1/23 3/3 51/19 120/4 120/16
**room [2]** 9/3 118/22
**round [2]** 33/16 33/16
**rule [47]** 5/7 5/9 12/24 24/5 26/21
27/22 27/23 28/3 28/8 31/2 31/11 43/22
44/22 52/11 52/25 59/18 62/12 62/13
62/25 64/4 70/17 71/12 74/6 74/7 74/8
74/12 78/23 78/23 80/12 81/3 84/8 84/9
85/13 85/17 89/9 90/10 101/20 101/22
101/25 102/25 107/4 107/5 107/8 112/5
112/12 112/21 113/13
**ruled [4]** 44/25 47/3 50/12 63/15
**rules [12]** 5/9 12/25 30/11 74/8 84/7
85/13 85/14 85/18 89/10 113/12 114/23
116/20
**ruling [10]** 7/2 7/10 32/18 38/25 47/22
73/16 90/9 90/9 104/1 113/2
**rulings [2]** 91/12 119/4
**run [1]** 117/22
**runs [1]** 85/10
**rush [1]** 11/5
**Russell [2]** 5/7 5/17

# S

**sad [1]** 62/3
**safest [1]** 63/3
**said [49]** 7/13 9/1 10/23 24/2 27/13
32/5 32/17 33/19 38/19 38/21 38/24
39/12 40/18 40/21 42/21 42/23 44/4
45/4 47/13 49/7 51/9 52/17 53/20 54/8
54/18 57/18 57/22 63/20 65/21 65/23
81/11 82/25 83/1 83/3 87/6 94/3 94/5
98/1 99/18 100/18 100/21 106/23 108/6
110/11 110/20 110/22 110/24 112/11
117/25
**same [13]** 11/17 17/4 41/6 47/21 64/17
70/1 73/16 81/21 84/16 85/16 106/9
106/11 106/19
**satisfied [2]** 102/5 102/14
**satisfy [1]** 30/6
**save [1]** 104/1
**saw [12]** 25/8 25/11 25/22 28/17 29/7

29/12 30/14 31/6 32/6 34/2 47/12 70/15
**say [77]** 11/6 19/9 19/25 23/13 25/9
25/11 26/23 29/24 33/13 39/10 43/4
43/4 43/11 46/6 46/10 46/19 47/20 48/7
48/7 48/8 48/10 49/22 50/6 50/13 54/6
54/10 61/25 61/25 62/2 62/4 66/25
68/25 69/25 70/1 70/7 70/12 70/15
73/11 78/17 80/3 80/5 81/1 81/1 81/19
81/19 81/19 81/20 82/2 82/14 83/11
83/14 83/17 83/24 84/13 93/13 94/13
94/24 94/25 95/20 96/21 98/19 100/20
103/18 104/13 105/8 106/10 106/22
107/14 108/5 109/8 110/14 113/14
114/10 114/18 115/4 115/8 117/23
**saying [28]** 18/21 21/10 26/4 26/17
29/21 30/14 31/15 33/22 38/8 40/10
40/16 45/1 47/9 64/13 66/16 68/1 80/4
96/23 97/2 98/11 98/22 100/8 105/20
105/22 107/2 108/9 110/5 110/16
**says [21]** 20/18 23/14 23/15 24/15
33/20 36/5 55/24 69/19 81/4 82/6 83/20
90/4 93/17 93/21 94/10 94/11 96/17
96/19 99/18 107/5 112/21
**scared [2]** 73/14 73/15
**scenario [2]** 20/23 46/23
**schedule [1]** 7/22
**se [1]** 116/25
**search [1]** 81/9
**seated [4]** 2/6 3/23 4/16 5/4
**second [18]** 8/5 11/12 11/17 19/24
36/24 37/6 37/24 38/2 38/6 56/1 58/21
71/7 78/9 84/16 84/25 98/22 110/4
110/10
**second-degree [1]** 71/7
**secondarily [2]** 21/13 44/22
**secondhand [1]** 33/21
**secondly [1]** 53/1
**sections [1]** 78/10
**see [47]** 3/12 3/15 3/18 4/18 4/22 8/17
10/14 11/6 19/20 25/8 25/12 25/22 26/2
26/10 26/25 28/18 30/2 30/4 30/4 30/15
32/7 32/11 32/12 33/12 34/2 34/16
36/11 36/16 39/22 46/17 47/13 50/2
51/8 58/1 58/1 58/17 59/13 71/4 71/17
73/17 73/20 84/19 101/5 105/1 106/15
114/7 118/3
**seek [6]** 13/6 27/16 68/2 69/2 71/10
104/25
**seeking [10]** 11/24 27/15 44/17 56/15
71/16 84/4 92/17 97/14 103/6 103/23
**seeking to [1]** 103/23
**seeks [2]** 7/1 7/5
**seems [4]** 29/10 62/11 62/14 85/19
**seen [11]** 25/15 26/2 26/5 26/6 26/10
26/12 26/24 29/12 30/2 31/5 47/13
**selection [1]** 9/24
**self [13]** 15/10 73/22 73/25 76/6 76/9
78/18 80/9 81/16 85/15 85/21 87/22

89/14 90/10
**self-serving [13]** 15/10 73/22 73/25
76/6 76/9 78/18 80/9 81/16 85/15 85/21
87/22 89/14 90/10
**sell [2]** 69/21 107/13
**selling [1]** 107/15
**sending [1]** 42/19
**sense [20]** 11/5 20/5 29/18 31/3 31/4
31/8 31/11 32/22 84/14 92/13 102/24
105/14 105/16 105/17 108/8 108/19
108/24 110/14 110/19 110/23
**sensitive [1]** 118/25
**sentence [6]** 11/23 11/25 12/9 16/5
16/7 16/7
**separate [2]** 97/25 98/20
**September [1]** 70/23
**sequence [1]** 85/3
**series [6]** 12/10 12/12 35/9 56/4 73/3
104/8
**serving [13]** 15/10 73/22 73/25 76/6
76/9 78/18 80/9 81/16 85/15 85/21
87/22 89/14 90/10
**SESSION [1]** 76/1
**sets [1]** 89/10
**seven [1]** 72/19
**seven-year-old [1]** 72/19
**several [4]** 6/15 53/23 53/24 73/2
**sex [2]** 61/16 67/6
**sexual [9]** 58/20 58/23 59/6 65/9 66/14
66/18 66/20 67/7 67/10
**shall [1]** 2/8
**shape [1]** 12/8
**she [66]** 25/22 26/2 26/6 26/10 26/24
26/24 27/14 28/11 28/17 29/12 30/2
30/4 30/14 31/6 32/6 32/12 34/2 47/12
47/13 58/18 58/20 59/3 65/20 65/20
65/22 65/24 66/20 66/25 66/25 67/6
67/9 69/14 69/19 69/21 93/21 93/23
94/6 96/17 96/18 96/19 102/23 102/25
103/2 105/12 105/15 105/23 106/3
106/5 106/22 106/23 107/2 107/11
107/23 108/16 108/18 110/16 110/20
110/20 110/22 110/24 112/11 112/13
112/14 112/15 112/18 114/19
**she's [24]** 58/19 66/9 69/22 96/23 97/2
105/22 105/25 106/5 106/9 106/21
107/2 107/10 107/14 107/16 107/22
107/24 108/8 108/15 109/12 109/12
110/18 112/14 112/17 114/5
**sheet [1]** 6/6
**sheets [2]** 5/22 6/7
**shooter [1]** 42/5
**short [1]** 84/23
**shortcut [1]** 77/25
**shot [1]** 53/17
**should [31]** 14/17 26/6 26/10 29/12
30/2 30/4 32/14 32/20 34/2 36/1 38/9
39/5 47/13 52/15 52/25 55/8 59/21

**S**

**should...** **[14]** 61/19 62/11 62/18 62/20 63/13 80/8 80/12 97/10 103/12 104/21 114/16 115/7 116/1 116/3
**shouldn't [4]** 55/25 110/3 114/3 116/3
**show [8]** 25/13 97/7 97/8 97/23 98/20 99/21 101/5 102/1
**shown [1]** 92/25
**shows [1]** 61/24
**shut [4]** 35/2 38/1 94/10 118/23
**sic [1]** 76/23
**sick [1]** 65/22
**side [2]** 10/12 10/13
**significant [5]** 23/25 27/17 41/20 41/22 42/3
**similarly [1]** 81/22
**simple [1]** 55/14
**simply [10]** 46/2 47/3 48/2 88/6 93/1 99/21 101/8 107/18 108/7 116/19
**sir [6]** 4/23 4/23 4/24 12/6 92/3 111/25
**sit [3]** 4/10 4/11 7/23
**site [4]** 16/20 70/5 94/23 99/21
**sitting [2]** 69/20 93/22
**situations [1]** 79/5
**six [2]** 11/16 12/13
**slash [1]** 24/17
**slight [1]** 77/6
**smell [1]** 19/20
**smiling [1]** 74/12
**Smith [2]** 102/9 102/12
**so [205]**
**solicit [1]** 73/7
**soliciting [1]** 82/10
**some [45]** 7/4 7/9 12/13 16/23 19/8 20/18 23/2 23/21 23/23 29/24 32/3 33/25 35/12 40/10 41/6 48/6 48/8 50/15 52/13 53/13 60/10 61/12 62/5 62/6 62/20 63/25 64/20 67/13 68/8 68/8 70/10 86/1 96/23 96/24 97/2 99/11 104/4 105/12 109/10 110/22 114/5 114/14 115/14 116/20 117/11
**somebody [9]** 25/10 26/9 27/5 31/5 39/18 94/8 107/15 107/16 108/6
**somebody's [1]** 31/5
**somehow [3]** 9/3 23/16 99/13
**someone [9]** 25/1 25/1 26/17 33/19 45/20 45/22 53/25 106/6 108/6
**something [36]** 25/8 25/11 25/15 25/22 26/2 26/5 26/10 26/12 26/24 27/13 27/15 28/17 29/7 29/12 30/2 30/4 30/14 31/5 31/7 32/6 32/11 32/17 34/2 36/5 39/16 47/12 71/2 89/6 100/23 105/22 106/22 106/23 107/2 115/2 117/14
**sometime [2]** 97/4 100/20
**sometimes [2]** 28/23 114/13
**somewhat [2]** 14/6 85/7

**son [22]** 18/16 18/22 19/5 19/12 19/18 21/15 24/17 24/21 25/3 25/8 25/15 25/19 25/23 32/2 33/22 33/24 43/18 44/19 46/6 46/24 47/6 48/9 50/14
**sooner [1]** 116/8
**sorry [7]** 37/3 69/5 72/14 77/10 111/18 113/22 115/6
**sort [12]** 13/25 24/3 26/8 27/25 32/3 37/6 43/1 62/7 82/2 82/12 82/22 86/11
**sought [3]** 85/16 102/3 103/21
**sound [3]** 8/21 61/14 117/5
**sounds [1]** 8/14
**speak [4]** 3/3 5/1 5/2 63/5
**speaking [7]** 2/11 3/2 3/14 3/20 96/18 104/12 106/9
**special [6]** 1/18 1/19 11/19 20/18 20/19 76/22
**specific [8]** 20/4 21/15 32/6 32/21 49/20 59/2 109/1 110/12
**specifically [11]** 17/20 20/1 50/9 50/14 57/8 95/18 95/23 98/19 99/15 103/9 112/11
**specificity [4]** 23/21 24/2 51/6 62/20
**specifics [1]** 47/12
**specified [1]** 62/18
**speculation [2]** 22/1 23/11
**spent [1]** 49/18
**splitting [3]** 66/12 110/13 112/13
**spoke [1]** 103/2
**spread [1]** 88/11
**squarely [1]** 107/3
**Sr [1]** 61/1
**stand [4]** 10/2 81/17 81/20 99/1
**standard [1]** 37/18
**standing [2]** 2/8 40/15
**stands [3]** 85/20 119/14 119/15
**start [8]** 8/3 9/8 10/25 74/17 74/19 75/1 79/10 97/18
**started [2]** 10/5 94/16
**starts [1]** 94/18
**state [25]** 31/8 40/19 40/19 40/21 41/25 60/11 61/8 61/15 105/16 106/24 107/4 108/11 108/12 108/13 108/14 108/16 108/17 108/20 108/20 108/22 109/9 109/9 109/10 112/9 112/10
**stated [2]** 31/23 32/8
**statement [74]** 10/12 14/18 14/20 16/21 19/14 19/19 19/19 19/22 21/9 24/6 24/7 24/10 24/19 24/24 25/3 25/12 25/14 26/20 28/12 28/17 28/24 29/2 29/7 29/13 31/12 31/21 31/24 32/8 32/19 38/16 38/17 39/18 43/21 44/15 45/2 45/22 51/1 54/15 57/23 76/19 76/21 76/22 77/7 80/23 81/3 81/11 81/14 82/21 83/11 83/13 83/17 87/3 87/3 87/4 88/4 88/25 89/3 90/13 90/13 90/15 90/18 91/1 91/4 91/7 93/25 95/4 97/2 97/7 97/24 97/25 98/13 108/21

**108/21 108/23**
**statements [65]** 10/9 10/13 10/25 12/17 13/5 14/17 15/10 16/22 17/3 17/18 17/19 18/6 20/1 20/2 20/5 27/19 27/20 28/6 28/7 28/22 28/25 50/18 63/21 64/3 64/5 68/10 70/25 73/23 73/25 74/6 76/6 76/10 77/1 77/2 81/6 82/11 84/2 84/3 85/6 85/15 85/21 87/2 87/22 89/1 89/15 90/2 90/10 92/21 92/22 96/23 97/22 98/15 98/16 100/23 101/6 101/22 102/3 102/15 105/9 105/11 105/11 107/5 107/6 112/6 112/8
**states [19]** 1/1 1/3 2/2 11/19 11/22 27/24 31/12 55/5 56/3 58/9 81/8 81/22 85/11 85/25 102/7 102/8 102/8 120/5 120/11
**status [2]** 2/14 2/24
**statute [2]** 12/2 12/9
**statutorily [1]** 12/1
**stay [2]** 43/10 43/17
**staying [1]** 118/19
**stenographically [1]** 120/8
**stenographically-reported [1]** 120/8
**stenotype [1]** 1/22
**step [11]** 24/4 24/4 26/8 26/8 26/23 45/19 45/19 55/3 55/3 55/25 56/1
**steps [5]** 39/3 46/14 46/16 47/15 63/1
**still [16]** 3/25 12/22 13/1 13/8 13/10 14/1 14/22 35/11 42/25 58/19 60/1 78/22 111/5 111/7 111/12 111/19
**stipulate [2]** 52/5 55/6
**stipulating [1]** 52/7
**stipulation [9]** 55/9 55/15 55/17 56/2 58/16 67/20 67/21 68/2 71/8
**stolen [2]** 73/2 81/23
**stood [3]** 26/18 40/21 105/24
**stop [1]** 50/7
**stopped [1]** 41/9
**story [3]** 28/20 61/24 62/10
**straight [1]** 107/11
**strategic [1]** 38/21
**strategy [1]** 105/2
**Street [1]** 1/24
**stretch [1]** 45/24
**stricken [1]** 7/3
**strictly [1]** 116/20
**strike [3]** 6/24 7/1 7/5
**strong [1]** 8/8
**Stroupe [1]** 98/14
**stupid [1]** 94/7
**sub [2]** 13/14 37/6
**sub-issue [2]** 13/14 37/6
**subject [4]** 31/10 42/4 45/6 81/18
**submissions [1]** 104/10
**submit [1]** 86/25
**subsection [1]** 112/7
**subsequent [1]** 81/11
**substance [2]** 20/23 94/5

**S**

**substances [1]** 61/22
**substantive [1]** 11/16
**such [5]** 20/14 36/8 46/7 63/5 97/23
**suffices [1]** 102/14
**sufficient [1]** 36/12
**suggest [7]** 28/3 38/3 62/18 66/10
82/22 100/17 101/4
**suggesting [1]** 82/13
**suggestion [4]** 29/8 29/9 55/2 67/6
**sum [1]** 20/23
**summarize [2]** 83/14 88/25
**summarized [3]** 50/24 77/4 77/19
**summarizes [1]** 87/2
**summary [1]** 13/9
**superseding [6]** 11/11 11/12 11/13
11/17 11/18 56/21
**supplement [1]** 87/9
**support [1]** 38/4
**supports [1]** 86/10
**supposed [7]** 25/8 25/22 26/2 26/24
28/18 32/7 32/12
**Suppress [1]** 76/19
**Supreme [4]** 54/11 54/18 55/5 102/10
**sure [24]** 8/20 9/14 29/2 37/4 37/8
37/12 43/20 47/15 62/22 65/17 67/19
78/2 78/2 78/21 80/20 83/16 92/10
112/3 114/9 114/21 115/15 116/23
117/17 118/6
**suspects [3]** 37/21 37/22 38/10
**sustained [1]** 91/5
**swampy [1]** 113/13
**systems [1]** 2/20

**T**

**table [1]** 4/10
**take [32]** 5/8 5/18 9/16 9/25 10/24 35/1
39/4 40/2 43/20 47/15 51/18 51/22 63/1
65/25 66/4 66/13 69/22 69/23 74/5
74/17 74/18 74/25 79/11 87/15 93/24
100/1 101/1 101/9 110/11 110/15
110/15 116/21
**taken [6]** 18/25 24/24 46/14 75/3 88/5
88/23
**takes [3]** 20/10 65/12 73/21
**taking [4]** 27/7 62/5 62/24 118/24
**talk [4]** 25/18 60/10 83/21 83/23
**talked [2]** 49/21 53/23
**talking [21]** 3/5 20/6 21/21 22/7 22/8
44/1 44/8 44/12 55/3 102/23 105/14
106/5 106/21 107/14 107/17 107/22
107/24 109/12 110/17 111/13 116/17
**talks [3]** 27/4 95/4 107/23
**tape [3]** 79/7 79/10 79/13
**tapes [2]** 79/1 79/12
**target [3]** 7/15 7/18 117/18
**Tariek [3]** 93/11 93/14 93/17

**Tarrell [2]** 93/14 93/14
**teasing [4]** 27/25 59/13 74/16 116/5
**technical [1]** 14/6
**teed [1]** 15/24
**telephone [7]** 13/3 18/3 18/14 19/10
29/15 30/1 103/2
**tell [9]** 9/2 22/3 28/21 36/3 36/14 54/2
107/12 115/16 117/19
**telling [5]** 54/5 105/25 107/10 109/12
110/24
**tenth [1]** 8/2
**TERESA [2]** 1/16 4/1
**term [1]** 79/3
**terms [51]** 9/18 16/6 17/24 19/15 21/10
24/5 25/25 25/25 26/20 28/9 29/14
31/19 31/20 31/22 32/14 34/8 37/13
43/23 43/23 44/11 44/20 46/8 48/5
48/22 50/12 55/3 59/4 59/6 60/8 61/12
62/16 62/18 62/20 62/25 63/1 65/15
69/6 74/5 74/6 88/3 89/24 89/25 90/1
90/1 90/10 95/15 96/3 105/2 106/2
117/18 118/21
**Terrill [1]** 61/1
**tested [5]** 2/16 2/17 2/19 117/2 117/3
**testified [4]** 13/22 20/13 41/3 93/3
**testifies [8]** 13/10 17/25 18/1 18/20
20/3 20/4 30/17 68/13
**testify [22]** 13/2 13/5 18/4 19/17 19/23
20/10 24/13 29/23 44/25 45/10 45/16
51/7 57/20 60/16 60/18 61/6 65/18 66/9
70/1 72/25 80/24 94/2
**testifying [2]** 78/13 82/25
**testimony [23]** 13/12 13/15 17/11
17/22 18/2 18/20 20/25 20/25 21/1 21/5
21/6 27/9 27/14 35/22 36/8 37/10 56/11
59/3 70/7 71/14 77/8 77/10 82/11
**testing [1]** 10/18
**than [17]** 1/1 31/20 52/6 52/9 54/4
54/5 56/23 58/15 59/12 62/15 74/17
77/8 95/10 99/7 116/12 116/22 117/9
**thank [43]** 3/8 4/5 4/20 5/3 5/17 5/18
8/11 21/22 21/25 34/18 36/22 39/8
48/20 49/14 66/6 68/4 77/22 77/22
80/19 80/21 83/25 87/16 90/23 92/8
92/16 97/6 97/9 97/12 97/18 101/11
101/12 103/10 109/16 109/22 109/22
112/1 113/1 113/6 114/23 115/5 118/13
119/9 119/14
**that [817]**
**That'll [1]** 15/3
**that's [144]**
**their [22]** 2/13 2/25 3/2 6/10 6/19 23/6
35/17 39/14 41/5 53/22 54/1 68/6 78/6
79/10 83/19 84/3 86/17 98/16 98/21
105/1 105/2 113/19
**theirs [1]** 90/6
**them [27]** 6/12 12/14 17/20 18/23
18/23 61/6 62/1 62/5 62/6 63/8 69/21

70/3 78/11 78/12 81/13 83/3 84/5 95/1
95/2 95/2 95/3 100/5 101/8 108/1
117/24 118/5 118/22
**themselves [3]** 3/7 97/22 100/16
**then [71]** 2/17 2/17 4/25 5/3 5/24 6/3
6/22 8/2 10/24 11/12 13/6 14/2 15/5
15/8 15/24 16/15 19/21 20/12 20/17
22/22 24/17 26/8 40/21 41/24 42/19
42/22 43/7 44/1 44/13 46/7 46/13 46/14
47/10 48/2 56/1 56/19 58/13 58/17 59/6
60/2 60/23 61/17 62/12 66/19 67/15
68/19 69/24 70/5 70/12 71/6 72/8 77/24
79/13 83/20 84/12 84/22 84/24 85/4
90/25 92/5 94/11 98/21 100/23 107/3
108/19 110/10 114/19 117/2 117/11
117/12 118/7
**there [140]**
**there's [77]** 6/24 12/8 13/11 13/13 16/7
16/8 19/8 20/22 20/25 21/3 21/9 21/17
22/1 23/11 23/20 25/4 26/19 26/23 27/6
27/9 27/24 27/25 28/5 28/22 29/5 32/18
32/25 33/24 34/5 34/20 36/8 46/11
46/12 47/8 48/2 48/15 49/2 55/4 55/9
55/17 58/25 62/13 62/14 65/8 67/21
68/8 69/20 71/19 82/6 83/5 88/14 88/15
88/21 88/22 89/7 89/21 93/22 94/23
95/1 95/5 95/10 97/23 99/4 99/6 99/9
99/12 99/18 101/3 102/16 103/5 104/6
104/17 106/15 108/7 108/7 109/14
117/14
**thereafter [5]** 57/14 57/15 57/15 57/21
96/14
**thereafter and [1]** 57/21
**thereby [1]** 25/17
**therefore [3]** 25/23 26/4 98/14
**therein [23]** 14/21 19/15 21/9 24/8
24/11 24/20 24/25 26/17 26/21 28/13
29/13 30/1 30/16 30/23 31/21 33/19
34/4 43/12 43/22 45/23 47/9 47/14
47/17
**thereof [2]** 61/8 65/15
**these [63]** 6/7 22/3 22/4 22/10 22/11
22/24 23/4 23/8 23/10 23/18 24/2 27/3
32/3 32/23 33/23 37/22 38/24 39/22
40/20 44/2 44/6 45/2 46/9 46/10 52/19
52/20 54/2 54/5 54/8 54/24 59/11 62/4
63/8 63/14 63/15 68/24 71/15 71/21
74/11 79/4 84/2 84/14 98/7 99/7 100/10
100/12 101/17 102/15 103/11 104/7
104/11 104/20 105/9 105/11 106/3
107/19 108/19 110/2 110/6 111/1 111/5
114/2 119/5
**they [101]** 3/1 3/1 3/1 5/19 5/24 6/10
6/18 8/14 14/13 14/16 16/23 17/15
22/14 22/17 23/5 25/6 25/8 25/11 25/11
25/11 25/16 25/23 30/4 35/18 36/12
37/25 38/2 39/4 39/10 40/21 40/25 41/9
41/20 42/12 42/18 42/22 43/6 44/1

**T**

**they...** **[63]** 44/10 44/11 45/15 46/25 51/3 51/4 52/18 52/19 52/23 52/24 53/5 53/21 54/8 57/19 57/19 61/16 61/23 64/4 64/17 66/19 68/7 69/1 70/4 70/6 73/8 73/11 73/15 78/5 78/6 79/10 79/10 79/11 80/12 81/9 82/22 84/7 90/6 91/7 92/22 93/15 94/17 95/2 95/3 97/7 100/24 101/4 101/9 101/17 102/18 102/20 103/9 103/17 104/5 104/25 105/1 110/3 112/12 112/14 112/15 114/3 114/19 114/19 118/23

**they're** **[33]** 20/4 20/5 20/8 27/19 27/20 39/17 40/24 41/1 41/1 41/3 41/7 44/3 44/5 44/5 44/7 48/7 48/24 53/3 55/23 57/16 69/23 84/25 92/20 94/8 96/21 96/22 98/22 100/1 100/8 100/15 104/8 109/13 114/3

**they've** **[3]** 6/20 82/21 98/1

**thin** **[1]** 41/17

**thing** **[14]** 14/19 22/3 32/5 32/24 36/3 42/16 42/17 81/21 86/24 110/4 110/10 112/4 115/3 116/18

**things** **[16]** 5/19 8/3 15/3 18/19 21/3 23/18 32/23 42/7 45/2 53/24 53/25 54/3 54/8 70/12 106/22 109/12

**think** **[115]** 2/20 5/1 5/19 5/25 6/4 7/12 7/15 7/16 7/17 7/21 8/1 8/11 8/13 8/15 8/23 8/24 8/25 9/13 9/20 11/3 12/14 13/13 14/7 14/8 14/12 16/5 17/8 17/13 17/17 19/16 19/22 20/8 21/4 27/12 30/7 30/15 30/19 31/15 31/18 31/18 33/16 34/20 34/23 35/8 35/10 35/12 36/1 36/7 36/16 37/22 38/14 42/11 50/11 50/25 52/13 52/17 52/20 52/22 53/9 53/21 54/11 55/1 56/4 58/17 60/5 62/24 63/12 63/17 64/17 66/8 67/3 67/13 67/22 67/22 68/20 72/8 72/9 73/13 73/21 74/4 74/13 76/4 77/3 77/13 78/6 78/7 79/4 80/8 80/21 82/20 83/8 88/1 91/10 91/13 91/14 91/17 91/22 95/10 98/17 98/18 99/15 101/10 104/5 104/16 110/4 110/13 110/18 110/22 111/1 111/10 111/13 113/12 115/13 118/19 119/1

**thinking** **[3]** 31/6 34/13 105/12

**thinks** **[2]** 20/21 36/12

**third** **[8]** 7/18 8/7 11/13 11/18 56/21 58/17 105/17 117/21

**this** **[240]**

**Thomas** **[4]** 1/23 3/3 120/4 120/16

**thorough** **[2]** 37/20 39/23

**thoroughness** **[2]** 41/5 43/5

**those** **[50]** 2/6 2/25 11/17 12/11 15/7 15/24 19/21 20/1 20/1 23/16 27/18 40/5 40/8 40/11 41/18 42/7 52/15 53/2 53/23 53/25 57/15 63/16 64/3 64/18 76/19 77/2 79/10 80/14 81/12 81/15 81/17

87/4 89/13 89/23 92/18 92/21 96/21 96/24 97/11 97/13 97/15 98/15 98/16 99/1 100/23 103/3 103/8 103/23 106/21 107/2

**though** **[2]** 17/2 84/1

**thought** **[4]** 10/1 77/17 105/24 105/25

**threat** **[1]** 108/1

**threatened** **[3]** 72/17 72/24 108/6

**threatening** **[1]** 108/9

**threats** **[3]** 107/20 107/21 107/23

**three** **[8]** 7/13 15/12 72/21 91/18 92/17 97/15 106/18 115/23

**through** **[27]** 9/17 10/4 14/17 18/8 29/1 38/10 38/10 43/18 45/16 45/16 56/12 58/6 64/18 68/13 71/13 77/8 77/10 80/24 82/4 82/10 82/11 82/18 88/10 104/14 104/16 114/2 118/7

**thrust** **[8]** 5/25 6/5 31/24 31/25 70/17 73/18 85/19 85/19

**thus** **[1]** 59/10

**tight** **[1]** 8/3

**til** **[1]** 51/18

**time** **[56]** 6/21 6/23 7/2 7/10 8/22 9/6 29/11 36/15 43/11 49/18 57/25 58/19 60/11 62/6 63/5 63/7 63/25 64/8 70/24 72/10 74/4 76/15 84/17 84/17 84/23 85/3 90/4 92/25 94/23 94/25 95/12 101/6 101/10 102/25 103/22 104/1 104/25 105/2 105/7 105/13 105/16 106/9 108/14 108/14 108/20 108/21 109/11 110/11 110/23 112/24 112/24 115/14 117/10 117/11 117/23 118/5

**times** **[3]** 5/3 7/8 59/17

**Timothy** **[3]** 19/25 20/4 24/16

**tip** **[2]** 41/20 42/4

**tips** **[1]** 40/20

**today** **[6]** 3/20 5/1 12/13 42/13 76/24 104/3

**today's** **[1]** 93/11

**together** **[5]** 95/1 95/2 95/2 95/3 97/7

**told** **[7]** 18/6 18/14 35/4 38/13 45/1 72/19 73/1

**Tonya** **[2]** 61/4 62/19

**too** **[4]** 11/5 48/23 74/5 117/23

**took** **[5]** 2/16 2/18 10/23 39/3 46/15 66/1 68/22 93/2

**topic** **[28]** 21/11 24/13 30/18 32/1 32/12 34/5 34/6 35/14 45/21 45/22 46/3 46/4 46/4 46/5 46/11 46/11 46/13 47/4 47/6 47/7 47/9 47/10 47/11 47/19 48/24 65/1 74/13 109/25

**topics** **[3]** 33/23 74/11

**total** **[1]** 88/18

**totally** **[5]** 38/23 82/9 85/10 90/12 99/19

**tower** **[1]** 87/5

**traditional** **[2]** 24/6 26/22

**trafficking** **[9]** 56/8 56/12 56/16 57/7

58/6 58/12 83/18 95/22 96/1

**transcript** **[12]** 76/25 77/17 78/4 78/14 79/2 79/6 79/9 80/1 82/11 89/21 120/8 120/9

**transcription** **[1]** 1/22

**transcripts** **[4]** 79/9 79/11 79/18 79/24

**translates** **[1]** 110/25

**treatment** **[1]** 86/3

**tremendous** **[1]** 22/1

**trial** **[19]** 2/4 5/10 6/16 7/13 7/24 7/25 8/1 8/1 8/6 9/8 9/11 11/2 11/10 11/15 39/10 42/1 53/15 117/20 118/20

**trials** **[1]** 6/15

**tried** **[4]** 8/1 104/5 106/10 117/17

**trigger** **[2]** 25/17 28/12

**triggered** **[1]** 25/2

**triggers** **[1]** 26/25

**triple** **[1]** 24/3

**trouble** **[1]** 116/7

**true** **[6]** 39/11 70/13 81/21 93/1 105/23 120/7

**truly** **[1]** 2/24

**trustworthy** **[1]** 114/5

**truth** **[33]** 14/20 19/15 23/2 24/8 24/11 24/19 24/25 25/13 26/4 26/11 26/16 26/20 28/12 29/13 29/25 30/15 30/23 31/21 32/11 33/19 34/1 34/3 39/21 40/3 43/8 43/11 43/21 45/23 47/9 47/14 47/16 96/22 97/1

**truth --it's** **[1]** 97/1

**truthful** **[4]** 85/2 85/2 85/3 85/4

**try** **[6]** 6/21 8/19 35/22 53/21 55/3 100/1

**trying** **[13]** 9/6 9/17 37/14 43/10 43/12 43/17 49/8 60/13 69/6 77/16 96/2 103/16 116/18

**Tuesday** **[5]** 7/21 8/3 9/5 10/13 10/25

**tussled** **[1]** 65/24

**tweak** **[1]** 77/6

**twice** **[2]** 42/17 113/11

**two** **[25]** 2/16 5/10 5/22 7/14 8/6 8/15 9/23 13/25 21/2 22/5 23/7 40/24 44/7 44/8 44/9 44/22 50/22 72/19 76/4 82/21 92/9 102/16 105/9 117/2 117/20

**two-page** **[2]** 22/5 44/8

**type** **[2]** 27/14 38/1

**U**

**U.S** **[2]** 41/2 102/7

**U.S.C** **[1]** 120/7

**ugly** **[1]** 54/7

**ultimate** **[1]** 107/20

**ultimately** **[1]** 69/24

**unavailable** **[4]** 12/20 12/24 49/18 49/19

**uncharged** **[9]** 96/6 96/8 96/10 98/4 98/9 98/12 98/15 99/4 102/19

**uncle** **[3]** 24/16 60/24 61/2

# U

**under [34]** 5/9 11/19 12/2 12/9 12/24 20/5 20/8 24/5 26/21 28/8 31/8 38/24 43/22 43/23 44/22 52/7 52/25 55/5 59/18 62/13 63/18 64/4 66/16 68/2 70/10 71/12 74/6 85/13 85/18 90/10 95/15 98/8 101/25 102/24
**undermining [1]** 41/7
**understand [38]** 17/17 19/4 22/16 24/12 28/19 28/21 29/21 30/9 31/15 32/18 33/12 39/20 45/14 46/10 47/22 51/25 52/21 56/14 59/18 70/20 72/1 72/4 72/4 73/4 84/6 86/19 89/20 90/5 92/23 97/3 98/2 100/14 104/8 110/9 112/20 116/14 117/14 118/9
**understanding [3]** 57/5 60/9 100/5
**understands [5]** 12/7 47/16 63/12 90/9 90/9
**Understood [1]** 63/10
**unfair [4]** 39/25 41/13 43/7 53/7
**unidentified [1]** 57/24
**UNITED [18]** 1/1 1/3 2/2 11/19 11/22 27/24 55/5 56/3 58/9 81/8 81/22 85/10 85/25 102/6 102/7 102/8 120/5 120/11
**unless [7]** 11/23 36/20 52/18 54/9 54/10 83/8 112/14
**unlike [1]** 43/1
**unlikely [1]** 8/12
**unnamed [2]** 23/23 25/7
**unrelated [3]** 63/23 74/3 76/12
**until [10]** 33/11 39/17 42/1 51/17 54/9 54/10 56/23 65/2 84/6 86/17
**up [49]** 2/24 3/2 3/4 4/10 4/16 6/22 8/19 10/2 10/3 10/21 11/6 15/24 17/25 32/17 32/23 35/2 40/15 40/17 40/21 40/22 41/23 42/13 42/14 42/19 43/6 44/19 51/5 59/11 61/25 63/17 65/19 67/25 69/25 70/2 73/12 73/21 86/17 90/17 91/12 93/23 94/10 94/19 105/21 113/2 115/25 116/8 117/1 117/10 117/14
**upon [9]** 11/23 16/19 46/15 54/3 77/17 97/24 101/15 102/20 103/3
**us [12]** 36/4 50/7 50/17 54/4 57/20 65/12 73/21 81/5 91/22 110/2 111/5 112/13
**use [20]** 43/8 52/4 52/19 54/8 54/25 60/8 61/11 61/12 61/20 61/21 62/17 63/5 78/13 78/14 104/6 111/3 111/4 111/7 111/22 114/10
**used [3]** 21/6 59/16 59/20
**using [7]** 38/15 63/7 98/12 110/2 110/6 111/11 111/19
**usually [2]** 10/11 101/2
**utilizing [2]** 5/22 111/23

# V

**vaccinated [9]** 2/12 2/15 2/25 3/11 3/17 3/21 4/3 4/21 4/23
**vaccination [2]** 2/13 2/24
**vacuum [5]** 26/18 49/17 51/10 51/11 68/16
**vaginal [1]** 66/14
**vague [1]** 32/25
**valid [1]** 33/9
**value [4]** 41/12 43/4 43/9 53/7
**variety [2]** 23/5 40/23
**vastly [1]** 23/18
**vehicle [1]** 81/24
**verbal [1]** 29/6
**verbatim [2]** 5/24 6/3
**verify [1]** 48/11
**Vernon [1]** 76/17
**versus [1]** 102/6
**very [40]** 3/3 5/3 5/18 10/18 14/6 14/9 21/22 23/4 27/17 28/20 29/1 32/13 36/14 36/23 41/20 43/11 49/14 66/20 72/3 77/6 77/17 77/22 80/21 83/20 83/25 84/17 85/20 90/23 104/4 109/22 110/20 112/1 113/1 114/25 115/2 115/25 116/3 116/19 117/1 119/14
**victim [9]** 18/16 18/22 53/12 69/20 83/19 94/4 99/17 107/20 110/17
**victims [5]** 20/24 39/13 39/19 53/17 59/21
**video [7]** 6/9 63/21 76/16 78/5 78/14 89/22 90/14
**video-recorded [1]** 76/16
**view [44]** 8/9 8/10 8/22 14/4 15/18 15/22 16/9 16/13 17/1 31/5 31/25 33/10 34/10 35/21 36/17 39/15 45/17 48/16 48/19 50/10 53/20 57/2 61/11 64/6 64/15 66/4 73/5 74/21 77/5 77/20 79/1 79/16 79/21 80/7 80/11 80/12 89/16 91/24 101/13 113/5 113/7 118/11 118/20 119/10
**viewpoint [2]** 26/1 26/3
**violation [1]** 41/25
**voir [1]** 5/20 5/21 5/23 6/1
**vote [4]** 23/15 23/16 32/3 33/15
**voted [5]** 18/16 19/7 24/18 32/23 33/22
**Vudu [1]** 22/18

# W

**wait [8]** 7/7 36/16 50/1 71/3 71/17 73/17 73/20 82/6
**waiting [1]** 58/15
**wake [1]** 61/25
**walks [2]** 27/24 28/1
**wall [2]** 2/22 117/1
**want [44]** 4/11 7/15 8/23 10/11 10/11 17/14 25/17 27/16 28/23 36/25 37/8 39/8 39/10 39/14 39/21 39/21 39/24

40/6 41/10 42/11 43/5 47/20 49/3 53/8 68/7 73/8 74/15 83/23 90/11 92/14 92/14 93/18 93/19 103/20 104/1 104/6 105/5 107/4 109/24 110/11 112/4 114/4 115/4 117/13
**wanted [8]** 4/7 25/12 38/15 54/9 71/24 83/4 99/14 110/1
**wants [7]** 4/11 34/7 39/9 69/21 78/18 81/17 92/11
**warrant [1]** 81/9
**was [187]**
**wasn't [5]** 14/7 28/18 31/9 61/14 71/25
**watch [1]** 8/19
**way [37]** 3/22 6/7 6/13 6/15 6/16 7/6 10/11 10/19 12/8 30/10 30/20 31/6 31/18 32/19 32/21 32/25 34/7 35/23 36/7 40/5 46/21 47/1 48/6 48/11 48/11 56/5 61/12 61/18 62/11 62/24 63/3 71/5 73/9 78/6 84/19 115/8 117/10
**Wayne [5]** 36/5 60/19 62/19 100/5 100/9
**we [240]**
**we'd [2]** 73/9 112/22
**we'll [35]** 5/22 7/9 7/23 7/24 8/17 10/9 10/14 11/6 15/3 15/7 17/5 19/8 34/16 36/11 51/8 51/18 51/21 51/22 59/6 71/3 71/17 73/17 73/20 74/17 74/19 74/25 74/25 78/20 92/15 97/11 113/2 113/13 117/15 117/15 118/9
**we're [45]** 5/8 10/21 11/5 17/16 21/8 22/7 22/8 26/18 35/6 35/20 44/8 44/12 46/20 48/11 48/21 49/15 49/15 49/17 50/3 50/9 51/10 51/14 55/3 58/15 59/11 63/17 64/22 64/22 68/9 74/12 74/13 79/4 83/21 90/21 91/2 91/10 91/13 93/24 110/5 111/13 113/12 113/14 116/12 117/3 117/7
**we've [19]** 7/16 15/24 35/8 42/13 43/15 43/18 50/25 64/9 65/1 77/7 91/15 92/18 101/10 101/21 106/10 113/10 115/13 117/24 119/8
**weapon [5]** 41/21 52/14 55/25 65/19 70/8
**WEAVER [6]** 1/18 3/10 3/19 76/23 84/22 87/1
**week [15]** 2/18 7/18 7/23 7/24 7/25 8/7 9/10 88/11 91/11 113/3 115/18 116/12 117/12 117/13 117/21
**weekend [1]** 118/7
**weeks [7]** 2/16 5/10 5/22 7/14 8/6 117/2 117/20
**weigh [2]** 34/14 41/11
**weighing [1]** 41/15
**weight [3]** 33/4 34/8 70/17
**welcome [4]** 4/10 4/12 4/16 5/5
**well [48]** 3/15 6/19 9/18 10/4 11/22 14/18 15/14 16/21 20/8 25/4 30/7 33/6 38/7 39/2 45/6 46/5 48/2 48/9 51/20

# W

**well... [29]**  52/23 57/16 57/22 58/19 64/1 70/13 73/14 74/1 74/7 76/19 78/23 78/25 80/18 82/6 83/21 84/9 85/8 95/25 99/19 101/19 102/7 102/19 105/21 107/19 111/18 111/18 113/2 114/6 118/8

**went [4]**  10/15 35/17 42/22 66/2

**were [44]**  13/2 13/4 17/18 17/19 18/22 18/25 19/22 19/24 20/3 22/11 22/14 22/17 23/7 23/23 24/15 25/8 25/9 28/11 29/14 30/4 39/13 42/19 46/14 49/6 50/16 50/23 57/15 58/21 62/20 64/10 68/10 70/25 71/22 73/15 91/3 94/13 101/6 101/9 102/4 102/17 107/8 107/12 111/5 114/11

**weren't [1]**  25/16

**WHALEN [36]**  1/16 4/1 5/15 8/21 9/14 12/5 14/5 15/21 16/12 17/23 21/22 27/13 29/22 34/23 35/24 37/12 37/17 48/18 49/17 50/5 51/23 55/2 57/6 64/15 66/6 73/17 74/23 92/1 97/17 97/17 105/5 109/24 111/21 113/8 114/1 115/1

**what [144]**

**what's [3]**  33/13 69/18 78/16

**whatever [9]**  4/11 9/17 10/3 34/16 39/3 51/4 60/11 80/5 108/15

**when [49]**  2/10 2/24 6/25 7/10 9/18 9/23 20/19 22/2 27/14 27/18 28/5 28/24 28/25 37/25 38/18 38/25 41/25 43/4 43/6 44/1 44/3 45/10 53/4 54/2 55/6 61/13 61/23 68/24 69/19 72/21 79/10 79/10 80/2 81/5 81/20 84/12 85/5 87/1 93/19 100/17 100/21 103/21 109/17 109/18 115/11 115/15 115/15 117/19

**whenever [2]**  106/11 108/18

**where [32]**  10/2 13/9 17/9 20/14 23/12 27/4 38/8 39/12 41/7 43/1 46/21 51/12 51/25 61/18 68/23 69/19 70/4 73/4 80/15 81/22 82/22 84/14 85/3 86/12 92/2 93/19 94/24 96/17 107/10 107/16 109/12 113/14

**whereabouts [1]**  16/22

**Whereupon [1]**  75/3

**whether [40]**  7/2 10/8 13/1 13/6 13/11 13/14 13/15 13/21 13/23 14/8 14/17 14/19 19/11 25/10 29/6 31/1 32/11 33/21 36/10 37/19 39/22 42/18 45/11 52/23 56/25 62/13 62/19 63/2 69/3 78/3 78/12 83/2 85/23 98/12 98/14 99/20 101/7 104/25 111/19 119/6

**which [55]**  5/1 7/15 13/14 18/9 18/15 18/22 19/10 23/18 24/3 24/13 29/25 32/18 39/16 40/6 41/11 52/3 53/3 54/15 55/20 59/25 63/1 63/15 65/3 65/25 70/24 76/15 76/20 77/17 78/11 79/6

80/25 81/6 83/11 85/13 85/15 85/18 86/10 88/1 88/8 89/4 89/10 89/10 90/21 91/7 98/6 98/18 98/22 99/6 99/10 101/21 102/10 104/12 106/25 109/14 118/1

**while [13]**  2/11 3/2 3/13 12/22 28/21 31/13 41/6 49/17 63/22 74/3 76/12 103/2 110/22

**who [52]**  3/4 6/8 12/19 21/20 21/21 22/10 22/18 22/21 23/23 28/1 28/2 30/17 32/22 33/13 33/14 36/5 42/4 42/19 45/16 50/24 57/20 60/10 60/16 60/17 60/17 60/23 61/4 69/19 69/22 70/1 70/3 70/14 70/15 72/12 72/15 72/19 72/25 73/3 76/23 89/6 93/3 93/8 93/12 93/19 95/1 95/5 99/23 99/24 100/20 105/23 116/7 116/8

**who's [6]**  4/8 13/21 69/24 76/23 94/2 94/18

**whole [4]**  10/23 10/24 62/2 84/14

**whom [6]**  12/18 58/23 93/4 96/18 102/2 106/9

**why [30]**  28/3 32/19 37/12 45/12 51/9 55/2 57/18 61/17 61/22 61/24 65/15 66/4 73/11 73/15 74/16 81/25 98/2 98/3 110/24 112/8 112/14 112/18 114/6 114/11 114/14 114/16 115/1 115/23 117/17 118/3

**wiggle [1]**  9/3

**Wilkerson [7]**  81/22 85/11 85/20 87/23 88/18 89/11 119/6

**will [77]**  2/13 2/15 2/22 3/2 3/6 3/6 5/1 5/2 6/7 6/7 6/8 6/9 6/9 6/10 6/11 6/19 6/24 7/2 7/3 7/3 7/13 7/14 8/5 8/6 8/12 8/15 10/8 10/23 18/21 25/7 32/9 33/24 34/21 41/14 41/15 46/7 54/7 57/10 60/16 60/17 62/4 63/20 66/5 68/17 70/1 70/14 70/15 70/17 71/16 71/22 74/4 74/11 78/11 80/2 82/10 83/1 83/7 87/17 87/24 88/8 90/18 91/7 93/3 94/13 94/24 95/6 99/23 101/15 101/17 102/20 102/20 103/4 110/4 115/3 117/11 117/21 118/15

**WILLIAM [1]**  1/17

**willing [1]**  31/20 117/9

**Winter [1]**  35/4

**wish [2]**  14/13 78/11

**wishes [2]**  28/20 52/3

**within [11]**  23/25 85/23 87/23 88/16 88/17 89/9 92/19 96/3 97/13 102/5 105/1

**without [7]**  47/11 71/21 71/22 85/1 86/23 89/21 101/16

**witness [46]**  12/18 13/6 17/12 17/15 18/1 28/10 30/17 31/22 31/24 33/12 33/13 36/4 36/9 45/6 45/12 49/18 50/4 50/5 56/10 57/20 63/1 63/25 67/5 70/1 72/17 72/19 72/21 72/23 72/25 73/13

74/2 76/12 89/6 94/2 94/5 94/11 94/13 94/16 112/15 113/17 113/19 114/1 114/11 115/11 115/14 115/23

**witnessed [2]**  72/13 72/15

**witnesses [15]**  53/23 54/5 60/16 60/17 62/4 63/5 70/18 72/12 72/15 73/3 73/4 89/23 93/3 95/1 99/24

**woman [3]**  26/18 53/11 93/22

**women [1]**  53/9

**won't [3]**  36/20 39/16 69/2

**word [4]**  39/14 67/3 88/10 93/23

**words [2]**  38/20 99/12

**work [2]**  40/25 118/5

**worked [1]**  10/1

**working [3]**  55/11 55/12 55/14

**works [1]**  7/6

**world [1]**  9/4

**worn [1]**  2/9

**worry [1]**  94/10

**would [117]**  4/11 5/7 5/22 6/6 7/12 7/19 9/9 9/18 11/25 13/1 13/6 13/15 16/7 17/10 17/14 18/5 18/5 18/8 18/16 18/17 19/9 20/1 20/2 24/13 25/2 25/17 28/3 30/12 33/7 34/12 35/18 36/3 36/6 36/25 37/14 38/3 41/10 42/5 47/15 50/17 51/1 52/9 52/11 53/2 53/11 53/14 53/15 53/21 54/25 57/20 57/21 58/11 62/8 62/8 62/8 63/1 63/24 65/18 66/10 66/22 67/7 67/12 67/23 68/2 68/12 68/15 70/1 70/7 70/12 71/15 72/25 73/13 76/17 77/17 78/9 78/17 80/9 80/25 82/2 82/17 82/20 83/17 83/24 84/10 86/24 86/25 87/12 88/5 88/20 88/22 90/17 92/8 93/8 93/12 95/20 96/3 96/5 96/20 99/10 101/4 101/5 102/22 103/14 103/18 104/13 105/10 105/15 106/24 107/7 107/14 109/8 111/3 111/4 111/7 112/10 113/9 114/11

**would consider [1]**  30/12

**would-be [1]**  42/5

**wouldn't [8]**  9/4 16/6 29/18 30/9 31/8 40/24 82/7 86/16

**woven [2]**  35/12 74/8

**writing [1]**  101/11

**written [6]**  6/20 22/11 22/14 22/17 91/11 101/16

**wrong [4]**  73/9 79/2 104/9 104/11

# Y

**Yeah [3]**  77/13 108/24 118/18

**year [4]**  58/15 68/22 72/19 109/5

**years [4]**  42/22 52/11 53/15 73/1

**yellow [1]**  77/2

**yes [54]**  3/12 4/22 5/13 9/22 12/6 13/18 14/3 14/11 14/24 15/2 15/23 16/14 18/7 19/3 21/7 35/10 37/4 37/17 38/7 43/14 46/4 46/5 47/4 47/7 47/7 47/10 48/7 52/9 55/13 57/4 64/9 64/24 77/6 77/12

## Y

**yes... [20]**  77/15 77/15 79/22 80/4
81/12 83/3 86/22 91/25 92/3 93/10
97/16 97/20 104/13 105/8 106/18
107/25 109/24 110/8 111/17 111/25
**yesterday [2]**  2/20 108/6
**yet [8]**  35/20 36/2 55/9 55/15 55/16
71/3 103/19 113/20
**York [1]**  54/11
**you [252]**
**you'll [4]**  6/22 7/10 57/8 87/19
**you're [26]**  17/25 21/10 26/4 28/5 28/8
34/24 39/11 43/12 44/17 44/21 47/23
49/24 52/7 55/12 55/14 59/12 60/13
68/1 90/19 104/12 110/5 111/12 111/19
111/19 115/25 117/17
**you've [5]**  3/21 27/13 55/12 86/22
110/11
**young [1]**  62/1
**your [139]**

## Z

**zero [2]**  57/6 105/18
**zero-in [1]**  57/6